O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEMPO MUSIC INVESTMENTS, LLC, | ) Case No. 2:24-cv-07910-DDP (BFMx) |
| | ) |
| Plaintiff, | ) **ORDER DENYING DEFENDANTS'** |
| | ) **MOTION TO DISMISS** |
| v. | ) |
| | ) [Dkt. 47] |
| MILEY CYRUS, an individual; et al | ) |
| | ) |
| Defendants. | ) |
| | ) |

Presently before the court is a Motion to Dismiss filed by certain defendants. Dkt. 47 ("*Mot.*"). Plaintiff opposed. Dkt. 50 ("*Opp.*"). Defendants replied. Dkt. 52 ("*Reply*"). Having considered the parties' submissions and heard oral argument, the Court adopts the following order denying Defendants' Motion to Dismiss.

**I. BACKGROUND**

This copyright action arises out of alleged infringement of the popular and award-winning song "When I Was Your Man" released by Bruno Mars in 2013. Dkt. 1, Complaint ("*Compl.*") ¶¶ 1-2. "When I Was Your Man" was co-written by Bruno Mars,

///

///

Philip Lawrence, Ari Levine, and Andrew Wyatt. *Id.* at ¶ 43. The co-authors of "When I Was Your Man" registered the work with the United States Copyright Office in 2013. *Id.*[1]

Plaintiff, Tempo Music Investments, LLC ("Tempo" or "Plaintiff"), is an investment company that purchases and owns the rights to various songs. *Id.* at ¶ 11. Tempo alleges it acquired an ownership share of the copyright in "When I Was Your Man" in 2020 through its acquisition of the catalog of a co-author of the work, Philip Lawrence ("Lawrence"). *Id.* at ¶¶ 3, 11, 45, 66. Plaintiff alleges that on March 6, 2020, Lawrence's assignment of his rights in "When I Was Your Man" to Plaintiff was recorded with the United States Copyright Office. *Id.* at ¶¶ 11, 66.

In January 2023, Defendant Miley Cyrus, also sued as "MCEO Publishing," released the hit song "Flowers" which debuted at No. 1 on the Billboard Hot 100 chart. *Id.* at ¶ 5. "Flowers" was co-authored by Miley Cyrus, Defendant Gregory Hein, also sued as "Songs by Gregory Hein," and Defendant Michael Pollack, also sued as "What Key Do You Want It In Music" and "MCEO, Inc." (collectively "Songwriter Defendants"). *Id.* at ¶¶ 12–14.

Plaintiff alleges that "Flowers" is substantially similar to and infringes upon the copyright of "When I Was Your Man." *Id.* at ¶¶ 46–63. Plaintiff filed this copyright infringement action against the Songwriter Defendants and numerous other defendants who allegedly publish, distribute, or otherwise exploit "Flowers." *Id.* at ¶¶ 12–40. Songwriter Defendants filed the present Motion to Dismiss arguing that Tempo lacks standing to sue for infringement under the Copyright Act. *See generally Mot.*

---

[1] The Court GRANTS Defendants' Request for Judicial Notice, Dkt. 47-2, that the Copyright Office's public catalog records for the copyright registrations for "When I Was Your Man" listed in the complaint (Nos. PA0001834773, PA0001850617, PA0001852243, PA0001869828, and PA0002186926) identify the authors of the composition as Philip Martin Lawrence, Andrew Wyatt, Peter Gene Hernandez p/k/a Bruno Mars, and Ari Levine. *See* Fed. R. Evid. 201; *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (stating judicial notice of information made publicly available by government entities is proper); *Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1013 (C.D. Cal. 2020) (taking judicial notice of "Copyright Catalog entries from the Copyright Office's website").

2

For the reasons set forth below, the Court DENIES Songwriter Defendant's Motion to Dismiss for Lack of Standing.

## II. LEGAL STANDARD

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While lack of standing under Article III requires dismissal under 12(b)(1), lack of statutory standing requires dismissal under 12(b)(6) for failure to state a claim. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

In resolving a 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in the complaint, construing them in the light most favorable to the plaintiff, and determines whether they plausibly give rise to an entitlement to relief. *See Iqbal*, 566 U.S. at 678. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Additionally, the Court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III. DISCUSSION

Under the Copyright Act, the owner of a copyright has the "exclusive rights" to "display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted

3

work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); 17 U.S.C. § 106. An infringer of a copyright is "[a]nyone who violates the exclusive rights of the copyright owner . . ." 17 U.S.C. § 501(a). "The legal or beneficial owner of an exclusive right under [the] copyright" has standing to sue for infringement. 17 U.S.C. § 501(b). Copyright ownership initially vests in the author or authors of the work. 17 U.S.C. § 201(a). "The authors of a joint work are coowners of the copyright in that work." *Id.* Co-owners of a copyrighted work are treated as tenants in common, "each owning a share of the undivided whole." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145 (9th Cir. 2008) (citing H.R. Rep. No. 94-1476, at 121 (1976)). Each co-owner has an independent right to use and exploit the copyright and, therefore, cannot be liable to the other co-owners for infringement. *See Sybersound*, 517 F.3d at 1145; *see Corbello v. DeVito*, 777 F.3d 1058, 1066 (9th Cir. 2015). However, co-owners must account to one another for profits earned through use or licensing of the copyright. *See id.* at 1062. A co-owner may sue a third party for infringement without joining the other co-owners. *See id.* at 1065; *see also Sybersound*, 517 F.3d at 1145.

