Peter Anderson, Esq. (Cal. Bar No. 88891)
        peteranderson@dwt.com
Eric H. Lamm, Esq. (Cal. Bar No. 324153)
        ericlamm@dwt.com
Alexandra P. Cadena, Esq. (Cal. Bar No. 352442)
        alexcadena@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
MILEY CYRUS, also sued as MCEO Publishing,
GREGORY HEIN, also sued as Songs By Gregory Hein,
MICHAEL POLLACK, also sued as What Key Do You
Want It In Music, MCEO, INC., SONY MUSIC
ENTERTAINMENT, SONY MUSIC PUBLISHING (US) LLC,
PULSE 2.0, LLC, sued as These Are Pulse Songs, PURE
TONE MUSIC, LLC, sued as Songs With A Pure Tone,
BLASTRONAUT, INC., sued as Droog Publishing, WARNER-TAMERLANE
PUBLISHING CORP., AMAZON.COM SERVICES LLC,
APPLE INC., PANDORA MEDIA, LLC, DISNEY PLATFORM
DISTRIBUTION, INC., TARGET CORP., BARNES & NOBLE
BOOKSELLERS, INC., TIDAL MUSIC LLC, WALMART INC.,
WAL-MART.COM USA, INC., WIDE EYED GLOBAL, IHEARTMEDIA,
INC., LIVE NATION ENTERTAINMENT, INC., XANDRIE SA,
DEEZER S.A., and SOUNDCLOUD GLOBAL LIMITED & CO. KG.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> MILEY CYRUS, *et al.*, <br><br> Defendants. | Case No. 2:24-cv-07910-MRA-BFM <br><br> DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> Date: May 5, 2026 <br> Time: 10:00 a.m. <br><br> Courtroom of the Honorable <br> Mónica Ramírez Almadani <br> United States District Judge |

## **TABLE OF CONTENTS**

**Page**

1.   INTRODUCTION ................................................................................ 1

   (a)   Summary of Argument ................................................................ 1

   (b)   Summary of Facts ...................................................................... 2

      (1)   *Man* and *Flowers* ........................................................ 2

      (2)   Plaintiff's Infringement Claim ..................................... 2

      (3)   The Parties' Respective Experts .................................... 2

2.   PLAINTIFF CANNOT SATISFY THE EXTRINSIC TEST FOR SUBSTANTIAL SIMILARITY IN PROTECTED EXPRESSION ................ 3

   (a)   The Extrinsic Test ...................................................................... 3

   (b)   Plaintiff's Experts Fail to Conform to the Extrinsic Test ...................... 5

      (1)   Ricigliano Failed to Apply the Extrinsic Test to the Music ........ 5

      (2)   Ricigliano's Claimed Similarities Are Unprotectable as a Matter of Law ........................................................ 6

          (i)   Ricigliano Identifies No Similarity in Melody, Only in Unprotectable Pitches ......................................... 6

          (ii)   Ricigliano Admits the Songs' Chord Progressions Are Commonplace and Different ................................. 7

          (iii)   The Songs Are Very Different Overall ............................. 7

      (3)   Plaintiff's Untimely Rebuttal Expert, Rovin, Failed to Apply the Extrinsic Test to the Lyrics ........................................ 8

          (i)   The Alleged Lyrical Similarities Are Not Protectable ...... 9

          (ii)   Even if Rovin Is Not Excluded, He Does Not Save Plaintiff's Claim ............................................. 14

      (4)   Plaintiff Cannot Save Its Claim by Arguing *Flowers* Copies a Selection and Arrangement of Unprotected Elements in *Man* .. 16

3.   PLAINTIFF'S CLAIM IS BARRED BY FAIR USE .................................. 17

   (a)   The Purpose and Character of the Use ................................. 18

      (1)   *Flowers* Can Reasonably Be Perceived as Transformative Commentary or Criticism on *Man* ........................................ 19

(2)    *Flowers*' Commercial Use Does Not Outweigh Its Transformative Character ........................................................ 20

(b)    The Nature of *Man* ................................................................. 21

(c)    The Amount and Substantiality of the Claimed Similarities Relative to *Man* as a Whole ............................................................... 21

(d)    The Effect on the Market for or Value of Plaintiff's Work ................. 22

4.    CONCLUSION.................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023).................................................................................18, 20

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015).....................................................................18, 21

*Bernal v. Paradigm Talent & Literary Agency*,
788 F. Supp. 2d 1043 (C.D. Cal. 2010) ...........................................................15

*Bill Graham Archives v. Dorling Kinderesley Ltd.*,
448 F.3d 605 (2d Cir. 2006)......................................................................21, 22

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994).............................................17, 18, 19, 20, 21, 22

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013)............................................................................19

*CBS Broad., Inc. v. American Broad. Cos., Inc.*,
No. CV 12–04073GAF(JEMx), 2012 WL 13013027
(C.D. Cal. June 21, 2012) ...............................................................................14

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020) ...........................................................................13

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) ...........................................................................4

*Equals Three, LLC v. Jukin Media, Inc.*,
139 F. Supp. 3d 1094 (C.D. Cal. 2015) ...........................................................22

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986) ...........................................................................18

*Folkens v. Wyland Worldwide, LLC*,
882 F.3d 768 (9th Cir. 2018) ...........................................................................12

*Frybarger v. Int'l Bus. Machines Corp.*,
812 F.2d 525 (9th Cir. 1987) ...........................................................................12

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
462 F.3d 1072 (9th Cir. 2006) ................................................................ 7, 14, 15, 16

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) .................................................................................. 4, 6, 7

*Hustler Magazine Inc. v. Moral Majority Inc.*,
796 F.2d 1148 (9th Cir. 1986) ..................................................................................... 21

*Johannsongs-Publ'g Ltd. v. Lovland*,
No. CV 18-10009-AB(SSx), 2020 WL 2315805 (C.D. Cal. Apr. 3, 2020),
*aff'd* No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021) ........................ 5

*Lane v. Knowes-Carter*,
No. 14 Civ. 6798, 2015 WL 6395940 (S.D.N.Y. Oct. 21, 2015) ........................... 8

*Lennon v. Premise Media Corp.*,
556 F. Supp. 2d 310 (S.D.N.Y. 2008) ........................................................... 19, 22

*Morrill v. Stefani*,
338 F. Supp. 3d 1051 (C.D. Cal. 2018) ................................................................. 5

