Alex M. Weingarten (SBN 204410)
  AWeingarten@willkie.com
Jeffrey K. Logan (SBN 136962)
  JLogan@willkie.com
Amy M. Stern (SBN 311382)
  AStern@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 2900
Los Angeles, CA  90067
Telephone:   (310) 855-3000
Facsimile:   (310) 855-3099

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>MILEY CYRUS, et al.,<br><br>                    Defendants. | Case No. 2:24-cv-07910-MRA-BFM<br><br>Hon.  Mónica Ramírez Almadani<br><br>**PLAINTIFF TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date :        May 5, 2026<br>Time :       10:00 a.m.<br>Location:   411 W. 4th Street<br>                 Courtroom 9B<br>                 Santa Ana, CA 92701<br><br>Action Filed:   September 16, 2024 |

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ............................................................................2

III.  LEGAL STANDARD .......................................................................................5

IV.   PLAINTIFF'S CLAIM IS PREMISED ON A PROTECTABLE SELECTION AND ARRANGEMENT OF ELEMENTS ...........................5

      1.  *Man*'s Combination of Lyrics Is Protectable ......................... 7

      2.  *Man*'s Combination of Musical Elements Is Protectable ........ 8

V.    THERE IS, AT MINIMUM, A GENUINE DISPUTE OF MATERIAL FACT AS TO SUBSTANTIAL SIMILARITY ...................10

    A.  The Extrinsic Test as It Applies to Plaintiff's Claim...................... 10

    B.  There Is, at Minimum, a Triable Question of Fact as to the Lyrical Similarities.................................................................... 11

      1.  *Flowers* Copies *Man*'s Protected Lyrical Elements .............. 11

      2.  Rovin Properly Applied the Extrinsic Test on Rebuttal........ 12

    C.  There Is, at Minimum, a Triable Question of Fact as to the Musical Similarities ........................................................................ 13

      1.  *Flowers* Copies *Man*'s Protected Musical Elements............. 13

      2.  Ricigliano Properly Applied the Extrinsic Test .................... 15

VI.   FAIR USE IS AT LEAST A TRIABLE ISSUE.........................................16

    A.  The Purpose and Character of the Use Weigh in Plaintiff's Favor 17

      1.  *Flowers*' Purpose Is Commercial .......................................... 17

      2.  *Flowers*' Use Is Unjustified Because It Is Not Commentary Nor Otherwise Transformative........................ 18

    B.  *Man* Is a Creative and Published Work .......................................... 20

    C.  Defendants Copied a Substantial Portion of *Man* Without Justification ..................................................................................... 20

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

i

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

D.    Defendants' Use Negatively Impacts the Market for *Man* ..............21

VII.   CONCLUSION ..................................................................................................23

CERTIFICATE OF COMPLIANCE ........................................................24

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosetti v. Oregon Cath. Press*,
  151 F.4th 1211 (9th Cir. 2025)......................................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................................5

*Andy Warhol Found. v. Goldsmith*,
  598 U.S. 508 (2023) .................................................................................. 17, 18, 19

*Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*,
  420 F.Supp. 177 (S.D.N.Y. 1976) ...........................................................................8

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .......................................................................................*passim*

*Cellular Accessories for Less, Inc. v. Trinitas LLC*,
  65 F.Supp.3d 909 (C.D. Cal. 2014)..........................................................................6

*De Fontbrune v. Wofsy*,
  39 F.4th 1214 (9th Cir. 2022)..................................................................................22

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020).........................................................................*passim*

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (1997) ..........................................................................................19, 22

*Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*,
  2022 WL 16957834 (C.D. Cal. Oct. 12, 2022) .....................................................13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ...............................................................................................6, 7

*Gregorini v. Apple Inc.*,
  2024 WL 5264949 (C.D. Cal. Nov. 25, 2024)....................................................6, 16

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213 (9th Cir. 2008).................................................................................6

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

i

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

*Hall v. Swift*,
2021 WL 6104160 (C.D. Cal. Dec. 9, 2021) ................................................. 8, 12

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023) ...................................................... 6, 10, 21

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ................................................................. 19

*Henley v. DeVore*,
733 F.Supp.2d 1144 (C.D. Cal. 2010) ............................................. 16

*Hunt v. Cromartie*,
526 U.S. 541 (1999) .................................................................. 5

*Incredible Features, Inc. v. Backchina, LLC*,
2021 WL 6337194 (C.D. Cal. Dec. 16, 2021) ..................................... 22

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (2008) ............................................................. 20, 22

*Lois v. Levin*,
2022 WL 4351968 (C.D. Cal. Sept. 16, 2022) ..................................... 9

*Masterson v. Walt Disney Co.*,
821 F.App'x 779 (9th Cir. 2020) ................................................ 12, 13

*MCA, Inc. v. Wilson*,
677 F.2d 180 (2d Cir. 1981) ...................................................... 19

*Metcalf v. Bochco*,
294 F.3d 1069 (9th Cir. 2002) ..................................................... 9

*Moonbug Ent. Ltd. v. BabyBus Co.*,
2025 WL 3111597 (9th Cir. Nov. 6, 2025) ......................................... 5

*Moonbug Ent. Ltd. v. BabyBus Network Tech. Co.*,
2024 WL 2193323 (N.D. Cal. May 15, 2024) ...................................... 5

*Morris v. Guetta*,
2013 WL 440127 (C.D. Cal. Feb. 4, 2013) ........................................ 23

*N. Coast Indus. v. Jason Maxwell, Inc.*,
972 F.2d 1031 (9th Cir. 1992) ..................................................... 6

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

ii

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004) .................................................................. 13

*Salinger v. Random House, Inc.*,
811 F.2d 90 (2d Cir.) ............................................................................... 12

*Saunders v. Brown*,
2022 WL 22970162 (C.D. Cal. Nov. 21, 2022) ......................................... 8

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) ............................................................ 17, 20

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ............................................................. 9, 13

*Sound & Color, LLC v. Smith*,
2025 WL 1232639 (9th Cir. Apr. 29, 2025) ................................ 6, 10, 14, 15

