Alex M. Weingarten (SBN 204410)
AWeingarten@willkie.com
Jeffrey K. Logan (SBN 136962)
JLogan@willkie.com
Amy M. Stern (SBN 311382)
AStern@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

*Attorneys for Plaintiff*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC,

Plaintiff,

v.

MILEY CYRUS, et al.,

Defendants.

Case No. 2:24-cv-07910-MRA-BFM

Hon. Mónica Ramírez Almadani

**PLAINTIFF TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF JEFF ROVIN**

Date: May 5, 2026
Time: 10:00 a.m.
Location: 411 W. 4th Street
Courtroom 9B
Santa Ana, CA 92701

Action Filed: September 16, 2024

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 4

IV. MR. ROVIN'S TESTIMONY AND REPORTS ARE ADMISSIBLE .......... 5

A. Mr. Rovin's Opinions as to the Extrinsic Test Are Admissible .......... 5

1. Mr. Rovin's Testimony Constitutes Proper Rebuttal Opinion .......... 6

2. There Is No Harm to Defendants that Would Justify the Exclusion of Mr. Rovin's Discussion of the Extrinsic Test .......... 10

3. Mr. Rovin Is Qualified to Discuss the Songs' Lyrics Within the Framework of the Extrinsic Test .......... 12

B. Mr. Rovin's Opinions on Commentary and Parody Are Admissible, Relevant, and Helpful to the Trier of Fact .......... 15

1. Mr. Rovin's Opinions Are Properly Based on His Expertise in Commentary and Parody .......... 15

2. Mr. Rovin's Opinions on Commentary and Parody Are Relevant and Helpful to the Trier of Fact .......... 17

V. CONCLUSION .......... 18


WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M.J. v. Cnty. of Los Angeles*, 2016 WL 10672216 (C.D. Cal. Dec. 8, 2016) ..... 11

*Amos v. Makita U.S.A., Inc.*, 2011 WL 43092 (D. Nev. Jan. 6, 2011) ..... 10, 11

*City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014) ..... 16

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ..... 4, 5, 18

*Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 2022 WL 16957834 (C.D. Cal. Oct. 12, 2022) ..... 18

*Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567 (C.D. Cal. 2009) ..... 10

*Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815 (2010) ..... 13

*Hall v. Swift*, 2020 WL 5358390 (C.D. Cal. Sept. 2, 2020) ..... 8

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) ..... 12

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934 (N.D. Cal. 2018) ..... 6, 8

*Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910 (9th Cir. 2001) ..... 14

*Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993 (9th Cir. 2001) ..... 4

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ..... 4, 15

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

*Perez v. State Farm Mut. Auto Ins. Co.*,
2011 WL 8601203 (N.D. Cal. Dec. 7, 2011) .......... 6

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) .......... 5

*Shaver v. Libbey Glass LLC*,
2024 WL 3050719 (C.D. Cal. Apr. 12, 2024) .......... 8

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) .......... 12, 13

*Stewart v. Wachowski*,
574 F. Supp. 2d 1074 (C.D. Cal. 2005) .......... 14

*TCL Commc'ns. Tech. Holdings, Ltd. v. Telefonaktenbologet LM Ericsson*,
2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) .......... 6

*Thomas v. Newton Int'l Enters.*,
42 F.3d 1266 (9th Cir. 1994) .......... 12

*U.S. v. Garcia*,
7 F.3d 885 (9th Cir. 1993) .......... 14

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) .......... 15

*United States v. Senchenko*,
133 F.3d 1153 (9th Cir. 1998) .......... 13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .......... 10, 11

**Rules**

Fed. R. Civ. P. 26 .......... 6, 10, 11

Fed. R. Civ. P. 37(c)(1) .......... 9

Fed. R. Evid. 702 .......... 4, 5, 12

L.R. 11-6.1 .......... 19

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

**Other Authorities**

*In re Phase II Distribution of the 2004-2009 Cable Royalty Funds: Hearing Before the Copyright Royalty Judges*, No. 2012-6, (Dec. 8, 2014) .......... 12, 13

Order at 14, *Counts v. Meriwether*, 2016 WL 1165888, No. 2:14-cv-00396 (C.D. Cal. Mar. 9, 2016), ECF No. 166 .......... 14

Order at 4, *Arthur Lee Alfred et al. v. The Walt Disney Pictures*, No. CV 18-8074-CBM-ASx (C.D. Cal. Dec. 16, 2021), ECF No. 200 .......... 14

Order at 4, *Woodall v. The Walt Disney Co.,* 2025 WL 657170, No. 2:20-cv-03772 (C.D. Cal. Feb. 24, 2025), ECF No. 559 .......... 14