The Copyright Act expressly provides for the divisibility and alienability of copyright ownership. Section 201(d)(1) provides that "[t]he ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d)(1). Further, the exclusive rights of a copyright "may be chopped up and owned separately, and each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 887 (9th Cir. 2005). "A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, . . . but not including a nonexclusive license." 17 U.S.C. § 101. "Section 201(d)(1) enables the owner to transfer any fraction of his or her ownership interest to another party, thereby making that party a whole or joint owner." *Gardner v. Nike, Inc.*,

4

279 F.3d 774, 779 (9th Cir. 2002). Transferability of a copyright is no different for a co-owner than it is for a sole owner. *See Corbello*, 777 F.3d at 1066.

  A co-owner of a copyright of a joint work may transfer his or her ownership interest without obtaining permission from the other co-owners. *See Corbello*, 777 F.3d at 1066 fn. 5 (9th Cir. 2015). However, a co-owner cannot grant an exclusive license to a third party without the consent of all co-owners, because a co-owner cannot transfer more than he or she owns. *See Sybersound*, 517 F.3d at 1146. A co-owner cannot limit the independent right of the other co-owners to use and exploit the copyright without their consent. *See id.* Acting alone, a co-owner may only grant a non-exclusive license to a third party. *See id.*; *see also Corbello*, 777 F.3d at 1065. Thus, "the question of standing to sue depends on the nature of the interest transferred." *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 645 (9th Cir. 2020).

  Songwriter Defendants argue that Tempo lacks standing because it is not a legal or beneficial owner of an exclusive right. *See Mot.* 6:12–19. Tempo alleges it is a co-owner of the copyright of "When I Was Your Man" by virtue of having acquired Lawrence's entire copyright interest in the work and, therefore, has standing to sue for infringement. *See Opp.* at 7:17–21. However, Songwriter Defendants contend that Lawrence could not have unilaterally made Tempo an owner or co-owner of an exclusive right because Lawrence did not exclusively own any right. *See Reply* at 9:26–28. Songwriter Defendants acknowledge that Tempo is an assignee of Lawrence's *interest* in the copyright but nonetheless argue that "Lawrence could not, without the consent of all co-owners, promise Plaintiff rights that are exclusive 'vis-à-vis the world.'" *See id.* at 1:6–10. Songwriter Defendants contend that in a joint work, each co-owner owns a non-exclusive interest in the undivided whole. *See Mot.* at 7:18–20. Songwriter Defendants assert that "the assignee or licensee of one co-author's interest in a joint work's copyright does not have standing to sue for infringement because it is not an owner of *exclusive* rights." *Mot.* at 6:22–24 (emphasis in original). Because Lawrence was a co-owner, he could not assign

5

or license any exclusive rights to Tempo because he shared those rights with his other co-owners. *See Mot.* at 7:22–8:8. According to Songwriter Defendants, to have standing to sue for infringement, Plaintiff must "be the *exclusive* owner of the allegedly infringed rights," which would require it to have acquired all of the co-authors' interests. *Mot.* at 8:26–9:1 (emphasis in original). Because Plaintiff did not acquire the interests of all co-authors, Plaintiff has only a non-exclusive license to the work. *Id.* Songwriter Defendants rely primarily on *Tresóna* and *Sybersound* to support these arguments. *See Mot.* at 6:22–9:18; *Reply* at 4:5–6:15.

But neither *Tresóna* nor *Sybersound* dealt with a transfer of a co-owner's ownership interest. In *Sybersound*, the Ninth Circuit held that a co-owner may only grant a non-exclusive license without the consent of his co-owners because one co-owner "may not limit the other co-owners' independent rights to exploit the copyright." *Sybersound*, 517 F.3d at 1146. Likewise, in *Tresóna*, the Ninth Circuit found that the plaintiff had "received its copyright interests in the songs . . . as a license from an individual co-owner of those interests without the consent of the other co-owners," and "therefore, [the plaintiff] lack[ed] standing to sue for infringement of its non-exclusive rights." *Tresóna*, 953 F.3d at 645.

Songwriter Defendants' misunderstanding of the Ninth Circuit's precedent seems to stem from the use of the word "exclusive." The heart of Songwriter Defendants' arguments is that a co-owner cannot transfer an exclusive right because a co-owner is not the exclusive owner of the rights. This is incorrect. Ownership of "exclusive rights" is not to be conflated with "exclusive ownership" of rights. The "exclusive rights" are what is owned collectively by the co-owners. Each co-owner of a copyright owns an interest in the exclusive rights that make up a copyright. These exclusive rights are exclusive to the co-owners collectively as against the rest of the world. The Copyright Act requires an ownership interest in an exclusive right for standing to sue – not exclusive ownership of the copyright rights.