*Narell v. Freeman*,
872 F.2d 907 (9th Cir. 1989) ...................................................................... 3, 13, 16

*Olson v. NBC*,
855 F.2d 1446 (9th Cir. 1988) ............................................................................ 6

*Puckett v. Hernandez*,
No. 216CV02199SVWAGR, 2016 WL 7647555
(C.D. Cal. Dec. 21, 2016) ................................................................................. 12

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ............................................................................. 3

*Santos v. Kimmel*,
154 F.4th 30 (2d Cir. 2025) ............................................................................... 18

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) ....................................................... 18, 20, 21, 22

*Shame On You Prods., Inc. v. Banks*,
893 F.3d 661 (9th Cir. 2018) ............................................................................. 3

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ...................................................................... 8, 14, 16

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) (en banc) .........................................3, 4, 13, 16, 17

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ................................................................................ 4

*Smith v. Weeknd*,
  No. CV 19-2507-PA(MRWx), 2020 WL 4932074 (C.D. Cal. July 22,
  2020), *aff'd sub nom. Clover v. Tesfaye*, No. 20-55861, 2021 WL
  4705512 (9th Cir. Oct. 8, 2021)............................................................................ 5

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ......................................................................... 4, 13

*Threshold Media Corp. v. Relativity Media, LLC*,
  No. CV 10-09318, 2013 WL 12331550 (C.D. Cal., Mar. 19, 2013)....................22

*VMG Salsoul, LLC v. Ciccone*,
  824 F.3d 871 (9th Cir. 2016) ................................................................................ 4

*Woodland v. Hill*,
  136 F.4th 1199 (9th Cir. 2025) ......................................................................... 4, 8

*Yonay v. Paramount Pictures Corp.*,
  163 F.4th 685 (9th Cir. 2026) ................................................4, 5, 8, 13, 14, 16, 17

**Statutes**

17 U.S.C.
  § 102(b) ............................................................................................................... 15
  § 107.............................................................................................................. 18, 20
  § 107(1) ...................................................................................................... 17, 18, 20
  § 107(2) .............................................................................................................. 17, 21
  § 107(3) .............................................................................................................. 17, 21
  § 107(4) .............................................................................................................. 17, 22

**Rules**

Fed. R. Civ. P. 56(a)........................................................................................................ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

### (a)    Summary of Argument

Plaintiff Tempo Secured Music Rights Collateral, LLC ("Plaintiff") speculates in copyrights and acquired the interest of one of the four co-authors of the 2013 musical composition *When I Was Your Man* ("*Man*"), recorded by Bruno Mars. Plaintiff claims the 2023 song *Flowers*, written by defendants Miley Cyrus, Gregory Hein, and Michael Pollack (the "*Flowers* Songwriters"), copies *Man*.

*Man*, a slow piano ballad, is a breakup song from the perspective of a man who regrets not doing various things he believes could have saved his relationship. On the other hand, *Flowers*, an upbeat, danceable pop song, is a breakup song from the perspective of a woman rejoicing in her independence and self-reliance. Plaintiff's infringement claim—in which none of *Man*'s authors join—fails for at least each of the following reasons.

First, Plaintiff cannot meet its burden of proving through expert testimony that *Man* and *Flowers* are substantially similar in protected expression under this Circuit's extrinsic test. As for music, Plaintiff's musicologist, Anthony Ricigliano, failed to research prior art, claims no similarity in potentially protectable melody, and instead relies on unprotectable pitch sequences and other random, unprotectable elements. As for lyrics, Plaintiff offered a late affirmative report, mislabeled a rebuttal report, by a novelist, Jeff Rovin. He purports to apply the extrinsic test for literary works by comparing characters, plot, *etc.* But he improperly relies on similarities at an abstract level—*e.g.*, he raises that buying flowers is referenced in *Man*'s forlorn lyric that the singer should have bought his ex-lover flowers, and in *Flowers*' joyful lyric that the singer can buy herself flowers—and on unprotectable relationship tropes, such as flowers and holding hands, all in lyrics that are very different in *Man* and *Flowers*.

Second, the fair use defense bars Plaintiff's claim. *Flowers* is a wholly original song, and its songwriters strenuously deny copying *Man* or any portion of it or

1

intending to comment on *Man*. But that is irrelevant to fair use, which instead considers whether a reasonable observer could interpret *Flowers* as commenting on *Man*. Even Plaintiff acknowledges that *Flowers*' upbeat lyrics have been perceived as responding to *Man*'s despondent lyrics. SAC (Doc. 93) at 2:2-9.[1] Also, *Man* has long been published, the claimed similarities are minimal, and *Flowers* did not negatively affect the market for *Man*. For this independent reason, Plaintiff's claim fails.

Accordingly, Defendants' Motion should be granted.

**(b)    Summary of Facts**

**(1)    *Man* and *Flowers***

*Man* was written by Bruno Mars and three other songwriters and released in 2013. Plaintiff allegedly bought the copyright interest of one co-author in 2020. Facts 1-2. The *Flowers* Songwriters wrote *Flowers* in January 2022 and it was released in 2023. Facts 3-4. *Man* and *Flowers* are breakup songs, but from very different perspectives. Facts 144-147.

**(2)    Plaintiff's Infringement Claim**

Plaintiff alleges a single claim for copyright infringement against the *Flowers* Songwriters and *twenty-nine* other defendants (collectively, "Defendants"). However, Plaintiff relies on generic and unprotectable elements used differently. *See below* at 5-16.

**(3)    The Parties' Respective Experts**

Discovery was bifurcated with a first phase as to liability (Docs. 77 & 78), and the parties have completed fact and expert discovery in that phase.

As for experts, Defendants provided affirmative and rebuttal reports by Dr. Lawrence Ferrara, a musicologist, and by Matthew BaileyShea, Ph.D., a musicologist and lyrics scholar. Ferrara Decl. Exs. 1-2; BaileyShea Decl. Exs. 3-4. Defendants

---

[1]    This Memorandum includes hyperlinks.

also provided an affirmative report by Steven Winogradsky, a music clearance and licensing expert, demonstrating that *Flowers* is not a substitute for *Man* in the synchronization license market.  Winogradsky Decl. Ex. 13.