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ............................................................ 6, 8, 9, 10

*U.S. v. Hamilton*,
583 F.2d 448 (9th Cir. 1978) ..................................................................... 7

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) .................................................................. 10

*WMTI Prods., Inc. v. Healey*,
2023 WL 5506712 (C.D. Cal. July 13, 2023) .......................................... 16

*Woodall v. Walt Disney Co.*,
2024 WL 5329913 (C.D. Cal. Nov. 1, 2024) ......................................... 7, 10

*Woodall v. Walt Disney Co.*,
2024 WL 5337320 (C.D. Cal. Nov. 4, 2024) ........................................... 16

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000) ............................................................ 22, 23

**Statutes**

17 U.S.C. § 107(3) ........................................................................................ 20

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................... 5

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

iii

L.R. 11-6.1 ............................................................................................................... 24

**Other Authorities**

Leval, Pierre N., *Toward a Fair Use Standard,* 103 Harv.L.Rev. 1105 (1990) ................................................................................................................. 22

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

iv

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants' summary judgment motion hinges in part on a finding that Miley Cyrus' 2023 song *Flowers* is not substantially similar to Bruno Mars' 2012 song *When I Was Your Man* ("*Man*").  Yet, as soon as *Flowers*, the infringing work in this case, hit the airwaves, pop culture headlines were abuzz with speculation about its relationship to *Man*.  The record shows that the music industry and fans of pop music were not the only ones to spot the undeniable similarities between the two works.  Indeed, their highly similar lyrical and musical material has been the subject of extensive expert testimony.  Simply put, where there's smoke, there's fire.  Defendants cannot establish as a matter of law that Plaintiff's claim fails under the extrinsic test for substantial similarity, nor can they prevail on their seemingly contradictory affirmative defense of fair use.

First, there are, at minimum, genuine disputes as to whether Defendants copied protectable expression in *Man*.  Defendants admit the works have similarities but downplay them by mischaracterizing them as "commonplace" and "fragmentary" elements that must be filtered out.  Plaintiff has always maintained that its claim is about an original combination of musical and lyrical material that exists in extensive and important sections of *Man* and was copied in large quantity in *Flowers*.  Namely, *Flowers* takes a creative selection and arrangement of musical elements from *Man*'s verse, and a creative selection and arrangement of lyrics from *Man*'s chorus, and uses each of them in its own chorus.  *Flowers*' songwriters (all of whom admitted to having heard *Man* before writing *Flowers*) testified that *Flowers* came together "relatively quickly" compared to other songs, and it is easy to see why.  In any event, neither filtering nor prior art research are prerequisites of Plaintiff's particular selection-and-arrangement claim, although Defendants' own expert admits that none of the supposed prior art that he identified has all of the similarities at issue.

1

Defendants also complain that Plaintiff submitted a rebuttal expert opinion concerning the lyrical similarities that should have been disclosed as an affirmative opinion.  But, that is based on a misunderstanding of Jeff Rovin's role, as he simply used a different framework to counter the defense experts' attempt to portray the lyrical similarities as pure coincidence.

Second, there is also at least a material factual dispute as to Defendants' fair use defense, which contradicts Defendants' other arguments.  The fact that Defendants claim on the one hand that the lyrical similarities between the songs are pure coincidence and on the other, that *Flowers* gets a pass for those similarities because it can be understood as commenting on or criticizing *Man*, should mean that Defendants themselves have created the factual dispute that bars summary judgment.  Regardless, their argument fails.  Defendants took a pre-existing work, repackaged extensive aspects of it in large quantities, and sold it to the same market.  They claim *Flowers* is transformative of *Man* because it "uses similar relationship tropes but in a different way to convey a different message."  But turning "I should have bought you flowers" and "held your hand" into "I can buy myself flowers" and "hold my own hand" does not suggest a new way of using these "tropes."  Telling the same story using the same words in a more danceable pop song is not critique or commentary, nor is it transformative as that term is understood in determining whether a use is fair.

Accordingly, Defendants' Motion should be denied.

## II.    FACTUAL BACKGROUND

Plaintiff owns a share of the copyright in *Man*,[1] the Grammy-nominated pop song by Bruno Mars that has been widely disseminated since 2013. PAUF1.  In 2022, after each having heard *Man*, Defendants Miley Cyrus, Gregory Hein, and Michael Pollack composed *Flowers*' music and lyrics over the "relatively quick[]"

---

[1] *Man*'s copyright was registered prior to this case's initiation.  PAUF2.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

course of a day or two.  SGD3; PAUF3-4.  Defendants claim they did not intentionally copy from or reference *Man* in *Flowers*.  PAUF5.  However, as they admit, the public rapidly identified connections between *Man* and *Flowers* when Cyrus's recording of *Flowers* was released in January 2023.  PAUF6-7, 80.

Plaintiff subsequently initiated this action against *Flowers*' songwriters, publishers, and distributors who have commercially profited from *Flowers*, asserting that *Flowers*' unlicensed use of *Man*'s music and lyrics amounts to copyright infringement.  ECF 93; PAUF8.  Plaintiff's claim is supported by the testimony of Anthony Ricigliano, a seasoned musicologist who compared the works and opines that among other similarities, *Flowers* copies a distinctive combination of musical and lyrical elements that originated in *Man*.  PAUF9-10.

The original combination of musical elements in *Man*'s opening verse copied in *Flowers* includes, *inter alia*:[2]

- In the first two bars, the melody begins with a stagnant design of repeating and emphasizing the pitch E, followed by a melodic contour containing the pitch series E-D-C-E-F;

- In the third and fourth bars, the melody develops from the first two bars beginning with a stagnant design of repeating and emphasizing the pitch D, followed by a 2-pitch dissonance of C to A against the G chord, a subsequent leap up a fourth to the dissonant pitch D against the C major chord, and a resolution into the consonant pitch E.  Its harmony also includes a connecting bass-line C-B-A that moves into the next melodic unit;

- In the fifth and sixth bars, repetition of the pattern in the first two bars with slight variation; and

---

[2] This is a non-exhaustive list, as these are far from the only musical similarities the songs share.  Declaration of Anthony Ricigliano ("Ricigliano Decl."), ¶¶ 26-28, 51 (discussing melodic and rhythmic similarities in the choruses); PAUF75-79.