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Following expert discovery in this copyright infringement matter concerning two widely known pop songs, it is clear that the issue of substantial similarity is hotly contested. In support of its claim, Plaintiff submitted an affirmative expert report by musicologist Anthony Ricigliano that identified substantial similarities in the musical and lyrical material of the two songs at issue – Bruno Mars's *When I Was Your Man* ("*Man*") (2012) and Miley Cyrus's *Flowers* (2023). Defendants submitted two affirmative expert reports of their own from musicologists who drew, among others, two seemingly contradictory conclusions: (1) any similarity between the lyrics of the songs at issue is purely coincidental; and (2) there is enough similarity between the songs that one could be construed as commentary on or parody of the other. In response, Plaintiff submitted a rebuttal report from Jeff Rovin, an experienced writer and literary expert in copyright cases, who addressed these opinions. Now, Defendants have filed a summary judgment motion that appears highly dependent on the exclusion of Mr. Rovin's testimony. But, there is no basis to disqualify Mr. Rovin, and even if there were, it would not achieve Defendants' desired effect.

Defendants effectively make three arguments in their attempt to knock out Mr. Rovin's testimony: (1) Mr. Rovin's discussion of the extrinsic test is outside the scope of rebuttal and thus deprived Defendants of an opportunity to respond; (2) Mr. Rovin is not qualified to apply the extrinsic test to song lyrics; and (3) Mr. Rovin's opinions on commentary and parody are subjective and irrelevant. Each of these arguments fails.

First, Mr. Rovin's opinions fall firmly within the scope of rebuttal. Plaintiff is not relying on his application of the extrinsic test to identify what constitutes protectable expression. Mr. Rovin simply used a different methodology to counter the defense experts' claims that the lyrics of the two songs are vastly different when

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

their context is considered. Even if Defendants are right that Mr. Rovin's discussion of the extrinsic test falls outside the scope of rebuttal (which they are not), Defendants cannot show harm to justify his exclusion. Defendants received Mr. Rovin's report in November 2025, deposed him in January 2026, and waited until the deadline to file their summary judgment motion to bring this argument to the attention of Plaintiff and the Court.

Second, the fact that Mr. Rovin does not have the same amount of formal education as Defendants' experts does not mean that he lacks sufficient qualifications. He has extensive experience both with different types of literary works and applying the extrinsic test to different types of literary works. A specialization in song lyrics is not required, and there is no authority to suggest that they cannot be analyzed as literary works.

Third, just because Defendants disagree with Mr. Rovin's findings on commentary and parody does not mean that they are conclusory and irrelevant. There are myriad examples of cases supporting the proposition that it is sufficient for certain non-scientific expert testimony to be based on the personal knowledge and experience of its proponent. And, to the extent Defendants argue that Mr. Rovin's opinions on commentary and parody are irrelevant to the fact finder's inquiry, then their experts' opinions on these subjects are equally irrelevant and subject to exclusion.[1]

Accordingly, Defendants' Motion should be denied.

## II. <u>BACKGROUND</u>

Mr. Rovin submitted a rebuttal report in response to portions of the affirmative expert reports of Dr. Matthew BaileyShea and Dr. Lawrence Ferrara that purported to analyze the similarities and differences between the lyrics of *Flowers* and *Man*.

[1] Concurrently with this opposition, Plaintiff has filed motions to exclude the testimony and reports of Defendants' expert set to be heard on the same day as Defendants' instant Motion.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

In his report, Dr. BaileyShea concluded that any similar lyrics in the songs reflect generic expressions regarding relationships, exist within vastly different contexts, and could very well be coincidental. *See* Declaration of Peter Anderson ISO MSJ ("Anderson Decl."), Ex. 3 at 10-17. At the same time, Dr. BaileyShea concluded that there is enough lyrical similarity between the songs that *Flowers* could be construed as commentary on or parody of *Man*. *See id.* at 25-31. To support his seemingly contradictory opinions, Dr. BaileyShea purported to: (1) identify differences in the songs' phrase design; (2) compare the contexts for the identical words used in the songs and the theme of the songs; (3) opines on the commonality of the use of identical end-rhyme words; (4) identify where some of the shared words appear in other break-up songs; (5) point out alleged differences in the lyrics of the verses, pre-choruses, and choruses of both songs; and (6) explain how *Flowers* consists of just enough (and not too much) similar lyrical material for it to be construed as commentary on or parody of *Man*. *See id.* Dr. BaileyShea also purported to identify prior art applicable to the songs' lyrics. *Id.* at 12-13.