6

The Ninth Circuit rejected a similar argument in *Corbello* that co-owners could not unilaterally transfer their rights without permission of other co-owners. In discussing *Sybersound*, the *Corbello* Court acknowledged the distinction between exclusive rights and exclusive ownership:

> But the [*Sybersound*] Court's emphasis on the word "exclusive" in these provisions cannot mean that only sole owners possess "exclusive" rights, as such a rule would run directly contrary to another well-settled principle of copyright law: the right of one joint-owner to sue third party infringers without joining any of his fellow co-owners, a right *Sybersound* itself expressly recognizes. *See* [*Sybersound*] at 1145 (noting that "co-owners may bring suit for copyright infringement without joining co-owners" (citing *Davis v. Bilge*, 505 F.3d 90, 99 (2d Cir. 2007))). After all, the copyright statute permits infringement suits only if brought by owners of an "*exclusive* right" against alleged violators of such "*exclusive* right." 17 U.S.C. § 501 (emphasis added). If an "exclusive right" could only be possessed by a sole owner of a copyright, a co-owner would be unable to bring an infringement action to protect his interest.

*Corbello*, 777 F.3d at 1065.

Neither *Sybersound* nor *Tresóna* limit a co-owner's ability to transfer his or her ownership interest in a copyright. The *Corbello* Court was clear that "*Sybersound* merely imposes a standing limitation on copyright assignees and licensees that reflects the basic principle that one cannot give away more than one's share in a copyright —it need not, and should not, be extended to limit a co-owner's ability to transfer unilaterally any exclusive copyright interests that he himself possesses." *Corbello*, 777 F.3d at 1066. In fact, *Tresóna* explicitly reiterated this principle and highlighted the distinction between a transfer of an interest and the granting of a non-exclusive license. *See Tresóna*, 953 F.3d at 645 fn. 2 ("We made clear that a co-owner of a copyright is free to transfer that ownership interest to another, as long as the transfer was only of 'exclusive copyright interests that [the co-owner itself] possesses.'" (citing *Corbello*, 777 F.3d at 1066)).

Tempo alleges that Lawrence transferred his entire ownership interest to Tempo – not that he attempted to transfer an exclusive license to Tempo. *See Compl*. at ¶¶ 3, 11, 45,

7

66. Songwriter Defendants claims this is a distinction without a difference. *See Reply* at 1:14, 5:8–10, 8:10–16. But it is not. "The key is that a transfer is limited by the rights possessed by the transferor and the rights that are attempted to be transferred." *Yellowcake, Inc. v. Morena Music, Inc.*, No. 1:20-cv-0787-AWI-BAM, 2021 WL 3287719, at *6 (E.D. Cal. Aug. 2, 2021). When a co-owner transfers his or her interest, which the co-owner need not obtain consent from the other co-owners to do, the transferee stands in the shoes of the transferor, making the transferee a co-owner in the copyright. *See* 1 Nimmer on Copyright § 6.11 (2025). Lawrence's interest was a co-ownership interest in the exclusive rights of the copyright. *Compl.* at ¶ 43. By transferring all of that interest, Tempo now steps into Lawrence's shoes and is a co-owner of the exclusive rights of the copyright. *See Yellowcake*, No. 1:20-cv-0787-AWI-BAM at *6. Because Lawrence as a co-owner could sue for infringement, Tempo as co-owner, in lieu of Lawrence, can sue for infringement without joining the other co-owners of the copyright.

If, as Songwriter Defendants' arguments seem to suggest, a co-owner's right to sue for infringement is lost upon transfer, then if all original co-authors transferred their interest, the copyright could never be enforced. *See Opp.* at 2:13–14 (highlighting that Songwriter Defendants' argument would mean "the individual right to sue a third-party for infringement is forever lost if a co-author assigns [the profit] interest."). The original co-owners would have signed over any and all rights leaving them without an ownership interest and the new co-owners would be unable to enforce the copyright because they were not granted an "exclusive right" as the other co-owner(s) had use of it. Additionally, such a limitation would dimmish the value of jointly owned copyrights, because buyers would be less interested in purchasing a copyright that they cannot enforce, thereby disincentivizing co-authorship and collaboration in works. This would undermine Congress's intent in expressly allowing for the divisibility and alienability of copyrights and its acknowledgment of co-ownership of joint works. Nothing in the

Copyright Act nor in Ninth Circuit precedent limits the transfer of a co-ownership interest in this way.

Accordingly, the Court finds Tempo, as a co-owner of the copyright of "When I Was Your Man," has standing to sue for infringement.

**IV. CONCLUSION**

For the reasons stated above, Songwriter Defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: March 18, 2025

           _____
           DEAN D. PREGERSON
           UNITED STATES DISTRICT JUDGE

9