Plaintiff provided affirmative and rebuttal reports by Anthony Ricigliano, a musicologist, and a supposed rebuttal report by a previously undisclosed expert, Jeff Rovin, a novelist.  Anderson Decl. Exs. 5-7; *see* Defs' Mot. to Exclude at 3-6.[2]

## 2.  PLAINTIFF CANNOT SATISFY THE EXTRINSIC TEST FOR SUBSTANTIAL SIMILARITY IN PROTECTED EXPRESSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate here.

### (a)  The Extrinsic Test

A copyright plaintiff must show, *inter alia*, copying of protected aspects of its work, that is, "unlawful appropriation."  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) ("*Skidmore*") (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore*).  This Motion addresses unlawful appropriation because even in cases of admitted copying—which is denied here—a claim fails if the copying is not unlawful.  *Narell v. Freeman*, 872 F.2d 907, 910-11 (9th Cir. 1989) (admitted copying of unprotected phrases; summary judgment affirmed).

To prove unlawful appropriation, a plaintiff must show that "the similarities between the two works [are] 'substantial' and … involve protected elements of the work."  *Rentmeester*, 883 F.3d at 1117.  Two tests are applied: an objective "extrinsic test" and a subjective "intrinsic test."  *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 667 (9th Cir. 2018) (affirming summary judgment).  The extrinsic test "objectively considers whether there are substantial similarities in both ideas and

---

[2]    Plaintiff also provided a report regarding dissemination of *Man* prior to *Flowers'* release, which is irrelevant to this Motion.  Anderson Decl. at 2 ¶ 4.

3

expression….” *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997) (citation omitted). “And because a plaintiff must satisfy both the extrinsic and intrinsic tests, failure to meet the extrinsic test is fatal.” *Woodland v. Hill*, 136 F.4th 1199, 1210 (9th Cir. 2025).

As a first step, “the extrinsic test requires that the plaintiff identify concrete elements based on objective criteria.” *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000), *overruled on other grounds by Skidmore*. Once claimed similarities are identified, “it is essential to distinguish between the protected and unprotected material in a plaintiff’s work” because, “[c]rucially, … only substantial similarity in protectable expression may constitute actionable copying.” *Skidmore*, 952 F.3d at 1064. Accordingly, the “court must filter out and disregard the non-protectible elements.” *Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 692 (9th Cir. 2026) (citation omitted). For example, “expressions that are standard, stock, or common to a particular subject matter or medium are not protectable[.]” *Skidmore*, 952 F.3d at 1069.

In music cases, unprotectable expressions include, *e.g.*, musical phrases that prior art demonstrates are commonplace. *Smith v. Jackson*, 84 F.3d 1213, 1216 n.1, 1219 (9th Cir. 1996), *overruled on other grounds by Skidmore*; *Gray v. Hudson*, 28 F.4th 87, 100 (9th Cir. 2022) (“Evidence of similar musical phrases appearing in prior works … demonstrates that the musical language was of ordinary and common occurrence”) (citation omitted); *Skidmore*, 952 F.3d at 1069 (commonplace musical elements are “building blocks [that] belong in the public domain”). As a result, in music cases, “[t]he extrinsic test often requires analytical dissection of a work and expert testimony.” *Three Boys Music*, 212 F.3d at 485.

“[T]he extrinsic test is objective and is often resolved as a matter of law,” even with dueling musicologists. *Gray*, 28 F.4th at 97 (despite dueling musicologists, judgment as a matter of law—“essentially ‘the same’” as summary judgment—affirmed); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878-79 (9th Cir. 2016)

4

(summary judgment affirmed where plaintiff's musicologist's claimed similarities unprotectable); *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1059-62 (C.D. Cal. 2018) (granting summary judgment because plaintiff's musicologist relied on unprotected words, rhyming, rhythms, and tritones); *Smith v. Weeknd*, No. CV 19-2507-PA(MRWx), 2020 WL 4932074 at *6 (C.D. Cal. July 22, 2020) (granting summary judgment where plaintiff's musicologist failed to filter out prior art and relied on unprotectable similarities), *aff'd sub nom. Clover v. Tesfaye*, No. 20-55861, 2021 WL 4705512 (9th Cir. Oct. 8, 2021).

Applying these established principles, there is no genuine dispute that Plaintiff has not satisfied the extrinsic test and Defendants' Motion should be granted.

**(b)    Plaintiff's Experts Fail to Conform to the Extrinsic Test**

At their depositions, Mr. Ricigliano testified he is not opining on how to interpret the lyrics of *Man* or *Flowers* (Fact 8), and Mr. Rovin testified he is not opining on any elements other than lyrics (Fact 142).[3]   Neither purported expert applied the extrinsic test, let alone satisfied it.

**(1)    Ricigliano Failed to Apply the Extrinsic Test to the Music**

As an initial, fatal defect, Plaintiff cannot rely on Mr. Ricigliano under the extrinsic test because he did not research prior art or filter out unprotectable elements. Facts 5-6; *Yonay*, 163 F.4th at 698 (affirming exclusion of plaintiff's expert and grant of summary judgment where expert "fail[ed] to filter out [unprotectable] elements"); *Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB(SSx), 2020 WL 2315805 at *5 (C.D. Cal. Apr. 3, 2020) (granting summary judgment where plaintiff's musicologist failed to consider and "filter out unprotectable prior art elements"), *aff'd* No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021).   Mr. Ricigliano also improperly relied on musical fragments and ignored their different contexts.  Facts 7,

[3]   Mr. Ricigliano referred to a few words in the songs' lyrics that he thought were "meaningful[ly] connect[ed]."  Fact 267.  But that is not substantial similarity, and those words are both unprotectable and used differently.  *See below* at 9-14.

86, 98; *Olson v. NBC*, 855 F.2d 1446, 1450-51 (9th Cir. 1988) (discounting expert testimony that relied on unprotectable elements and deemphasized dissimilarities).

For those reasons alone, Mr. Ricigliano's opinions are properly rejected for failure to apply the extrinsic test.