3

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

- A unifying harmonic design throughout that follows the "circle of fifths" chord progression, with a C pitch connective bass element that is only part of the movement from A minor to D minor and not the subsequent chord movements.

PAUF11.

The lyrics of the songs' choruses are compared below (similarities in red[3]):

| *Man* | *Flowers* |
|---|---|
| [Chorus 1]<br>That I should have bought you flowers<br>And held your hand<br>Should have gave you all my hours<br>When I had the chance<br>Take you to every party<br>'Cause all you wanted to do was dance<br>Now my baby's dancing<br>But she's dancing with another man | [Chorus 1]<br>I can buy myself flowers<br>Write my name in the sand<br>Talk to myself for hours<br>Say things you don't understand<br>I can take myself dancing<br>And I can hold my own hand<br>Yeah, I can love me better than<br>   you can |

PAUF12-15.

The lyrical similarities comprise four identical end-rhyme words ("flowers," "hand," "hours," and "dancing") used in the songs' choruses to refer to four of the same romantic expressions ("buying flowers," "holding hands," spending "hours" together, and "taking" someone "dancing"). PAUF16-17.

Defendants offer testimony from musicologists Matthew BaileyShea and Lawrence Ferrara who contradictorily opine that: (1) any similarity between *Man* and *Flowers* is purely coincidental; and (2) there is enough similarity for *Flowers*

---

[3] Defendants include a chart in their brief that supposedly shows the lyrics at issue in bold. Mem., 9:18-12:3. But, it excludes all of the similar lyrics in *Man*'s third chorus. Defendants may claim these are not at issue because *Man* shifts the perspective of its third chorus from first to third person, but that is disingenuous. The key words and expressions in *Man*'s third chorus are the same, other than "dancing" becoming "dance." SGD144-145.

4

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP<br>2029 CENTURY PARK EAST, SUITE 2900<br>LOS ANGELES, CA 90067<br>310.855.3000

to be construed as commentary on or parody of *Man*. PAUF18-20. In rebuttal, Plaintiff designated literary expert Jeff Rovin, who strongly disagrees that *Flowers* is anything other than a copy of *Man*. PAUF21-22. The parties also offer expert testimony concerning the songs' markets and dissemination. PAUF23-24.

## III. LEGAL STANDARD

Summary judgment may only be granted where "there is no genuine dispute as to any material fact." FRCP 56(a). In ruling on a motion for summary judgment, the Court's role is not to weigh the evidence or make credibility determinations; rather, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV. PLAINTIFF'S CLAIM IS PREMISED ON A PROTECTABLE SELECTION AND ARRANGEMENT OF ELEMENTS

Defendants characterize Plaintiff's claim as relying on unprotectable elements that, when "filtered out" under the extrinsic test, leave no material similarities between the two works. Mem*.,* 1:15-26. But, their argument depends on a theory of copyright infringement that Plaintiff is not asserting. Plaintiff is not claiming that any of the individual musical and lyrical elements at issue in *Man* constitutes protectable expression on its own. Rather, Plaintiff's claim is and has been that *Man*'s creative selection and arrangement of each of those elements forms a distinctive and original expression that is protectable.[4] PAUF25.

---

[4] Plaintiff need not use those precise "magic words" to make its claim. *See Moonbug Ent. Ltd. v. BabyBus Network Tech. Co.,* 2024 WL 2193323, at *10 (N.D. Cal. May 15, 2024), *aff'd sub nom. Moonbug Ent. Ltd. v. BabyBus Co.*, 2025 WL 3111597 (9th Cir. Nov. 6, 2025).

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

5

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

So, while it may be true that Plaintiff's claim concerns unprotectable elements, it does not favor Defendants as they insist. In a typical application of the extrinsic test, the court "filter[s] out" unprotected (*i.e.,* commonplace) elements before assessing substantial similarity. *Sound & Color, LLC v. Smith*, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025). But, it is well-established that a combination of unprotectable elements can be protectable by copyright even if each element individually is not. *Swirsky v. Carey*, 376 F.3d 841, 848-49 (9th Cir. 2004).

Such a claim constitutes a "selection-and-arrangement theory of copyright infringement" and "does not entail filtering out unprotected elements." *Gregorini v. Apple Inc.*, 2024 WL 5264949, at *7 (C.D. Cal. Nov. 25, 2024); *see also Smith*, 2025 WL 1232639, at *1 ("[A] selection-and-arrangement theory is an alternative to filtering."). Selection and arrangement "addresses whether a protected expression, as a whole, was unlawfully copied." *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 n.11 (9th Cir. 2023).

A "combination of unprotectable elements" is itself protected expression if the elements are: (1) numerous enough; and (2) selected and/or arranged in an original manner. *Smith*, 2025 WL 1232639, at *1. There is no bright-line rule for numerosity, but even "an arrangement of a limited number of notes can garner copyright protection." *Swirsky*, 376 F.3d at 851. A combination is original when it is "independently created" and conveys "at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

Protectability is a "fact-intensive" issue. *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). The defendant has the burden of proof when challenging originality. *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F.Supp.3d 909, 914 (C.D. Cal. 2014) (citing *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033-34 (9th Cir. 1992)) (holding burden falls

6

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

on defendants as summary judgment movants to show plaintiff's work is non-original by comparing it to preexisting works); *see also Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1225-26 (9th Cir. 2025) (denying summary judgment where "Defendants have not identified any prior works that share the same combination").

Defendants briefly argue Plaintiff cannot "save" its claim by asserting a selection-and-arrangement theory in part because the songs' similarities "do not form a coherent pattern or design and instead are scattered throughout *Man*." Mem., 16:18-20.  However, as discussed below, both *Man*'s lyrical and musical elements reflect original selection and arrangements worthy of copyright protection (or there is, at minimum, a genuine disagreement of the experts).[5]  *See Woodall*, 2024 WL 5329913, at *13 (finding summary judgment inappropriate where experts offered opposing opinions on protectability).