While Dr. Ferrara primarily analyzed the songs' musical material, he also drew conclusions about the songs' lyrics. Specifically, the Ferrara Affirmative Report comments on the similarities in lyrical ideas and word "fragments" between the songs. *See* Anderson Decl., Ex. 1 at 18-19. Dr. Ferrara also identified supposed lyrical prior art, discussed the different perspectives of the songs, and concurred with Dr. BaileyShea's findings that: (1) *Flowers* can be interpreted as commentary on or criticism of *Man* (*see id.*, Ex. 1 at 78); (2) the elements of the songs shared between the songs are neither qualitatively nor quantitatively significant (*see id.* at 2); and (3) the similarities are not more than reasonably necessary to permit *Flowers* to be viewed as commentary of *Man* (*see id.* at 78).

In rebuttal to these opinions, Mr. Rovin commented on the defense experts' selective scholarship and showed that by any other standard, the connection between the lyrics of the two songs is undeniable. For example, Mr. Rovin pointed out that

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

if one looked at the number of syllables in the phrases of the songs discussed by Dr. BaileyShea, one would find a similarity that Dr. BaileyShea overlooked. *See* Declaration of Jeff Rovin ("Rovin Decl."), Ex. E at 6.[2] He also discussed the wide range of creative choices available to composers of break-up songs and examined the lyrics as literary works under the extrinsic test to counter Dr. BaileyShea's point that the use of so many identical words and similar phrases in the two songs could be purely coincidental. *See id*. at 21-40. Mr. Rovin also relied on his decades of experience as a writer to respond to the opinions of Drs. BaileyShea and Ferrara that *Flowers* could be interpreted as commentary on or parody of *Man*. *See id*. at 41-50. Mr. Rovin concluded based on his experience that *Flowers* cannot credibly be construed as either commentary or parody when all it does is take *Man*'s narrative and lyrics and, without ever mentioning or alluding to *Man*, repeat the story from the perspective of *Man*'s female character. *See id*. at 41-46.

## III. <u>LEGAL STANDARD</u>

Under Fed. R. Evid. 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if: (1) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact; (2) the expert's testimony is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

The standard for the admission of expert testimony is liberal under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc*. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (expert testimony is admissible if it "rests on a reliable foundation and is relevant to the task at hand"); *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (stating that "[r]ule 702 is applied consistent with

---

[2] The Declarations and attached Exhibits referenced herein are in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Plaintiff's Opposition to this Motion, but have been filed only as attachments to Plaintiff's Opposition to Motion for Summary Judgment to avoid unnecessary duplication.



WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

[a] liberal thrust"). The test for admissibility is "flexible," and its "list of specific factors neither necessitates nor exclusively applies to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

"Under *Daubert,* the district judge is a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) (internal quotations omitted). "When an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565.

## IV. MR. ROVIN'S TESTIMONY AND REPORTS ARE ADMISSIBLE

None of Defendants' attacks come close to justifying the exclusion of Mr. Rovin's rebuttal report and testimony. Mr. Rovin's opinions concerning the extrinsic test fall firmly within the scope of rebuttal, and he is more than qualified to provide them as an expert witness. Further, Mr. Rovin's opinions on commentary and parody reflect reliably applied methodology that will aid the trier of fact. And, Mr. Rovin's opinions on these subjects are, at minimum, at least as reliable as the opinions on these issues offered by Defendants' musicologists.

### A. Mr. Rovin's Opinions as to the Extrinsic Test Are Admissible

Defendants seek to exclude Mr. Rovin's discussion of the extrinsic test in his rebuttal report on the grounds that: (1) it falls outside of the scope of rebuttal opinion; (2) it has unjustifiably harmed Defendants by depriving them of an opportunity to respond; and (3) Mr. Rovin is unqualified to provide his analysis. None of this is true. Plaintiff is not relying on Mr. Rovin's rebuttal opinions as part of its case-in-chief on substantial similarity but rather to respond to the analyses of the lyrics performed by the defense experts. While the inquiry should stop there, exclusion is not a proper remedy regardless. Defendants had more than enough time to address this alleged issue. Finally, Mr. Rovin is more than qualified to apply the extrinsic test here for the reasons discussed below.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

1. Mr. Rovin's Testimony Constitutes Proper Rebuttal Opinion

Defendants claim that Mr. Rovin's testimony is outside the proper scope of rebuttal because he countered the opinions of Defendants' experts using a "rubric" that neither of them used. *See* Mot. at 6:14-17. But, there is nothing barring Mr. Rovin from addressing the same subject matter addressed by Drs. BaileyShea and Ferrara using a different framework.