> **(2)     Ricigliano's Claimed Similarities Are Unprotectable as a Matter of Law**
>> **(i)     Ricigliano Identifies No Similarity in Melody, Only in Unprotectable Pitches**

Critically, while original melodies of sufficient length may be protectable, ***Mr. Ricigliano admits that Man and Flowers do not share any melodies.*** Facts 85-86. Instead, he claims they share some *pitches*—that is, tones without regard to duration—in otherwise different and unprotectable pitch sequences.[4] For example, he claims the pitches E-D-C-E-F appear in otherwise different pitch sequences in the first "unit" of the melodies in *Man*'s verse and *Flowers*' chorus:

*Man*:       E-E-E-D-E-E-D-**E-D-C-E-F**-F

*Flowers*:   E-E-**E-D-C-E-F**

Facts 34-38.  Mr. Ricigliano's other claimed melodic similarities also are mere fragments of otherwise different pitch sequences.  Facts 39-45, 46-51, 52, 53-65, 70-76, 84-86.

But that is all for naught because pitch sequences are not protectable.  Instead, "it is necessary to distinguish between an abstract sequence of pitches and a melody." *Gray*, 28 F.4th at 99-100.  "While an eight-note *melody* may be copyrightable, the abstract eight-note *pitch sequence* that is a component of the melody is not." *Id.* Accordingly, the melodic similarities that Mr. Ricigliano identifies cannot support a copyright infringement claim and must be filtered out.

---

[4]     For definitions of these and other musical terms in this brief, *see* Facts 11-12, 20-21, 28-33, 87-89, 114.

Mr. Ricigliano also claims a purportedly similar "developmental process" because the pitches in "unit 1" of *Man*'s verse and *Flowers*' chorus "basically move … down a step [in pitch]" in "unit 2." Fact 44. But that is both an unprotectable "abstract … component" of the songs' otherwise different pitch sequences (*Gray*, 28 F.4th at 99-100), and also commonplace (Fact 45).

### (ii)     Ricigliano Admits the Songs' Chord Progressions Are Commonplace and Different

The songs' chord progressions are different overall, and Mr. Ricigliano identifies fragmentary similarities in chord progressions while admitting the similarities are commonplace. Facts 90-102. For example, *Man*'s verses and *Flowers*' chorus *each* include A minor, D minor, G major, and C major chords, but Mr. Ricigliano admits that is merely a commonplace "circle of fifths" chord progression. Facts 91-92.[5] He also raises that both songs use an additional chord with a B pitch, but the chords used are different, and the similarity is commonplace. Facts 93-95. Moreover, chord progressions are unprotected "basic musical building blocks." *Gray*, 28 F.4th at 100. Mr. Ricigliano also raises that some of the same pitches in the different melodies and the chords are heard at the same time (*i.e.*, are "harmonized"), but that is because *Man* and *Flowers* use a generic "5-10-5-10" pattern. Facts 103-107. Not only are Mr. Ricigliano's claimed similarities commonplace, they even have names.

### (iii)    The Songs Are Very Different Overall

The extrinsic test is not met when "two works reveal[] … significant differences and few real similarities…." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir. 2006), *overruled on other grounds by Skidmore*. Here, there

---

[5]     While Defendants' experts demonstrated that *Flowers* is in a different key than *Man* (A minor vs. C major), Mr. Ricigliano contends that *Flowers* "oscillates" between those keys and should be analyzed in C major. Facts 135-136. Solely for the purposes of this Motion, Defendants assume Mr. Ricigliano's key of *Flowers*.

are vast musical differences between *Flowers* and *Man* and no real similarities.  *See also Yonay*, 163 F.4th at 694 ("courts may identify differences in the works to explain why there is no substantial similarity") (quoting *Woodland*, 136 F.4th at 1211 n.4).

Even Mr. Ricigliano admits *Man* and *Flowers* are very different songs overall.  *Man* is a slow piano ballad, while *Flowers* is upbeat and danceable.  Facts 115-116.  They have very different tempos, and their respective instrumental parts are different and play very different rhythms.  Facts 117-122.  Their structures are different and only include generic, building-block similarities like eight-measure sections.  Facts 13-27; *Lane v. Knowes-Carter*, No. 14 Civ. 6798, 2015 WL 6395940 at *6 (S.D.N.Y. Oct. 21, 2015) (four- and eight-measure phrases are commonplace).  Mr. Ricigliano claims each song's chorus begins with a "grand pause."  But a "grand pause" is a musical building block—it simply means silence—and he admits the grand pauses in *Man* and *Flowers* are different.  Fact 123-134.

Mr. Ricigliano failed to research prior art and relies on isolated and fragmentary similarities he freely admits are commonplace and different in *Man* and *Flowers*.  He fails to apply the extrinsic test and his claimed similarities are properly rejected.

**(3)    Plaintiff's Untimely Rebuttal Expert, Rovin, Failed to Apply the Extrinsic Test to the Lyrics**

Plaintiff disclosed Mr. Rovin only as a rebuttal witness, but he purports to apply a version of the extrinsic test that none of Defendants' experts applied, namely the extrinsic test applicable to literary works under *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), *overruled on other grounds by Skidmore*.  Plaintiff—which bears the burden of identifying similarities—may not withhold an affirmative report and then submit it as a "rebuttal" on subjects not previously raised.  For that and other reasons, Mr. Rovin should be excluded.  *See generally* Defs' Memo. iso Mot. to Exclude.  But even if he is not excluded, his opinions do not help Plaintiff satisfy the extrinsic test.

8

### (i)    The Alleged Lyrical Similarities Are Not Protectable

Plaintiff's Second Amended Complaint retains the prior complaints' allegations that *Flowers*' lyrics "have a meaningful connection to the lyrics in" *Man*, and again provides this chart:

| "When I Was Your Man" | "Flowers" |
|---|---|
| That I should have brought [sic] you flowers | I can buy myself flowers |
| And held your hand | And I can hold my own hand |
| Should have gave you all my hours | Talk to myself for hours |
| Take you to every party cause all you wanted to do was dance | I can take myself dancing |

SAC at 14 ¶ 56; Fact 267.