### 1.    *Man*'s Combination of Lyrics Is Protectable

While Defendants largely skirt the issue or try to pick off *Man*'s lyrics line by line, they never claim that the particular selection and arrangement of lyrics in *Man*'s chorus is not subject to copyright protection.  Mem., 12:7-14:6.  If they did, such an argument would weigh equally against the protectability of *Flowers*' lyrics given its uncanny resemblance to *Man* in its use of common romantic expressions.

The combination of the eight lines of lyrics in *Man*'s chorus is protectable, as even facts are copyrightable when particularly arranged.  *See Feist*, 499 U.S. at 358 ("[N]ovelty is not required."); *U.S. v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) (explaining originality does not require "the work be novel in comparison with the works of others").  And, courts have found lyrics protectable based on far

---

[5] Defendants' argument seems at least partially based on an inaccurate characterization of the elements at issue.  Plaintiff's claim is based on *Flowers*' theft of the most memorable and important elements of *Man*, but the similarities between the works are far more extensive.  *Supra* n.2.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

less. *See, e.g.*, *Saunders v. Brown*, 2022 WL 22970162, at *2 (C.D. Cal. Nov. 21, 2022) ("rhythmic chanting of 'wet'"); *Hall v. Swift*, 2021 WL 6104160, at *3 (C.D. Cal. Dec. 9, 2021) (six-word phrase "Playas gon' play" "Haters gon' hate" in "four-part lyrical sequence").

Notably, none of Defendants' prior art examples contain all of the same significant words and phrases, let alone combine them in the same particular way as *Man*. PAUF26-29. While Justin Bieber's 2011 song *That Should Be Me* (*TSBM*) incorporates *some* of the same romantic gestures (Mem., 13:13-18), it bears little resemblance to *Man*, including because, *inter alia*, in *TSBM*: (1) the lyrics do not reference "dancing" or "buying flowers"; (2) the "***giving*** flowers" and "hours" lyrics are neither in the song's chorus nor ever repeated; and (3) only the word "hand" is used as an end-rhyme in the chorus. PAUF26-27. The rest of Defendants' purported lyrical prior art has even less in common with *Man*. PAUF28-30; SGD165-167.

Because Plaintiff's selection-and-arrangement claim concerns the combination of lyrics in *Man*'s chorus and not any one phrase alone, Defendants cannot establish as a matter of law that the lyrics at issue are not protectable. *See Ambrosetti*, 151 F.4th at 1225-26 (reversing grant of summary judgment in part because defendants did not identify any prior work with same combination of at-issue elements); *Swirsky*, 376 F.3d at 851 (holding whether prior art rendered song unoriginal could not be decided as matter of law).

### 2. *Man*'s Combination of Musical Elements Is Protectable

Defendants' claim that the at-issue musical elements of *Man* (most of which Defendants ignore) are unprotectable fails for similar reasons. Mem., 5:16-7:20.

As with *Man*'s lyrics, the musical material at issue is not about any one protectable element. Rather, it is about "common musical elements" that have been "selected and arranged to form a protectable combination." *See, e.g.*, *Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F.Supp. 177, 178 (S.D.N.Y.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

1976) ("While neither motif is novel, the four repetitions of A, followed by four repetitions of B, is a highly unique pattern."). In the first six measures of *Man*'s opening verse, its composers creatively arranged a combination of otherwise unprotected elements, like pitch sequences and chord progressions (Mem., 6:11-12, 7:8-20), to form protected expression: a specific melody, set against a particular harmony and bass-line, with specified uses of dissonant notes. PAUF11, 31-35. The elements at issue in consecutive units of the verse meet the threshold for creativity and numerosity. *See Swirsky*, 376 F.3d at 851 (citing other cases and holding one bar of seven notes plausibly protectable); *Lois v. Levin*, 2022 WL 4351968, at *6 (C.D. Cal. Sept. 16, 2022) (rejecting argument that musical selection-and-arrangement claim with "only two elements" was per se unprotectable).

And, these musical elements are sufficient to show a coherent and concrete pattern. PAUF36; *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection."), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *see also Ambrosetti*, 151 F.4th at 1225 (finding elements coherent based on "the relationship among the pitch sequences, rhythmic choices, melodic development, and so forth").

None of Defendants' supposed musical prior art renders unoriginal the combination of this musical material. PAUF37. By way of example, no prior art contains the distinctive elements of the melodic pitch sequences in Units 1 and 2 of *Man*, either together or alone. PAUF38. *Flowers*, on the other hand, does, with the exception of a single decorative pitch that does not alter the underlying similarity. *See* Ricigliano Decl., ¶ 21; PAUF39.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

9

## V. THERE IS, AT MINIMUM, A GENUINE DISPUTE OF MATERIAL FACT AS TO SUBSTANTIAL SIMILARITY

When it comes to questions of substantial similarity, summary judgment is "not highly favored" because it "is usually an extremely close question of fact." *Ambrosetti*, 151 F.4th at 1226.  The issue must be decided by the jury as long as there is "indicia of a sufficient disagreement." *Williams v. Gaye*, 895 F.3d 1106, 1137 (9th Cir. 2018).  Where there are dueling expert opinions, substantial similarity is a triable issue.  *See Woodall*, 2024 WL 5329913, at *11 (finding "dueling expert opinions" created triable issue on substantial similarity).

### A. The Extrinsic Test as It Applies to Plaintiff's Claim

Defendants claim they are entitled to summary judgment in part because Plaintiff's experts failed to filter out unprotectable elements under the extrinsic test.  Mem., 5:11-14:6.  Plaintiff's selection-and-arrangement claim is not subject to the extrinsic test as Defendants have described.