The test for whether an expert's opinion constitutes rebuttal or a "new" opinion "is not whether a rebuttal expert employs new testing or methodologies but instead, whether a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) (internal quotation marks omitted); *see also Perez v. State Farm Mut. Auto Ins. Co.*, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) ("Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address."). Crucially, "offering a different, purportedly better methodology is a proper way to rebut the methodology of someone else." *TCL Commc'ns. Tech. Holdings, Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *4 (C.D. Cal. Aug. 17, 2016). Indeed, "nothing about Rule 26 or the nature of rebuttal prohibits offering independent opinions or utilizing other methodologies."[3] *Id.*

Here, Mr. Rovin properly analyzed the same "subject matter" Drs. BaileyShea and Ferrara addressed in their affirmative reports – the songs' lyrics – using a different methodology. Defendants' characterization of their experts' reports as "comparative musicological analyses of the works at issue" downplays the extent to

[3] In *TCL*, the Court used the following example to describe the proper scope of rebuttal: "Suppose an expert used a micrometer to measure the dimensions of a very small particle. In rebuttal, the opponent offered measurements of the same particle using an electron microscope with greater accuracy in the orders of magnitude. The Court doubts the second expert's opinion of the size of the particle would be excluded because he used a different methodology to address the same problem: the size of the particle." 2016 WL 7042085, at *5.

which the experts opined on the similarities and differences between the lyrics of the two works. *See* Mot. at 4:13. In his report, Dr. BaileyShea opined that:

- "Romantic relationships are among the most popular themes in song, and many relationship-based songs are either about a relationship going well or a relationship that has gone badly" (Anderson Decl., Ex. 3 at 10);
- The words "flowers," "hand," "hours," and "dancing" are used in both songs "in relation to similarly generic expressions regarding relationships" (*id.*);
- The identical words in the songs are used in "fundamentally different way[s]," including because *Man* is sung "from the perspective of a man who feels he should have bought flowers for a lover," whereas *Flowers* is sung "from the perspective of a woman who can buy flowers for herself" (*id.* at 11);
- The fact that "many different songs would coincidentally arrive at identical end-rhymes is not surprising, especially when they engage similar themes" (*id.* at 12);
- *Man* presents the songs' identical words "within a context of regret and loss," while *Flowers* "presents them within a context of self-reliance and independence" (*id.* at 16-17);
- "The first verse of [*Man*] focuses on a man recognizing his pain and loneliness in the absence of his ex-lover," whereas the first verse of *Flowers* "involves a woman reflecting on how good her relationship was with her ex-lover until the moment of the break-up" (*id.* at 17);
- In the pre-chorus of *Man*, "the male persona begins to acknowledge his mistake," whereas in the pre-chorus of *Flowers*, "the female persona reflects on how sad she was before recognizing her own empowerment" (*id.*);
- The chorus of *Man* has "a distinctive shift to the third person at the end," whereas the chorus of *Flowers* "stays entirely in second-person direct address" (*id.*); and

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

- The second verse of *Man* "maintains the same tone of mournful regret as the prior sections," whereas the second verse of *Flowers* "introduces an evolution of the relationship: the fact that the woman forgives the man" (*id.*).

This is just a snapshot of the points made by Dr. BaileyShea to support his conclusions that the lyrical similarities are "not significant" (*id.* at 3), and that "the material shared by the two songs involves commonplace musical and lyrical ideas that do not add up to a coherent synthesis or pattern" (*id.* at 31).

Mr. Rovin used the factors considered when the extrinsic test is applied to literary works to respond to Dr. BaileyShea's conclusions, as he is permitted to do. *See, e.g.*, *Huawei*, 340 F. Supp. 3d at 996 ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party."). It is well-established that song lyrics are amenable to analysis as literary works. *See, e.g.*, *Hall v. Swift*, 2020 WL 5358390, at *4 (C.D. Cal. Sept. 2, 2020) ("[N]one of the cases Defendants cite in support of their argument analyze *literary works*, which would include the lyrics at issue here.") (emphasis in original). As Mr. Rovin states, to the extent the defense experts "ascribe[] limited relevance to the [songs'] lyrical similarities," analyzing them using the framework of the extrinsic test shows "what exactly aligns in each song" and "weigh[s] the impact and anchorage of the wording that *is* identical." *See* Rovin Decl., Ex. E at 21; *id.* at n. 17. Mr. Rovin's point is that there is much more of a connection between the two songs than their "coincidental" end rhymes. Indeed, Mr. Rovin refuted Dr. BaileyShea's contentions by identifying the ways in which the songs' characters, plots, setting, dialogue, pace, theme, mood, and sequence of events are similar. *See id.* at 28-40.