But those are very different lyrics, and ***Plaintiff's chart does not depict the claimed similarities the way they appear in the songs***.  Here are the lyrics of each song, with the words Plaintiff alleges are similar in bold and the remaining words in gray, demonstrating that Plaintiff cherry-picks words from very different lyrics:

| *Man* Lyrics | *Flowers* Lyrics |
|---|---|
| Same bed but it feels just a little bit bigger now | We were good, we were gold |
| Our song on the radio but it don't sound the same | Kinda dream that can't be sold |
| When our friends talk about you, all it does is just tear me down | We were right 'til we weren't |
| 'Cause my heart breaks a little when I hear your name | Built a home and watched it burn |
| It all just sounds like ooh ooh ooh ooh ooh | Mmm, I didn't wanna leave you, I didn't wanna lie |
|  | Started to cry, but then remembered I |
|  | **I can buy myself flowers** |
|  | Write my name in the sand |
|  | **Talk to myself for hours** |

9

| *Man* Lyrics | *Flowers* Lyrics |
|---|---|
| Mm, too young, too dumb to realize | Say things you don't understand |
| **That I should have bought you flowers** | **I can take myself dancing** |
| **And held your hand** | **And I can hold my own hand** |
| **Should have gave you all my hours** | Yeah, I can love me better than you can |
| When I had the chance | Can love me better, I can love me better, baby |
| **Take you to every party** | |
| **'Cause all you wanted to do was dance** | Can love me better, I can love me better, baby |
| Now my baby's dancing | |
| But she's dancing with another man | Paint my nails cherry red |
| My pride, my ego, my needs and my selfish ways | Match the roses that you left |
| | No remorse, no regret |
| Caused a good strong woman like you to walk out my life | I forgive every word you said |
| | Ooh, I didn't wanna leave you, baby, I didn't wanna fight |
| Now I'll never, never get to clean up the mess I made, oh | Started to cry, but then remembered I |
| And it haunts me every time I close my eyes | **I can buy myself flowers** |
| | Write my name in the sand |
| It all just sounds like ooh ooh ooh ooh ooh | **Talk to myself for hours**, yeah |
| | Say things you don't understand |
| Mm, too young, too dumb to realize | **I can take myself dancing**, yeah |
| **That I should've bought you flowers** | **I can hold my own hand** |
| **And held your hand** | Yeah, I can love me better than you can |
| **Should've gave you all my hours** | Can love me better, I can love me better, baby |
| When I had the chance | |
| **Take you to every party** | Can love me better, I can love me better, baby |
| **'Cause all you wanted to do was dance** | |
| Now my baby's dancing | Can love me better, I can love me better, |

10

| *Man* Lyrics | *Flowers* Lyrics |
|---|---|
| But she's dancing with another man | baby |
| Although it hurts | Can love me better, I- (ooh, I) |
| I'll be the first to say that I was wrong | I didn't wanna leave you, I didn't wanna fight |
| Oh, I know I'm probably much too late | Started to cry, but then remembered I |
| To try and apologize for my mistakes | **I can buy myself flowers** (uh-huh) |
| But I just want you to know | Write my name in the sand |
| I hope he buys you flowers | **Talk to myself for hours** (yeah) |
| I hope he holds your hand | Say things you don't understand (you never will) |
| Give you all his hours | **I can take myself dancing**, yeah |
| When he has the chance | **I can hold my own hand** |
| Take you to every party | Yeah, I can love me better than |
| 'Cause I remember how much you loved to dance | Yeah, I can love me better than you can |
| Do all the things I should have done | Can love me better, I can love me better, baby (oh, oh) |
| When I was your man | Can love me better, I can love me better, baby (than you can) |
| Do all the things I should have done | Can love me better, I can love me better, baby |
| When I was your man | Can love me better, I-Can love me better |
| | I can love me better, baby (ah) |
| | Can love me better |
| | I can love me better (than you can), baby |
| | Can love me better |

| ***Man* Lyrics** | ***Flowers* Lyrics** |
|---|---|
|  | I can love me better, baby |
|  | Can love me better, I... |

Facts 144-145.  For at least the following reasons, on their face the claimed lyrical similarities do not satisfy the extrinsic test.

First, although ideas are not protectable, under the extrinsic test, Plaintiff "must show that the ideas in the works at issue are substantially similar…."  *Frybarger v. Int'l Bus. Machines Corp.*, 812 F.2d 525, 529 (9th Cir. 1987); *see above* at 3-4.  Here, an objective reading of the allegedly similar lyrics confirms they are very different in ideas.  *Man* is a breakup song from the perspective of a man who regrets not doing various things he believes could have saved his relationship.  Fact 146.  *Flowers* is a breakup song from the perspective of a woman rejoicing in her independence and self-reliance.  Fact 147.  **Besides being about a breakup, the *ideas* of *Flowers* are completely contrary to those of *Man***.  Because the extrinsic test requires "substantial similarity of ideas *and* expression" (*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (emphasis added)), Plaintiff cannot satisfy the extrinsic test.

Second, *Flowers'* and *Man's* respective lyrics also are not substantially similar in expression.  *Flowers'* "I can buy myself flowers" and its separate lyric five lines later, "And I can hold my own hand," are not substantially similar to *Man's* single lyric, "That I should have bought you flowers And held your hand."  Facts 144-145, 149-153; *see, e.g.*, *Puckett v. Hernandez*, No. 216CV02199SVWAGR, 2016 WL 7647555 at *2, *5 (C.D. Cal. Dec. 21, 2016) (plaintiff's lyrics "I would die for you baby but you don't feel me/I gave you my heart, but you didn't do the same" and defendants' lyrics "I would die for you, baby, but you won't do the same" not substantially similar as a matter of law).  Likewise, *Flowers'* "Talk to myself for hours" is not substantially similar to *Man's* "Should have gave you all my hours," and *Flowers'* "I can take myself dancing" is not substantially similar to *Man's* "Take you

12

to every party cause all you wanted to do was dance." Facts 154-157. Indeed, Plaintiff and its expert, Mr. Ricigliano, claim only "a meaningful connection" between *Flowers*' and *Man*'s respective lyrics. Fact 267.

Third, the extrinsic test requires the identification of "concrete elements based on objective criteria" (*Three Boys Music*, 212 F.3d at 485), followed by "filtering out and disregarding the non-protectible elements" (*Yonay*, 163 F.4th at 692). Those unprotectable elements include words and "[o]rdinary phrases…." *Narell*, 872 F.2d at 911 (no copyright protection in phrases including "river wound its way between muddy banks crawling with alligators"). They also "include *scenes-a-faire* (that is, situations and incidents that flow necessarily or naturally from a basic plot premise or generic plot line)." *Corbello v. Valli*, 974 F.3d 965, 975 (9th Cir. 2020) (citation omitted).

Here, all of the lyrics Plaintiff relies upon flow naturally from the fact both are breakup songs. Facts 161-168. Indeed, Justin Bieber's 2011 *That Should Be Me* is a breakup song that also refers to flowers, holding hands, taking an ex-lover places, and talking for hours. Fact 165. Plaintiff impermissibly relies on "commonplace elements that are firmly rooted in the genre's tradition." *Skidmore*, 952 F.3d at 1069 (citation omitted).