The extrinsic test considers whether two works share a similarity of ideas and expression in protected elements.  *Swirsky*, 376 F.3d at 845.  The Ninth Circuit does not have a "'well-defined standard for assessing when similarity in selection and arrangement becomes substantial,'" including because the inquiry is "fact-driven and context-dependent." *Hanagami*, 85 F.4th at 943 (citation omitted).  "The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work … qualitatively and quantitatively." *Id.* at 946.  Under this standard, works do not need to be identical, nor must the original be infringed in its entirety.  *Smith*, 2025 WL 1232639, at *2 (denying summary judgment despite "some variations in the pitch sequences and chord progressions" in hooks at issue); *Williams v. Gaye*, 895 F.3d 1106, 1124-25 (9th Cir. 2018) (no requirement individual elements each be substantially similar).

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

10

**B.** **There Is, at Minimum, a Triable Question of Fact as to the Lyrical Similarities**

Defendants claim the songs are not substantially similar in either idea or expression. They also claim Rovin is an improper rebuttal witness who failed to properly apply the extrinsic test to the lyrics. These arguments fail.

**1.** ***Flowers* Copies *Man*'s Protected Lyrical Elements**

While it hardly takes an expert, Ricigliano properly identified lyrics of the songs' choruses that establish their similarity in idea and expression.[6] PAUF40. The copied lyrics undoubtedly form a qualitatively significant aspect of *Man*'s protected expression. Defendants cannot show otherwise, and certainly not as a matter of law, especially where their own experts' opinions concede *Flowers* copies *Man*'s "most distinctive or memorable features." *Infra* § VI.C; PAUF20.

Defendants argue the songs' ideas are not substantially similar because they are narrated from different perspectives. Mem., 12:11-14. Defendants are focused on the wrong thing. They identify no authority to suggest different perspectives equates to different ideas. If one looks at the lyrics of the choruses themselves, they share nearly identical "ideas" of how someone expresses love in a relationship. SGD144-145. One of *Flowers*' songwriters agreed that both songs "share multiple common words" "used in similar context" because "it's not just a reference to 'hand'; it's 'holding hands'"; and "it's not just a reference to 'flowers'; it's 'buying flowers.'" PAUF41. Or, as Defendants' expert put it, the lyrical idea of both songs could be regret: in *Man*, about "losing someone the singer had taken for granted"; in *Flowers*, about "breakup/leaving [the ex]" and

---

[6] Defendants attempt to diminish the similarities by arguing Ricigliano "claim[s] ***only*** 'a meaningful connection' between *Flowers*' and *Man*'s respective lyrics" is disingenuous. Mem., 13:1-3 (emphasis added). About five pages later in support of their fair use defense, Defendants state that "***[e]ven Plaintiff*** alleges the lyrics 'have a meaningful connection.'" *Id.*, 19:18 (emphasis added). Defendants cannot have it both ways.

11

later realizing "she doesn't need him to be happy." PAUF42. As Rovin put it, the songs use "the same narrative parameters" and tell essentially the same story using the same romantic references. PAUF21.

In trying to distinguish the lyrical expression in the songs, Defendants rely on a misleading characterization of where the lyrics appear and a distortion of what they mean. Mem., 12:18-13:1. It is not material that in *Man*'s chorus consisting of eight lines and 46 words total, and in *Flowers*' chorus of seven lines and 42 words total (PAUF43; SGD144-145), the line about "hand holding" occurs in different places.[7] PAUF25. This is especially so considering that the lyrics share four nearly identical expressions of romance, including with end-rhymes. PAUF16. Verbatim copying is not required. *Hall v. Swift*, 2021 WL 6104160 (C.D. Cal. Dec. 9, 2021) (denying summary judgment despite lyrical differences, based on finding works' lyrics had "significant similarities in word usage and sequence/structure" and arguably the "same thematic message"); *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir.) ("[A] copier may not quote or paraphrase the sequence of creative expression that includes [an ordinary] phrase.").

### 2.    Rovin Properly Applied the Extrinsic Test on Rebuttal

As an initial matter, if it is true as Defendants claim that "no expert testimony is needed to confirm that the lyrics [] are not substantially similar," the inverse must also be true. Mem., 14:4-6. A court need not rely on expert testimony to conclude song lyrics *are* substantially similar. *Masterson v. Walt Disney Co.*, 821 F.App'x 779, 781 (9th Cir. 2020) ("[D]etermining substantial similarity does not necessarily require expert testimony. Given that Defendants did, however, offer not one but two expert opinions on the songs' lyrical

---

[7] Notably, the lines about "flowers" do not. SGD144-145.

12

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

similarities or supposed lack thereof, Plaintiff designated a rebuttal witness (Rovin) to respond to those opinions. PAUF18-22.

Nothing about Rovin's report or the opinions he offers is improper on rebuttal or in general. Rovin opined on the exact same subject matter as Defendants' experts using a different but appropriate methodology. *See generally* Plf's Opp. to Mot. to Exclude. And, he applied that methodology reliably based on his extensive experience writing and analyzing literary works. *See id*.

Defendants may disagree with Rovin's analysis, but that goes to the weight of it – not its admissibility. *See Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 2022 WL 16957834, at *6 (C.D. Cal. Oct. 12, 2022) ("Defendant's disagreements with [expert's] opinions concerning acceptable noninfringing alternatives do not provide a basis to exclude them under *Daubert*.").

## C. There Is, at Minimum, a Triable Question of Fact as to the Musical Similarities

Defendants attempt to undermine *Flowers*' duplication of *Man* by arguing that Ricigliano's substantial similarity opinion was flawed because it was based on commonplace or fragmentary similarities that should have been filtered out as unprotected. But, Defendants again fail to recognize how the extrinsic test works and drastically mischaracterize Ricigliano's findings.

### 1. *Flowers* Copies *Man*'s Protected Musical Elements

Unsurprisingly, Defendants spend much of their discussion of the songs' music focused on what is allegedly different or commonplace instead of what is the same. Mem., 6:9-19, 7:21-8:13. But, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004).