Mr. Rovin is not offering, as Defendants put it, "an entirely new, unpleaded theory of substantial similarity." *See* Mot. at 5:18-19. Plaintiff's musicologist Anthony Ricigliano opined on the significant similarities in the songs' lyrics to support Plaintiff's affirmative case. *See* Declaration of Anthony Ricigliano, Ex. B



WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

at 1, 6-8. Plaintiff is not relying on Mr. Rovin's application of the extrinsic test to the songs' lyrics for that purpose. However, to the extent the defense experts have tried to water down the lyrical similarities, Plaintiff is entitled to rebut those opinions. *See Shaver v. Libbey Glass LLC*, 2024 WL 3050719, at *3 (C.D. Cal. Apr. 12, 2024) (accepting as rebuttal expert's discussion of factors he believed the opposing affirmative experts overlooked in coming to a different conclusion about the cause of a defect). And contrary to Defendants' claims, there is nothing barring a rebuttal expert from doing so using words that do not appear in Plaintiff's pleadings. *See* Mot. at 5:7-11 (stating that Plaintiff's pleadings "do not even include" the words "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events"). What is relevant is whether Mr. Rovin is opining on the same subject matter as Defendants' experts, which he definitively is.

Notably, Dr. BaileyShea did in fact discuss the substance of these criteria in reaching his opinions. Dr. BaileyShea commented on the perspectives of the "male character" in *Man* and the "female persona" in *Flowers*. *See* Anderson Decl., Ex. 3 at 13, 17; *see also id*. at 11 (stating *Man* "presents a man who wishes he had taken a woman dancing," whereas *Flowers* "presents a woman who can take herself dancing"). Additionally, Dr. BaileyShea referred to the songs' dialogue in his discussion of the similar use of rhyming words (*see id*. at 12-16), which Mr. Rovin directly addressed (*see id*. at 31-25). Dr. BaileyShea also commented on the "thematic differences" in the lyrics and the purported differences in tone of the two songs (*see id*. at 16-17), which overlaps with much of Mr. Rovin's discussion (*see* Rovin Decl., Ex. E at 39-40) (discussing songs' themes and moods). And, Dr. BaileyShea interpreted the verses, pre-chorus, and choruses of both songs to show the purported differences between the songs. *See* Anderson Decl., Ex. 3 at 17. Mr. Rovin came to the opposite conclusion. *See* Rovin Decl., Ex. E at 29, 39-40 (discussing songs' plots, themes, moods, sequences of events). Mr. Rovin simply opined on the same subject matter using a different framework.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

2. There Is No Harm to Defendants that Would Justify the Exclusion of Mr. Rovin's Discussion of the Extrinsic Test

In connection with their preceding argument, Defendants claim Mr. Rovin's opinion should be excluded under Fed. R. Civ. P. 37(c)(1) because it should have been disclosed as an affirmative expert opinion. *See* Mot. at 6. Setting aside the fact that Mr. Rovin's discussion of the extrinsic test is proper on rebuttal, the exclusion of his testimony is not justified under the law.

In situations such as this, "[a] party is not harmed where, even though an expert disclosure fails to satisfy [Fed. R. Civ. P. 26], the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert." *Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011). Harmlessness may be established if a disclosure is made sufficiently before the discovery cut-off date to give the opposing party sufficient time to conduct discovery. *Frontline Med. Assocs., Inc. v. Coventry Health Care,* 263 F.R.D. 567, 570 (C.D. Cal. 2009) (finding no harm where plaintiff had the opportunity to conduct discovery and depose experts at issue).

Here, any belated disclosure of the extrinsic test discussion in Mr. Rovin's rebuttal report has not caused the kind of harm that would justify exclusion. Defendants received Mr. Rovin's report discussing the extrinsic test with rebuttal expert disclosures on November 14, 2025. *See* Rovin Decl., Ex. E at 51. They waited until January 9, 2026 – nearly two months later – to depose him. *See* Weingarten Decl., Ex. J at 1. Defendants filed their summary judgment motion to which this Motion relates approximately six weeks later on February 23, 2026. *See* MSJ (Dkt No. 100-1). The first time Plaintiff was ever made aware of Defendants' claim of untimely disclosure was during a meet-and-confer six days before Defendants filed the Motion. *See* Anderson Decl., ¶ 26. In sum, Defendants had three months between their receipt of Mr. Rovin's report and the filing of their summary judgment motion. And, trial is not set to begin until 2027. *See* ECF 98.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Even based on the cases cited by Defendants themselves, there is no harm done that could not easily have been cured by now or be cured in the future. In *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.* (*see* Mot. at 6:7-8), the party received the report of the rebuttal expert who they sought to exclude "one month before they were to litigate a complex case," and to respond to it, would have needed "to depose [the expert] and prepare to question him at trial." *See* 259 F.3d 1101, 1107 (9th Cir. 2001). Among the other distinguishing factors, the expert in that case was a damages expert who failed to provide his report for two and a half years – more than one year after the opposing damages expert's report was last supplemented – and did so just 28 days before trial. *See id*. at 1105.