Further, the lyrics Plaintiff identifies in *Man* as supposedly similar to *Flowers* do not appear in *Flowers*. For example, *Man*'s lyric "That I should have bought you flowers And held your hand" is not in *Flowers*. Instead, Plaintiff relies upon single words in otherwise different lyrics. Facts 149-157, 169. The only *concrete similarities* between *Flowers*' "I can buy myself flowers" and *Man*'s "That I should have bought you flowers," are the words "I," "buy"/"bought," and "flowers"; between *Flowers*' "And I can hold my own hand" and *Man*'s "And held your hand" are the words "and," "hold"/"held," and "hand"; between *Flowers*' "Talk to myself for hours" and *Man*'s "Should have gave you all my hours" is the word "hours"; and between *Flowers*' "I can take myself dancing" and *Man*'s "Take you to every party cause all

13

you wanted to do was dance" are the words "take" and "dancing"/"dance." No one owns these words, which are commonplace tropes in breakup songs (Facts 161-168) and also used in otherwise different lyrics (Facts 158-160).

For each of the foregoing reasons, no expert testimony is needed to confirm that the lyrics of *Man* and *Flowers* are not substantially similar in ideas and expression, let alone in both. Accordingly, Plaintiff's claim fails as a matter of law.

### (ii)    Even if Rovin Is Not Excluded, He Does Not Save Plaintiff's Claim

Plaintiff belatedly added Mr. Rovin as a purported rebuttal witness, and he claims to compare the lyrics as literary works under the *Shaw* test, comparing characters, setting, plot, sequence of events, pace, mood, and dialogue. But he relies on "similarities at such a high level of abstraction that the similarities do not involve protected expression." *Yonay*, 163 F.4th at 693; *see also CBS Broad., Inc. v. American Broad. Cos., Inc.*, No. CV 12–04073GAF(JEMx), 2012 WL 13013027 at *7 (C.D. Cal. June 21, 2012) ("Rovin has identified nothing but particular tropes of the reality television genre"). Rather than filtering out unprotected ideas and abstractions, he relies on them.

Mr. Rovin claims similarity in <u>characters</u> because they lack names (which is commonplace in songs), they include ex-lovers, and the singers are "looking back at a relationship that was good … but then soured and ended" (which is generic to breakup songs and abstract). Facts 170-172, 174-176, 183-185. He also admits differences (Facts 173, 177-181) and his claimed similarities fall far short of those courts have rejected. *See, e.g., Funky Films*, 462 F.3d at 1078-79 ("prodigal son" characters returning to family-run funeral homes only "similar at the abstract level").

Mr. Rovin claims similarity in <u>setting</u> because *Man* and *Flowers* are set in the present and each refers to a home (which are generic), but he admits there are also differences in setting. Facts 186-189; *Funky Films*, 462 F.3d at 1080 (differences in "contemporary, family-run funeral home" setting undercut claim).

He claims the <u>plots</u> of *Man* and *Flowers* are "identical" and that in each, the narrator looks back at a relationship that ended and the reality of moving on. Fact 190. But that again is generic to breakup songs (Facts 191-193), and there are obvious differences in the plots (Facts 196-205). He claims the songs use buying flowers, hand holding, and dancing as "narrative triggers," but that is an unprotected concept and he admits they are different in *Man* and *Flowers*. Facts 194-195; 17 U.S.C. § 102(b) (concepts are unprotectable); *see also Funky Films*, 462 F.3d at 1078 (basic plot ideas are unprotectable, far more detailed plot similarities rejected).

He claims similarity in <u>sequence of events</u> because *Man* and *Flowers* each include flashbacks and "flash-forwards" to the present. Mr. Rovin admits those commonplace literary devices (Facts 206-207) occur at different points in each song and "flash" to different past and present events (Facts 208-216). *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1072 (C.D. Cal. 2010) ("[S]equence of events refers to the actual sequence of the scenes, not just having similar scenes out of sequence.").

He claims similarity in <u>pace</u> because *Man*'s first line of lyrics—constituting only one-half of one musical phrase, and *Flowers*' first two lines of lyrics—constituting an entire first phrase—each have thirteen syllables in completely different words, but that similarity is isolated and random. Facts 223-230. He also claims similar pace because the songs mention past and present events, but the songs spend different amounts of time in the past and present, and the claimed similarity is abstract. Facts 217-222.

Mr. Rovin claims *Man* and *Flowers* are supposedly about "relationship inexperience," and "regret," but he admits that the songs express very different perspectives on those generic break-up song themes. Facts 231-234. He also claims both songs "are about female empowerment" because the ex-lover in *Man* and the singer in *Flowers* supposedly "endured all they could, then left." Fact 235-237. That abstraction ignores, *e.g.*, that *Man* is from the man's perspective of the man, not the

ex-lover's.  Fact 238.  Mr. Rovin's strained and abstract similarities fall far short of thematic similarities courts have rejected.  *See, e.g.*, *Funky Films*, 462 F.3d at 1079-80.

While *Man*'s <u>mood</u> is sullen and regretful, *Flowers* is joyful and empowering. Mr. Rovin argues the ex-lover in *Man* must be "euphoric" to have left the singer, but Mr. Rovin again ignores *Man* is from the despondent man's point of view.  Facts 239-243.

Finally, Mr. Rovin claims "indisputably similar" <u>dialogue</u> because of the references to buying flowers, holding hands, hours, and dancing.  But those are commonplace tropes used in otherwise very different contexts in *Man* and *Flowers*. Facts 149-169; *see also Narell*, 872 F.2d at 911 (no protection in ordinary phrases). Mr. Rovin also argues that both songs include "baby," "oh," and "ooh," but they too are generic in songs and used very differently in *Flowers* and *Man*.  Facts 244-253.

Mr. Rovin's claimed similarities are irreconcilable with this Circuit's caselaw after *Shaw* and must be disregarded.

**(4)      Plaintiff Cannot Save Its Claim by Arguing *Flowers* Copies a Selection and Arrangement of Unprotected Elements in *Man***

Plaintiff relies on unprotected elements such as pitches, chords, and the words "flowers," "hand," "hours," and "dancing," and Plaintiff cannot save its copyright infringement claim by switching to a selection and arrangement theory.