*Flowers* duplicates the "particular way in which the artistic elements form a coherent pattern, synthesis, or design." *See Skidmore* at 1074; PAUF11, 25, 36, 44-49. The similarities at issue go far beyond "mere fragments of otherwise

13

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

different pitch sequences" and a "commonplace 'circle of fifths' chord progression." Mem., 6:9-25. The same melodic *and* harmonic elements across *Man*'s verse are duplicated in six measures of *Flowers*' chorus. PAUF11, 44-49, 74. Defendants provide an example of melodic similarity that barely scratches the surface. Mem., 6:15-16. There are far more similarities than just those encompassed below, but the below provides a more accurate example of the melodic similarities as noted in red:

|  | Unit 1 |
|---|---|
| *Man* | E-E-E-D-E-E-D-E-D-C-E-F-F |
| *Flowers* | E-E-E-D-C-E-F |

|  | Unit 2 |
|---|---|
| *Man* | D-D-D-C-D-C-D-D-C-A-D-E-E |
| *Flowers* | D-D-D-C-A-E-D-E |

ECF 100-7 (Ferrara Rpt.) at ¶ 70. This does not even begin to capture the harmonic similarities. And, the particular combination of musical elements in *Man* that *Flowers* duplicates are nowhere in any of the supposed prior art identified by the defense experts. PAUF50; *see Smith*, 2025 WL 1232639, at *2 (denying summary judgment where defense experts failed to "identify any hook in the prior art that shares that same melodic contour with those starting and ending pitches").

Defendants' dissection of the works and comparison of similarities as to *individual* elements is an improper method of assessing whether the works' *combinations* of elements are substantially similar. *See Ambrosetti*, 151 F.4th at 1225 ("While defendants would have us break down the works into pitch sequences, rhythms, and metrical placements and analyze each element alone, *doing so would be improper*.") (emphasis added).

Neither Plaintiff nor Ricigliano claim *Flowers* and *Man* are identical. PAUF25. But differences in, for example, the songs' rhythms standing alone do

14

not mean they are not substantially similar when they have so much else in common. PAUF25, 51-52; *Smith*, 2025 WL 1232639, at \*2 (holding reasonable jury could find hooks similar, despite differences, where they "share[d] the same combination of several musical elements, including the same lyrics, the same 'metric placement' of the beginning of each syllable, and the same downward 'melodic contour' that starts at pitch 7 and ends at pitch 3"). If it did, one could turn a classical composition into a jazz piece and evade liability.

There is, at minimum, a factual dispute as to substantial similarity of musical elements because Defendants rely on disputed and inadmissible evidence. They claim, for example, it is undisputed that "[t]he overall chord progressions of *Man*'s verse and *Flowers*' chorus are different" (SGD98), but Ricigliano disagrees (PAUF25, 44-49). And, one need only look at the chord progressions themselves (as depicted by Ferrara) to see the rank similarities (by Plaintiff, in red):

| Unit | 1 | | 2 | | | |
|---|---|---|---|---|---|---|
| Bar | 1 | 2 | 3 | 4 | | |
| Man (1st verse) | Am | C | Dm | G | G7 | C | Em/B |
| Flowers (chorus) | Am | | Dm | G | | C | G/B |

ECF 100-7 (Ferrara Rpt.) at ¶ 16.

These distortions are apparent in nearly every "fact" that matters to Defendants' Motion. *E.g.*, SGD79. Accordingly, summary judgment is inappropriate.

**2.      Ricigliano Properly Applied the Extrinsic Test**

Defendants accuse Ricigliano of failing to properly apply the extrinsic test when assessing musical similarities because he did not research prior art or filter out unprotectable elements. Mem., 5:17-6:2. Neither is required based on the facts of Plaintiff's claim, and notably, Defendants concede that none of their prior art has the similarities at issue anyway.

15

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

First, there is no requirement that unprotectable elements be "filtered out" here. *Id.*, 5:17-18; *Gregorini*, 2024 WL 5264949, at *7. Doing so would make no sense when Plaintiff's claim is based on a combination of elements that Ricigliano concedes are individually unprotectable. PAUF25; *WMTI Prods., Inc. v. Healey*, 2023 WL 5506712, at *6 (C.D. Cal. July 13, 2023); ("[A]ny failure to filter out unprotected elements does not render [expert's] opinion unreliable or unhelpful to the factfinder."); *Woodall*, 2024 WL 5337320, at *3 ("Defendants' filtration argument … is not a basis for excluding [expert]'s opinions and testimony as unreliable.").

Second, the absence of prior art research from Ricigliano's Affirmative Report does not hinder his analysis. The only arguably relevant prior art would need to embody all of the lyrical and musical elements at issue. Defendants concede no such prior art exists. PAUF50. Ricigliano properly recognized this and concluded that a prior art search would be neither practical nor productive. PAUF53. And, Ricigliano did consider the musical prior art that Defendants' experts identified but found each was significantly different from *Man* and *Flowers*.[8] PAUF54-57. That is sufficient. *See Ambrosetti* at 1225-26 (relying on testimony from Ferrara that songs at issue were "similar to each other, just not [defendants' prior art examples]").

## VI. FAIR USE IS AT LEAST A TRIABLE ISSUE

In a seemingly complete about face, Defendants go from arguing the songs share nothing but commonplace fragments of music and lyrics to claiming that *Flowers* "plainly can be seen as commenting on or criticizing *Man*." Mem., 19:8. Defendants cannot plausibly disclaim the similarities *and* rely on them.

Fair use is an affirmative defense described as "an exception to a copyright holder's right to exclusive use of the original work and its derivatives." *Henley v.*

---

[8] One can see the differences from simply looking at Dr. Ferrara's comparisons. PAUF54.

16

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

*DeVore*, 733 F.Supp.2d 1144, 1150 (C.D. Cal. 2010).  Courts generally consider four factors: (1) the purpose and character of the infringing use, including whether it is commercial; (2) the nature of the copyrighted work; (3) the amount and substantiality of the copyrighted work copied; and (4) the effect of the infringing use upon the potential market for or value of the copyrighted work.  *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 451 (9th Cir. 2020).