In *A.M.J. v. Cnty. of Los Angeles* (*see* Mot. at 6:9-12), the excluded expert had not provided a report at the time of disclosure, sought to introduce numerous opinions and issues that were neither set forth nor addressed in the affirmative reports of the defense experts, and was clearly intended to serve as part of the plaintiffs' case-in-chief. *See* 2016 WL 10672216, at *3 (C.D. Cal. Dec. 8, 2016). And, that expert's report was not served until the plaintiffs filed their opposition to the defendants' motion *in limine*. *Id*.

The authority Defendants rely on to show that irreparable harm has been done is inapposite. The circumstances surrounding Mr. Rovin's testimony concerning the extrinsic test stand in stark contrast to the circumstances present in cases where a rebuttal expert's testimony was excluded for belated disclosure. *See Amos v. Makita U.S.A., Inc.*, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011) ("A party is not harmed where, even though an expert disclosure fails to satisfy [Fed. R. Civ. P. 26], the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert.").

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

3. Mr. Rovin Is Qualified to Discuss the Songs' Lyrics Within the Framework of the Extrinsic Test

Defendants also claim that Mr. Rovin's discussion of the extrinsic test should be excluded because he is not qualified. Mot. at 6-8. In doing so, Defendants unfairly diminish his background and ignore the liberal standard that applies when assessing expert qualifications.

The Ninth Circuit "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas*, 42 F.3d at 1269. Even where a court finds that an expert is not sufficiently specialized, this is not grounds for exclusion because "[a] lack of specialization affects the weight of the expert's testimony, not its admissibility." *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004).

Although Defendants disparage Mr. Rovin's level of education and formal training, they concede that his educational background is not a legitimate basis on which to find him unqualified. *See* Mot. at 6-7; *In re Phase II Distribution of the 2004-2009 Cable Royalty Funds: Hearing Before the Copyright Royalty Judges*, No. 2012-6 (Dec. 8, 2014) (admitting Mr. Rovin's testimony as an expert in the field of television history and genre because Mr. Rovin needed only education, training, or experience – not all three). What Mr. Rovin lacks in formal education, he more than makes up for in experience. Mr. Rovin's background as a professional writer of numerous genres over several decades, combined with his experience analyzing literary works using the extrinsic test factors, qualifies him to apply the extrinsic test in this case. Mr. Rovin has published over 160 fiction and non-fiction books consisting of celebrity biographies (including of musicians), science fiction novels, quizbooks, joke books, instructional books, nursery rhyme parodies, comic books,

and horror. *See* Rovin Decl., Ex. E at 53-57. He has authored short stories, love poems, articles for magazines, and special interest publications (including features on Bruce Springsteen and Dolly Parton). *See id*. at 57. Mr. Rovin has been editor-in-chief and freelance editor for several reputable magazines, a writer and consultant on a number of television series, and a consultant for several major entertainment entities. *See id*. at 58-60. He has lectured on the subject of literature and is an experienced author of parody and commentary, having written for a preeminent parody magazine as well as his own humor and parody books. *See id*. at 53-54, 58; Weingarten Decl., Ex. J at 28:22-29:20. He has interviewed celebrities for magazines, including Whitney Houston and Billy Ray Cyrus, and discussed their lyrics in the published interviews. *See id*. at 23:5-15; Rovin Decl., Ex. E at 58.

Mr. Rovin has served as an expert in more than seventy entertainment-related legal proceedings and his testimony concerning the extrinsic test has also been accepted in many copyright infringement cases concerning screenplays, motion pictures, musicals, and manuscripts. In *Gable v. Nat'l Broad. Co.*, the Court credited Mr. Rovin with "significant knowledge and experience in the literary field" to support his opinion on whether the expressive elements of a television show and screenplay were substantially similar. *See* 727 F. Supp. 2d 815, 837 (2010) ("Mr. Rovin has spent his entire adult life as a professional writer . . . has authored 124 books, both fiction and non-fiction, including several books analyzing films and television series . . . was a writer on two television series and a consultant on three others, provided DVD commentary on three recent films, and has written monthly film columns in several magazines for years."). The Court in that case restricted copyright law expert David Nimmer from opining on the same subject, noting that he offered no evidence of ever having worked "as a film critic, a publisher, an English professor, an editor or director, that Nimmer wr[ote] fiction works, or even that Nimmer [was] an avid movie buff or television-watcher." *See id*. at 833-34. By

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

this standard, there can be no doubt that Mr. Rovin has sufficient credentials to support his application of literary analysis to song lyrics in this case.