A protectable "selection and arrangement" of unprotected elements "must be original" and protects only "the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design."  *Yonay*, 163 F.4th at 696 (quoting *Skidmore*, 952 F.3d at 1074).  Importantly, a plaintiff must show not just that its work is a protected selection and arrangement, but also that its and the defendants' works "share, in substantial amounts, the 'particular,' *i.e.*, the 'same,'" selection and arrangement. *Skidmore*, 952 F.3d at 1074.

16

Here, the allegedly copied musical and lyrical elements in *Man* do not form a coherent pattern or design and instead are scattered throughout *Man*. *See above* at 5-14. Nor do the claimed similarities amount to a "particular" coherent pattern, synthesis, or design that is the "same" in both songs. *Skidmore*, 952 F.3d at 1074. Quite the contrary, the claimed similarities appear in different parts of *Man* and *Flowers*. Thus, Mr. Ricigliano identifies a handful of lyrical tropes in a different context and different sequence in *Man* and *Flowers'* respective choruses, but he identifies almost *no* similarities in the music of those choruses. Facts 254-263. Separately, he identifies fragmentary similarities in the overall different melodies and chords of *Man*'s verse and *Flowers'* chorus, but the lyrics in those sections are very different. Facts 52, 264. Mr. Ricigliano also did not research prior art to determine whether any selection and arrangement is original or commonplace. *Yonay*, 163 F.4th at 696; Facts 5, 139. And Mr. Rovin never identified a similar selection and arrangement.

Plaintiff's claim relies on scattered and unprotectable fragments that *Man* and *Flowers* select and arrange into different musical designs. *Skidmore* mandates that Plaintiff's copyright infringement claim be rejected and Defendants' Motion granted.

### 3. PLAINTIFF'S CLAIM IS BARRED BY FAIR USE

Fair use "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). The Copyright Act identifies four factors courts consider to determine whether the doctrine applies: (1) "the purpose and character of the use," (2) "the nature of the copyrighted work," (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(1)-(4).

Fair use is a "mixed question of law and fact" that may be decided as a matter of law when "[n]o material historical facts are at issue [and t]he parties dispute only

the ultimate conclusions to be drawn from admitted facts." *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013) (affirming summary judgment on fair use defense).  Here, there is no genuine dispute regarding the facts establishing fair use.

### (a)   The Purpose and Character of the Use

"The first factor in the fair use inquiry is 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.'"  *Seltzer*, 725 F.3d at 1175 (quoting 17 U.S.C. § 107(1)).  "The central question … is whether the new work 'merely supersedes the objects of the original creation … or instead adds something new, with a further purpose or different character.'"  *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 509-10 (2023) (quoting *Campbell*, 510 U.S. at 579).  "[W]hether the use of a copyrighted work has a further purpose or different character, … is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use." *Id.* at 532.

A use with "a further purpose or different character" is said to be "transformative…." *Campbell*, 510 U.S. at 579.  Section 107 provides examples of fair uses, including "criticism" and "comment."  17 U.S.C. § 107 (preamble); *Campbell*, 510 U.S. at 578-79.  Indeed, "among the best recognized justifications for copying from another's work is to provide comment on it or criticism of it." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 215 (2d Cir. 2015); *Warhol*, 598 U.S. at 532 ("[C]ommentary or criticism that targets an original work may have compelling reason to 'conjure up' the original'").

For fair use purposes, it is irrelevant that the *Flowers* Songwriters did not copy *Man* or any part of it and did not intend *Flowers* as a reference to *Man*.  "[W]hether a secondary use is transformative turns on what a reasonable observer thinks, not the subjective intent of the copyright holder or that of the secondary user." *Santos v. Kimmel*, 154 F.4th 30, 34 (2d Cir. 2025) (citing *Warhol*, 598 U.S. at 544); *Campbell*,

510 U.S. at 582 ("The threshold question when fair use is raised in defense of parody is whether a parodic character may reasonably be perceived"); *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (artworks were transformative despite artist's testimony he "[doesn't] really have a message" or "interest in … [the] intent" of the plaintiff's works). The first factor strongly favors fair use.

### (1) *Flowers* Can Reasonably Be Perceived as Transformative Commentary or Criticism on *Man*

*Flowers* plainly can be seen as commenting on or criticizing *Man*. *Man* is a breakup song from the perspective of a heartbroken male who regrets he was "too young, too dumb to realize" he could have saved his relationship if only he had bought his ex-lover flowers, held her hand, given her his hours, and taken her to parties. Facts 144, 265. On the other hand, *Flowers* uses similar relationship tropes but in different ways to convey a different message: the protagonist "starts to cry" over a relationship that ended, but then remembers she does not need her ex-lover—she can buy herself flowers, write her name in the sand, talk to herself for hours, say things her ex-lover does not understand, take herself dancing, hold her own hand, and love herself better than her ex-lover can. Facts 145, 266.

Even Plaintiff alleges the lyrics "have a meaningful connection." Fact 267. That meaningful connection is perceiving *Flowers* as a response to *Man*. Fact 268. In so doing, *Flowers* "she[ds] light" on *Man* and the naive message of its grieving protagonist that buying flowers and hand-holding could have saved his relationship. *Campbell*, 510 U.S. at 579, 584 (first factor favored fair use where parody of *Oh, Pretty Woman* "c[ould] be taken as a comment on naiveté of" original); *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 323 (S.D.N.Y. 2008) (use of John Lennon's *Imagine* in film was transformative where juxtaposition of song with images criticized "the naïveté of John Lennon's views").

*Flowers*' music also supports perceiving it as commentary. The mournful character of *Man*'s singer is reflected in its slow, piano ballad music, whereas

19

*Flowers'* contrasting empowering message is reflected in *Flowers'* upbeat, danceable rhythm and style.  Facts 115-116, 271-272.  As another example, the end of *Man*'s chorus is extended, adding a sense of longing and regret on the lyric, "but she's dancing with another man."  In contrast, *Flowers* shortens the end of its choruses, a gesture of dismissal that correlates with the lyrics "I can love me better than you can." Facts 269-270.

Flowers can reasonably be perceived as commenting on *Man* and is highly transformative.

### (2)    *Flowers'* Commercial Use Does Not Outweigh Its Transformative Character

Under the first factor, the Court also considers whether the defendant's use is "of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1).