### A.      The Purpose and Character of the Use Weigh in Plaintiff's Favor

"[T]he first fair use factor considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use." *Andy Warhol Found. v. Goldsmith*, 598 U.S. 508, 531 (2023).  "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying."  *Id*. at 532-33.

### 1.      *Flowers'* Purpose Is Commercial

Defendants claim the first factor weighs in their favor because *Flowers* does not commercially exploit *Man*.  Mem., 20:21.  That is obviously not true.  *Flowers'* use of *Man* is not "incidentally commercial" the way that the use of a concert backdrop not used to promote or market the concert is.  Mem., 20:21-27 (citing *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013)).  *Flowers* would not have a chorus or music without *Man*.  SGD273.  One cannot credibly argue *Flowers* could be sold without it.

*Flowers* and *Man* exist for the same commercial purpose and in the same market. *Flowers* is a pop song that copied *Man*, another pop song, and both are widely distributed and sold.  PAUF81.  This means they share the same "objectives" even if they are not "perfect substitutes."  *See Warhol*, 598 U.S. 508 (finding photograph and silk screen portrait shared the same purpose and existed in the same environment through their use in magazines).  The fact that two works

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

share substantially the same purpose, and that the infringing use is of a commercial nature, counsels against fair use "absent some other justification for copying." *Warhol*, 598 U.S. at 538.

### 2.     *Flowers'* Use Is Unjustified Because It Is Not Commentary Nor Otherwise Transformative

To justify their theft, Defendants claim that *Flowers* can be seen as commentary on or criticism of *Man*. Mem., 19:8-20:8. Defendants walk a fine line in claiming *Flowers* and *Man* are totally lacking in similarity, while also claiming that *Flowers* can be perceived as commentary on *Man* because of its lyrics and music. Mem., 19:18-20:2; PAUF20. Even assuming, *arguendo*, that both can be true, and assuming *Flowers* could be said to comment on anything, it is certainly not on the subject of either *Man* or Bruno Mars. *See Warhol*, 598 U.S. at 540 (recognizing commentary where work "conjures up the original work to shed light on the work itself, ***not just the subject of the work***") (internal quotations omitted) (emphasis added).

Defendants' post-hoc characterization of *Flowers* as critiquing or commenting on *Man* is meritless. *See ComicMix*, 983 F.3d at 453 (rejecting as "completely unconvincing [defendant's] post-hoc characterization of the work as criticizing the theme of banal narcissism in [infringed work]") (internal quotations omitted). For a work to constitute commentary, it must have some "critical bearing on the substance or style of the original" (*Campbell*, 510 U.S. at 580) or be seen to "ridicul[e]" or "critiqu[e]" the original or its author (*Warhol*, 598 U.S. 530); it is not enough to comment on or ridicule society in general (*id.*). Telling the same tale using the same expressive elements from the same perspective as the subject of the original does not amount to commentary or criticism, it is merely an attempt to "get attention or maybe even to avoid the drudgery in working up something fresh." *Campbell*, 510 U.S. at 580; PAUF21-22.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

18

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Viewed generously, *Flowers* would at most be akin to satire, which "ridicule[s] society but does not necessarily target an author or work" (*Warhol*, 598 U.S. 530), and so requires justification for the very act of borrowing" (*Campbell*, 510 U.S. at 580-81).  A "breakup song from the perspective of a woman rejoicing in her independence and self-reliance" does not need *Man* to send that message. *Flowers* "could have used another primer, or even created an entirely original work" to serve that purpose.  *ComicMix*, 983 F.3d at 453; PAUF22 (opining on myriad ways a breakup song from any perspective can be worded and structured). The reality is *Flowers* is just plain theft.  It took a character from *Man* and had her recite the same experience using the same key words for the same commercial purpose.  PAUF21-22.

Although Defendants claim it is irrelevant, it must be noted that the songwriters have disavowed any intention of using *Flowers* to comment or critique *Man*.[9]  PAUF58-59.  This is important to determining whether works are actually commentary or parody, rather than "pure shtick" or "post-hoc characterization[s]" to avoid liability.  *Penguin Books*, 109 F.3d at 1394; *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("In evaluating character and purpose we cannot ignore [Defendants'] stated purpose of scooping the forthcoming hardcover and Time abstracts."); *MCA, Inc. v. Wilson*, 677 F.2d 180, 183-85 (2d Cir. 1981) (finding work was not parody based on composers' admission it was not originally conceived as one).  Here, it is the latter.

In any event, whether commentary or not, *Flowers* is not transformative. *ComicMix*, 983 F.3d at 453 ("[T]he addition of new expression to an existing work is not a get-out-of-jail-free card that renders the use of the original transformative."); *Warhol*, 598 U.S. at 529-31 (cautioning against "overbroad

---

[9] Their written discovery responses tell a different story, which at least suggests there is a dispute of fact.  PAUF60.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

concept of transformative use, one that includes *any* further purpose, or *any* different character").

### B.    *Man* Is a Creative and Published Work

The second factor considers the "nature of the copyrighted work" in recognizing some works are "closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586.

Defendants concede that *Man* is a creative musical work (Mem., 21:4), and thus "precisely the sort of expression that the copyright law aims to protect." *See Leadsinger*, 512 F.3d at 531.  Although it is true that *Man* was disseminated years before *Flowers*' release, that does not mean that this factor is "neutral and has limited weight."  Mem., 21:2-11.  "[No] principle of fair use counsels that the publication of the copyrighted work weighs in favor of fair use." *ComicMix*, 983 F.3d at 455-56.  Indeed, in the case Defendants rely on, the Court found this factor weighed in favor of the plaintiff on analogous facts concerning publication. *Seltzer*, 725 F.3d at 1178.  This favor weighs equally in Plaintiff's favor here.

### C.    Defendants Copied a Substantial Portion of *Man* Without Justification

The third factor looks at the amount and substantiality of the portion used in relation to the copyrighted work as a whole.  17 U.S.C. § 107(3).  This factor "circles back to the first factor because 'the extent of permissible copying varies with the purpose and character of the use.'" *ComicMix*, 983 F.3d at 456.