Contrary to Defendants' claims, Mr. Rovin does not need to have focused specifically on song lyrics in his career in order to apply the extrinsic test to the lyrics at issue. *See* Mot. at 7:1-19; *In re Silicone*, 318 F. Supp. 2d at 889 (finding expert qualified to opine on cancer epidemiology even though he specialized in perinatal and psychiatric epidemiology); *see also United States v. Senchenko*, 133 F.3d 1153, 1157 (9th Cir. 1998) (admitting testimony regarding market values of wildlife from wildlife officer who investigated illegal sales of wildlife over qualification objection); *U.S. v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993) (admitting testimony regarding child testimony through closed-circuit television from children's mental health specialist who admitted she was not an expert in that area, had "glanced through a book on the subject," and "indicated that she had no specialized knowledge or expertise that could assist the court").

While it is true that Mr. Rovin has written numerous works of poetry and even parodies of nursery rhymes (*see* Rovin Decl., Ex. E at 53-57; Mot. at 7:8-11), which can certainly be likened to song lyrics, even that is not necessary to deem Mr. Rovin qualified. Indeed, the circumstances here are analogous to those in which a literature professor who has never written a screenplay or worked in television or film is deemed qualified to opine on the similarities of those works. *See, e.g.*, *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1106 n. 130 (C.D. Cal. 2005) (admitting testimony on similarities between screenplays and films from literature professor); Order at 14-15, *Counts v. Meriwether*, 2016 WL 1165888, No. 2:14-cv-00396 (C.D. Cal. Mar. 9, 2016), ECF No. 166 (considering the opinion on substantial similarity of an English professor who taught courses and published ten books on literary subjects); Order at 10-11, *Woodall v. The Walt Disney Co.*, 2025 WL 657170, No. 2:20-cv-03772 (C.D. Cal. Feb. 24, 2025), ECF No. 559 (same); Order at 4, *Arthur*

*Lee Alfred et al. v. The Walt Disney Pictures*, No. CV 18-8074-CBM-ASx (C.D. Cal. Dec. 16, 2021), ECF No. 200 (same).

Defendants also cite their complaints about Mr. Rovin's findings as though they are a legitimate basis on which to find him unqualified. *See* Mot. at 7:20-8:9 (claiming that Mr. Rovin's "sequence of events" analysis is inaccurate because the songs "flashback and 'flash forward' to different things and in different sequences"). While they may disagree with Mr. Rovin's testimony, that is not a basis to exclude it. *See Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) ("To the extent [defendant] sought to challenge the correctness of [plaintiff's] expert's testimony, its recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of its own expert witnesses.").

Thus, there is no legitimate reason to exclude Mr. Rovin's discussion of the extrinsic test based on his qualifications.

**B. <u>Mr. Rovin's Opinions on Commentary and Parody Are Admissible, Relevant, and Helpful to the Trier of Fact</u>**

Defendants also attempt to exclude Mr. Rovin's opinions concerning parody and commentary on the basis that they are unsupported and irrelevant. But, Mr. Rovin's opinions on parody and commentary are grounded in his expertise (expertise that Defendants' experts lack in opining on the same subjects), and they are helpful to the trier of fact.

1. <u>Mr. Rovin's Opinions Are Properly Based on His Expertise in Commentary and Parody</u>

Defendants argue that Mr. Rovin's testimony concerning commentary and parody should be excluded because they are based on nothing more than his unsupported say-so. *See* Mot. at 8:16-9:6; 10:11-24. This is not a fair characterization of non-scientific testimony that simply "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (accepting





WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

expert testimony regarding gang memberships and tenets from officer who worked with gangs and demonstrated that the information upon which he relied was "of the type normally obtained in his day-to-day police activity"); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (recognizing that while some expert testimony "rests upon scientific foundations," in other cases, "the relevant reliability concerns may focus upon personal knowledge or experience").