Importantly, "[t]he commercial nature of the use is not dispositive" of the analysis.  *Warhol*, 598 U.S. at 531.  Otherwise, fair use would be barred for "nearly all of the illustrative uses listed in … § 107."  *Campbell*, 510 U.S. at 584.  Rather, the Court considers "the degree to which the new user exploits the [plaintiff's] copyright for commercial gain—as opposed to incidental use as part of commercial enterprise." *Seltzer*, 725 F.3d at 1178.  In other words, the Court must "balance[]" the degree of transformative purpose or character "against the commercial nature of the use." *Warhol*, 598 U.S. at 532.

Here, *Flowers* does not commercially exploit *Man* in any respect.  Defendants did not sell copies of *Man* or use *Man* to market *Flowers* or any product.  Fact 273; *Seltzer*, 725 F.3d at 1178 (band's use of a copyrighted drawing in a video backdrop at concerts was only incidentally commercial because the band "never used [plaintiff's work] to market the concert, CDs, or merchandise").  Instead, the claimed similarities are a few relationship tropes and commonplace musical building blocks in a creative work, *Flowers*, that is very different from *Man*.  *See above* at 5-16.

Accordingly, the first factor strongly favors fair use.

**(b)    The Nature of *Man***

The second factor considers whether the plaintiff's work is creative or factual, and published or unpublished.  *Seltzer*, 725 F.3d at 1178; 17 U.S.C. § 107(2).

While *Man* is a creative musical work, it had been published for a decade before *Flowers*' release in 2023.  Facts 4, 274.  "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred."  *Seltzer*, 725 F.3d at 1178.  Moreover, this factor has "limited usefulness where," as here, a "creative work of art is being used for a transformative purpose."  *Bill Graham Archives v. Dorling Kinderesley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006); *accord Campbell*, 510 U.S. at 586; *Google*, 804 F.3d at 220 (second factor "rarely play[s] a significant role" in determining fair use).

This factor accordingly is neutral and has limited weight.

**(c)    The Amount and Substantiality of the Claimed Similarities Relative to *Man* as a Whole**

The third factor examines the "'amount and substantiality' of the portion of the [plaintiff's work] used 'in relation to the [plaintiff's] work as a whole.'"  17 U.S.C. § 107(3).  This factor favors fair use if the defendant's work "did not use more than … reasonably necessary to make an understandable comment."  *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1154-55 (9th Cir. 1986); *Campbell*, 510 U.S. at 586-87 (the extent of the permitted use "varies with the purpose and character of the use").

Here, copying is denied, but there is no real dispute that the allegedly similar portions of *Man* and *Flowers* are minimal.  Qualitatively, the claimed similarities are fragmentary, generic, and abstract; not even one full lyrical or melodic phrase in *Man* appears in *Flowers*.  Facts 275-276; *see also SOFA Entm't*, 709 F.3d at 1279 (third factor favored fair use where "doubtful that the [copied] clip [of television show] qualified for copyright protection").  Quantitatively, less than 15% of *Man*'s words were allegedly copied, *even including* "baby," "mm," "oh," and "ooh."  Fact 276.

Musically, the similarities are too abstract and fragmentary to quantify, but amount to far less than 25% of the song.  Facts 278-281; *cf. Lennon*, 556 F. Supp. 2d at 326 (use of fifteen seconds of the "heart" of a song containing phrases constituting 48.8% of song, fair where "relevant to defendants' commentary"); *Threshold Media Corp. v. Relativity Media, LLC*, No. CV 10-09318, 2013 WL 12331550 at *11 (C.D. Cal., Mar. 19, 2013) (use of forty-one seconds (22%) of recording of song and twenty-eight seconds (13%) of another recording of same song fair).  Importantly, the similarities are not more than reasonably necessary for *Flowers* to be perceived as commentary.

The third factor accordingly strongly favors fair use.

**(d)**    **The Effect on the Market for or Value of Plaintiff's Work**

Finally, the Court considers the "secondary use's impact on the market for the original work and the market for derivative works[.]" *SOFA Entm't*, 709 F.3d at 1280; 17 U.S.C. § 107(4).  "Market harm caused by effective criticism … is not cognizable." *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1107 (C.D. Cal. 2015) (citing *Campbell*, 510 U.S. at 592).

However, *Flowers* did not result in any cognizable market harm whatsoever to *Man*: Plaintiff has admitted that after *Flowers* was released, streaming of *Man* **rose** nearly twenty percent, and that *Man* "continues to be a strong performer in streaming." Facts 282-284, 290.  Nor could *Flowers* result in cognizable harm to *Man*'s market for synchronization licenses, *i.e.*, for use in movies, television shows, or other audiovisual works.  While *Man* might fit a scene where, for example, a person is sad about losing a lover, the joyous and boisterous *Flowers* certainly would not.  Facts 285-289.

Because the evidence shows that *Flowers* did not negatively affect the market for *Man*, the fourth factor also weighs strongly in favor of fair use.  *See, e.g., Seltzer*, 725 F.3d at 1179; *Bill Graham Archives*, 448 F.3d at 614-15.

As the factors on balance weigh heavily in favor of fair use, Plaintiff's claim fails as a matter of law.

## 4.    CONCLUSION

Defendants respectfully submit that their Motion should be granted and judgment entered in their favor.

Dated: February 23, 2026

Peter Anderson, Esq.
Eric H. Lamm, Esq.
Alexandra P. Cadena, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
MILEY CYRUS, GREGORY HEIN, MICHAEL POLLACK, MCEO, INC., SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US) LLC, PULSE 2.0, LLC, PURE TONE MUSIC, LLC, BLASTRONAUT, INC., WARNER-TAMERLANE PUBLISHING CORP., AMAZON.COM SERVICES LLC, APPLE INC., PANDORA MEDIA, LLC, DISNEY PLATFORM DISTRIBUTION, INC., TARGET CORP., BARNES & NOBLE BOOKSELLERS, INC., TIDAL MUSIC LLC, WALMART INC., WAL-MART.COM USA, LLC, WIDE EYED GLOBAL, IHEARTMEDIA, INC., LIVE NATION ENTERTAINMENT, INC., XANDRIE SA, DEEZER S.A., and SOUNDCLOUD GLOBAL LIMITED & CO. KG

23

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this Memorandum contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 23, 2026

_____

Peter Anderson, Esq.

24