It is wildly inaccurate for Defendants to claim that "there is no real dispute that the allegedly similar portions of *Man* and *Flowers* are minimal."  Mem., 21:22-23.  Defendants claim, on the one hand, that the similarities "are fragmentary, generic and abstract" and embody "not even one full lyrical or melodic phase" (*id.*), and on the other, that *Flowers* can "plainly be seen" as commentary on or criticism of *Man*.  *Compare* Mem., 21:23-25 *with id.* at 19:8.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Defendants are simply understating the similarities to serve this particular argument.  And, Plaintiff's experts disagree.  PAUF9-10, 21, 25.

Focusing on the actual similarities alleged here – a substantial combination of lyrical elements from *Man*'s chorus and musical elements from multiple units of *Man*'s verse – it becomes clear that *Flowers* has no justification for the extent of its copying.  While parodies must "go to the heart of the original" and "quot[e] [] the original's most distinctive or memorable features" to "conjure up at least enough of [the original] to make the object of its critical wit recognizable," *Flowers* is not one.  *See Campbell*, 510 U.S. at 588-89.  Accordingly, there is no excuse for taking what Defendants implicitly admit is *Man*'s "heart."

Regardless, there is at least a factual dispute as to whether *Flowers*' songwriters took too much from *Man*.  The evidence confirms this, as *Flowers* copied: (1) an original combination of lyrics from *Man*'s chorus, which BaileyShea admits is "[t]he most catchy and memorable part[] of any pop song" (PAUF16, 61-62; SGD144-145); and (2) a coherent and recognizable pattern of musical material from *Man*'s verse, which is the first thing the listener hears and is used to draw their attention (PAUF11, 63).  *Cf. Hanagami*, 85 F.4th at 946 (holding allegations of qualitative significance plausible where four-count portion of choreographic sequence was "repeated eight times" in copyrighted work).  Even accepting Defendants' quantitative assessment as true (though it omits similarities, SGD276, 278), taking 15-25% of *Man* can hardly be deemed insignificant as a matter of law.  In the absence of any parodic character, that *Flowers* copies the "heart" of *Man* must weigh in Plaintiff's favor.  *See ComicMix*, 983 F.3d at 457 (explaining factor weighs against fair use where the infringer took the "heart" or "most valuable and pertinent portion" of the work).

### D.    Defendants' Use Negatively Impacts the Market for *Man*

The fourth factor consider harm to the potential market and "should not overshadow the requirement of justification under the first factor, without which

21

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

there can be no fair use." *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1120 (9th Cir. 2000) (citing Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv.L.Rev. 1105, 1124 (1990)).

Defendants argue this weighs in their favor because: (1) *Man* experienced a temporary bump in streaming after *Flowers*' release; and (2) their supposed synchronization license market expert says *Flowers* cannot have negatively impacted the market for *Man*.  This is not enough to meet Defendants' burden. *Worldwide Church*, 227 F.3d at 1119-20.

That *Man* may have experienced a temporary increase in streaming activity after *Flowers* was released demonstrates that *Flowers* reminds listeners of *Man* and nothing more.  Even evidence that Defendants claim is favorable to them, "without more, is no guarantee of fairness."  *Campbell*, 510 U.S. at 591 n.21 (1994) (crediting view that film's appropriation of previously unknown song would not be fair simply because song was turned into commercial success).  And, Plaintiff's representative testified that *Man*'s market has suffered harm, including because *Flowers* did not obtain a license to appropriate *Man*.  PAUF64; SGD282-284; *Penguin Books*, 109 F.3d at 1403 (considering whether unrestricted and widespread conduct of the type alleged would hurt the potential market for original and derivatives).  Defendants' unlicensed use of *Man*'s music and lyrics *is* evidence of market harm.  PAUF8; *Incredible Features, Inc. v. Backchina, LLC*, 2021 WL 6337194, at *5 (C.D. Cal. Dec. 16, 2021).

Moreover, where a secondary work's use of copyrighted material is commercial, a court can presume likely market harm.  *See Leadsinger*, 512 F.3d at 531 ("[I]t is well accepted that when the intended use is for commercial gain, the likelihood of market harm may be presumed.").  Even where the harm presumption is not applied, evidence of actual harm is unnecessary; instead, the focus is on potential market harm based on market competition.  *See De Fontbrune v. Wofsy*, 39 F.4th 1214, 1226 (9th Cir. 2022) (rejecting defendant's evidence that accused

22

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

work "has not depressed the market for the [original]" because "it proves nothing about the effect on the market"); *Worldwide Church*, 227 F.3d at 1119 ("If evidence of actual or potential monetary loss were required, copyrights held by nonprofits would be essentially worthless.").

In any event, the burden of proof is on Defendants, and they do not meet it. Winogradsky's testimony regarding the synchronization license market for the works (*i.e.,* the market for use in audiovisual productions) does Defendants no favors.  PAUF65-73.  Winogradsky, an attorney unqualified to opine on the topic, only even tries to explain why *Man* and *Flowers* were not in competition related to a handful of licensing opportunities out of the **hundreds** that have been issued for *Flowers*.  *Id*.; *see generally* Mot. to Exclude Winogradsky.  A cursory review of the lengthy licensing reports for *Flowers* supports an inference that *Man*, another widely popular "pop" song, would have been and will continue to be in competition within the same market.  *Id.*

This factor cannot weigh in Defendants' favor.  *Morris v. Guetta*, 2013 WL 440127, at *12 (C.D. Cal. Feb. 4, 2013) ("[T]he factor … favors neither party [even] … [i]f potential harm to a plaintiff's market remains hypothetical.").

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion should be denied.

Dated: March 24, 2026

**WILLKIE FARR & GALLAGHER LLP**

By:  */s/ Alex M. Weingarten*
Alex M. Weingarten
Jeffrey K. Logan
Amy M. Stern

*Attorneys for Plaintiff*
Tempo Secured Music Rights Collateral, LLC

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this Memorandum contains 6,928 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 24, 2026

*/s/ Alex M. Weingarten*
Alex M. Weingarten

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

24

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT MOTION