In his rebuttal report, Mr. Rovin properly countered the defense experts' opinions that *Flowers* could be perceived as commentary or parody based on the wealth of knowledge he amassed on these subjects over his career as a writer and parodist. Specifically, Mr. Rovin provided a clear definition of commentary – "one work of art judging or chastising another." *See* Rovin Decl., Ex. E at 41. He also defined parody – "a humorous or satirical reimagining of the source material." *See id*. at 45. In both portions of his report, he provided examples of what he understands as examples of musical works that would constitute commentary and parody. *See id*. at 41-46. And, he explained why *Flowers* does not fit into either category. *See id*. The fact that Mr. Rovin stated his opinion that commentary is not a "subtle undertaking" does not mean that there is no basis for it. *See* Mot. at 8:18-20. Mr. Rovin explained regarding commentary that, "[i]n order to make one's point using another work, you have to either it laud it or praise it or laud it or beat it up or take it apart," akin to "C[aesar]'s commentaries where it's a whole lot of observation and history and interpretation." *See* Weingarten Decl., Ex. J at 184:25-185:10. All that matters is whether the knowledge underlying the opinion "has a reliable basis in the knowledge and experience of the relevant discipline." *See City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). When it comes to both commentary and parody, Mr. Rovin, who wrote for publications like MAD Magazine, has relevant experience in spades. *See* Rovin Decl., Ex. E at 2.

Defendants' arguments are ironic given that their experts are undoubtedly no more qualified and no more objective. When asked about commentary, Dr.

BaileyShea could only provide "a fairly loose definition" that it "involves one text affecting the way we think of another text" and "some kind of clarification or explanation or something to that effect." *See* Weingarten Decl., Ex. J at 117:13-118:1. As to parody, Dr. BaileyShea testified: "And with parody songs, I think it's one song kind of inviting us hear it in relationship to another song, usually, I think, with some kind of playful or humorous aspect. I don't know that that's entirely required[.]". *Id.* at 121:23-122:11. Dr. Ferrara broadly described commentary as: "[I]n commentary, obviously, you have to take portions of the original work. And the commentary, you know, can be a comment. It could provide a new meaning. It, essentially though, is providing your viewpoint about the original work, and it has to have some transformative . . . aim at it and result as well." *Id.*, Ex. M at 125:6-22. Clearly, Drs. BaileyShea and Ferrara have no more precise or accurate understandings of these concepts. Defendants cannot credibly attack Mr. Rovin's opinion on commentary and parody and stand by their own experts' opinions on these issues at the same time.

2. Mr. Rovin's Opinions on Commentary and Parody Are Relevant and Helpful to the Trier of Fact

Defendants argue that Mr. Rovin's opinions on commentary and parody are irrelevant because Mr. Rovin's understanding of those concepts makes no difference to the legal inquiry. *See* Mot. at 9-10. If this were true, then the affirmative opinions on these issues offered by Defendants' music professor experts would be equally irrelevant. Defendants cannot have it both ways.

According to Defendants, Mr. Rovin's testimony on commentary is irrelevant because a work may have a commentative purpose as long as it "conjures up the [plaintiff's] work in order to shed light on that work." *See* Mot. at 9:14-21 (internal quotations omitted). Mr. Rovin's testimony is that *Flowers* does not do that. *See* Rep. at 43 (explaining *Flowers* is not commentary because it simply takes a character described in *Man*, replicates her in *Flowers*, and has her recite the same experience





WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

using the same key words to reach the same conclusion). Mr. Rovin applied his extensive experience to answer what Defendants characterize as the relevant question of whether *Flowers* can "reasonably be perceived as commenting on the original or criticizing it, to some degree." *See* Mot. at 9:22-27 (internal quotations omitted).

The same is true for parody. While Mr. Rovin's definition is hardly controversial, as Drs. BaileyShea and Ferrara agree there is generally some aspect of ridicule or humor, his understanding is relevant to the inquiry. *See* Anderson Decl., Ex. 3 at 26; Weingarten Decl., Ex. M at 70:1-7; *id*., Ex. O at 124:22-4; 126:17-19. According to Defendants, "the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." *See* Mot. at 10:25-11:1 (internal quotations omitted). Mr. Rovin's testimony that there is no commentary offered by *Flowers* is just as relevant to parody if this is the only standard that matters, but in addition to that, he notes that there is no humorous or satirical reimagining of *Man* in *Flowers* because *Flowers* simply repeats *Man*. *See* Rovin Decl., Ex. E at 45.

Defendants may disagree with Mr. Rovin, but there can be no question that Defendants' issues with Mr. Rovin's testimony on commentary and parody go to the weight of it – not its admissibility. *See Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 2022 WL 16957834, at *6 (C.D. Cal. Oct. 12, 2022) (finding "Defendant's disagreements with [expert's] opinions concerning acceptable noninfringing alternatives do not provide a basis to exclude them under *Daubert*").

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.

Dated: March 24, 2026

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Alex M. Weingarten*
Alex M. Weingarten
Jeffrey K. Logan
Amy M. Stern

*Attorneys for Plaintiff*
Tempo Secured Music Rights Collateral, LLC

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this Memorandum contains 5,956 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 24, 2026

*/s/ Alex M. Weingarten*
Alex M. Weingarten