Peter Anderson, Esq. (Cal. Bar No. 88891)
peteranderson@dwt.com
Eric H. Lamm, Esq. (Cal. Bar No. 324153)
ericlamm@dwt.com
Alexandra P. Cadena, Esq. (Cal. Bar No. 352442)
alexcadena@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
MILEY CYRUS, also sued as MCEO Publishing, GREGORY HEIN, also sued as Songs By Gregory Hein, MICHAEL POLLACK, also sued as What Key Do You Want It In Music, MCEO, INC., SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US) LLC, PULSE 2.0, LLC, sued as These Are Pulse Songs, PURE TONE MUSIC, LLC, sued as Songs With A Pure Tone, BLASTRONAUT, INC., sued as Droog Publishing, WARNER-TAMERLANE PUBLISHING CORP., AMAZON.COM SERVICES LLC, APPLE INC., PANDORA MEDIA, LLC, DISNEY PLATFORM DISTRIBUTION, INC., TARGET CORP., BARNES & NOBLE BOOKSELLERS, INC., TIDAL MUSIC LLC, WALMART INC., WAL-MART.COM USA, INC., WIDE EYED GLOBAL, IHEARTMEDIA, INC., LIVE NATION ENTERTAINMENT, INC., XANDRIE SA, DEEZER S.A., and SOUNDCLOUD GLOBAL LIMITED & CO. KG.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MILEY CYRUS, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-07910-MRA-BFM<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: May 26, 2026<br>Time: 10:00 a.m.<br><br>Courtroom of the Honorable Mónica Ramírez Almadani United States District Judge |

# TABLE OF CONTENTS

**Page**


1. SUMMARY OF REPLY ........ 1

2. PLAINTIFF'S OPPOSITION CONFIRMS ITS EXPERTS DO NOT SATISFY THE EXTRINSIC TEST ........ 2

(a) Plaintiff Relies on Stale Law: Selection and Arrangement Copyrights Protect the Particular Way Elements Form a Coherent Pattern, Synthesis, or Design, Not Mere "Combinations" ........ 2

(b) The Extrinsic Test Applies to Selection and Arrangement Claims and Plaintiff's Experts Failed to Apply It ........ 4

(c) Plaintiff Fails to Establish Substantial Similarity in Ideas ........ 5

(d) Plaintiff Fails to Establish That the Claimed Similarities Form a Coherent, Protectable Pattern, Synthesis, or Design in *Man* ........ 6

(1) Plaintiff Fails to Identify a Protectable Pattern, Synthesis, or Design in the Claimed Unprotected Musical Elements in *Man* .. 6

(2) Plaintiff Fails to Identify a Protectable Pattern, Synthesis, or Design in the Claimed Lyrical Elements in *Man* ........ 8

(3) Plaintiff Fails to Identify a Protectable Selection and Arrangement of Musical *and* Lyrical Elements ........ 9

(e) *Man* and *Flowers* Do Not Share the Same Particular Selection and Arrangement of Unprotected Elements ........ 10

(1) *Man*'s *Verse* and *Flowers*' Chorus Do Not Share the Same Particular Selection and Arrangement of Unprotected Musical Elements ........ 10

(2) *Man*'s Chorus and *Flowers*' Chorus Do Not Share the Same Particular Selection and Arrangement of Unprotected Lyrics... 12

3. PLAINTIFF'S CLAIM ALSO IS BARRED BY FAIR USE ........ 14

(a) The First Factor Clearly Favors Fair Use ........ 14

(1) Plaintiff Fails to Rebut Defendants' Showing that *Flowers* Is Transformative ........ 14

(2) Plaintiff Fails to Demonstrate that *Flowers* Is Primarily Commercial ........ 16

(b) The Second Factor Is Neutral ........ 18

(c) The Third Factor Strongly Favors Defendants ........ 18

(d) Plaintiff Offers Nothing to Rebut Defendants' Showing of Lack of Harm Under the Fourth Factor ........ 21

4. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. v. Goldsmith*,
598 U.S. 508 (2023) .......... 14, 16, 17

*Benay v. Warner Bros. Entm't, Inc.*,
607 F.3d 620 (9th Cir. 2010) .......... 5

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) .......... 18, 21, 22

*Brown v. Netflix, Inc.*,
462 F. Supp. 3d 453 (S.D.N.Y. 2020) .......... 18

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......... *passim*

*Cellular Accessories for Less, Inc. v. Trinitas LLC*,
65 F. Supp. 3d 909 (C.D. Cal. 2014) .......... 3

*Corbello v. Valli*,
974 F.3d 965 (9th Cir. 2020) .......... 5

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) .......... 16, 18, 22

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) .......... 15, 22

*Feist Publn's, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .......... 3, 10

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986) .......... 19

*Folkens v. Wyland Worldwide, LLC*,
882 F.3d 768 (9th Cir. 2018) .......... 5

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021) .......... 16

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) .................................................................. 3, 6, 7, 12

*Hall v. Swift*,
No. CV 17-6882, 2021 WL 6104160 (C.D. Cal. Dec. 9, 2021) ............................. 9

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023) ........................................................................... 4

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ................................................................................. 15, 16

*Johannsongs-Publ'g Ltd. v. Lovland*,
No. CV 18-10009-AB(SSx), 2020 WL 2315805 (C.D. Cal. Apr. 3, 2020),
*aff'd*, No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021) .................... 4, 5

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) ....................................................... 17, 18, 21

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) ......................................................................... 22

*Lennon v. Premise Media Corp.*,
556 F. Supp. 2d 310 (S.D.N.Y. 2008) ........................................................ 15, 20

*MCA Inc. v. Wilson*,
677 F.2d 180 (2d Cir. 1981) ........................................................................... 16

*Newton v. Diamond*,
204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2004) ........................................................................................................ 3

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds, Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ................................................................... 12, 13

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*,
522 F.3d 863 (9th Cir. 2008) ........................................................................... 2

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) ......................................................................... 10

*Saunders v. Brown*,
No. CV 21-9237, 2022 WL 22970162 (C.D. Cal. Nov. 21, 2022) ......................... 9

*Seltzer v. Green Day, Inc.*,
725 F.3d 1170 (9th Cir. 2013) ........ 18

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
81 F.2d 49 (2d Cir. 1936) ........ 13

*Single Chip Sys. Corp. v. Intermec IP Corp.*,
495 F. Supp. 2d 1052 (S.D. Cal. 2007) ........ 17

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (en banc) ........ *passim*

*Smith v. Jackson*,
84 F.3d 1213 (9th Cir. 1996), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ........ 3

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
709 F.3d 1273 (9th Cir. 2013) ........ 15, 17, 20

*Suntrust Bank v. Houghton Mifflin Co.*,
268 F.3d 1257 (11th Cir. 2001) ........ 20

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ........ 2

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Assoc.*,
953 F.3d 638 (9th Cir. 2020) ........ 21

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ........ 2

*Woodland v. Hill*,
136 F.4th 1199 (9th Cir. 2025) ........ 13

*Yonay v. Paramount Pictures Corp.*,
163 F.4th 685 (9th Cir. 2026) ........ *passim*

**Statutes**

17 U.S.C.
§ 107 ........ 15, 20
§ 410(b) ........ 3

**Other Authorities**

3 W.F. PATRY, PATRY ON COPYRIGHT § 954.10 (2026) ............................................... 1

**<u>REPLY MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## 1. <u>SUMMARY OF REPLY</u>

Plaintiff, having filed hundreds of pages of briefing across two oppositions and three related motions, apparently hopes to avoid summary judgment by making the record appear as convoluted as possible. But nothing in Plaintiff's filings rebuts Defendants' showing that Plaintiff's claim fails as a matter of law.

As for the extrinsic test, Plaintiff abandons its complaint's allegations that *Flowers* is substantially similar to "protected elements" of *Man*. FAC (Doc. 81) at 18-20. Instead, Plaintiff concedes its allegedly similar elements are unprotectable and backpedals to a "selection and arrangement" theory, a tactic one authority calls "the favorite artifice of meritless plaintiffs." 3 W.F. PATRY, PATRY ON COPYRIGHT § 9:54.10 (2026). But Plaintiff relies on a Declaration from Mr. Ricigliano full of conclusory opinions and argument Plaintiff failed to timely disclose. Further, Plaintiff's new selection and arrangement claim is barred by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) and its progeny. First, Plaintiff has not established that the unprotectable elements it identifies in *Man* cohere to form a holistic design that is itself an original, copyrightable work. Rather, those unprotectable elements are scattered fragments cherry-picked from *Man*. Second, a selection and arrangement copyright is infringed only if the works have in substantial amounts the same particular selection and arrangement. Here, the unprotected elements Plaintiff identifies are arranged differently in *Man* and *Flowers*, and Plaintiff's claim amounts to nothing more than an attempt to protect unprotected elements.

Plaintiff's claim also is barred by fair use. Plaintiff argues that *Flowers*' songwriters did not intend to comment on *Man*. But the relevant inquiry is whether *Flowers* can reasonably be perceived as commentary on *Man*. *Flowers*' joyful lyrics and upbeat music celebrating personal independence after a breakup obviously can be—and according to Plaintiff, have been—perceived as a

response to *Man*, a slow piano ballad in which the despondent singer bemoans what he "should have" done to save his relationship. While Plaintiff chides Defendants for raising both the lack of substantial similarity in protected expression and the fair use doctrine, those points are consistent and complementary—confirming the claimed similarities are both non-actionable and, in any event, no more than reasonably necessary for fair use. Plaintiff also utterly fails to rebut Defendants' showing that *Flowers* has not caused any market harm to *Man*. The factors favor fair use, Plaintiff's claim fails, and Defendants' Motion should be granted.

**2. PLAINTIFF'S OPPOSITION CONFIRMS ITS EXPERTS DO NOT SATISFY THE EXTRINSIC TEST**

Plaintiff admits none of the claimed similarities between *Flowers* and *Man* are protectable, and instead claims copying of a purported "combination" of unprotectable elements.

to Defs' MSJ ("Oppn") (Doc. 108) at 5:18-20, 6:1-3, 7-9. But Plaintiff never pleaded a selection and arrangement theory. SAC (Doc. 93). And Plaintiff's post hoc recharacterization does not save its claim.

**(a) Plaintiff Relies on Stale Law: Selection and Arrangement Copyrights Protect the Particular Way Elements Form a Coherent Pattern, Synthesis, or Design, Not Mere "Combinations"**

Plaintiff's Opposition argues that *Man* includes an original "combination" of unprotected elements that is supposedly copied in *Flowers*. Oppn. at 1, 6-20 (citing, *e.g.*, *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) and *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018)); *see also* P-AUF 25. But Plaintiff ignores that the Ninth Circuit's 2020 en banc decision in *Skidmore* held that copyright plaintiffs cannot establish a selection and arrangement claim merely by "[l]abeling [the claimed similarities] a 'combination' of unprotectable elements." 952 F.3d at 1075; *see also* *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 n.2 (9th

///

Cir. 2008) ("[T]o the extent our [Circuit's] earlier cases conflict with … a later en banc decision, those cases are no longer good law.").

Instead, a selection and arrangement copyright protects only the "*particular* way in which the artistic elements form a coherent pattern, synthesis, or design." *Skidmore*, 952 F.3d at 1074. Thus, to claim that *Man* includes a protectable selection and arrangement, Plaintiff must establish that the unprotected elements "form a coherent pattern, synthesis, or design" in *Man*. *Id.*; *Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 693 (9th Cir. 2026).[1]

Even if Plaintiff did establish that its identified unprotected elements in *Man* did cohere into a pattern, synthesis, or design—and Plaintiff did not—the selection and arrangement also must be protectable, *e.g.*, not commonplace or generic. *Yonay*, 163 F.4th at 696 ("[T]he particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable [selection and arrangement]" but "that particular sequence must be original."); *Gray v. Hudson*, 28 F.4th 87, 101-02 (9th Cir. 2022) (copyright does not protect "manifestly conventional arrangement of musical building blocks"). Plaintiff fails to make that showing.

///

///

///

[1] Plaintiff argues that Defendants have the "burden of proof when challenging originality." Oppn. at 6 (citing *Cellular Accessories for Less, Inc. v. Trinitas LLC*, 65 F. Supp. 3d 909, 913 (C.D. Cal. 2014)). But *Cellular* referred to the presumption of validity afforded a timely registered copyright. *Id.*; 17 U.S.C. § 410(b). That presumption has no application to whether allegedly copied portions are protected. *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1252-53 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 (9th Cir. 2004); *Feist Publn's, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."). Here, Plaintiff claims infringement and bears the burden of proving an original selection and arrangement. *See, e.g.*, *Yonay*, 163 F.4th at 696.

**(b) <u>The Extrinsic Test Applies to Selection and Arrangement Claims and Plaintiff's Experts Failed to Apply It</u>**

Defendants showed that Plaintiff's experts, by failing to research prior art and filter unprotectable elements, failed to apply the extrinsic test. Defs' Memo. (Doc. 100-1) at 5-6, 8. Plaintiff, now switching to a selection and arrangement claim, argues its experts' failures are irrelevant because filtering is inapplicable to selection and arrangement claims. Oppn. at 5-7, 15-16. But "'[f]iltering' and 'selection and arrangement' are not truly distinct tests." *Yonay*, 163 F.4th at 696 (quoting *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942, n.11 (9th Cir. 2023)). Researching prior art and distinguishing between protectable and unprotectable material is still required because generic or commonplace selections and arrangements fail the extrinsic test. *See above* at 3:7-14; *Yonay*, 163 F.4th at 698 (affirming exclusion of plaintiff's expert who failed to "filter out the elements of the [works] that are not protected by copyright law" even where plaintiff asserted selection and arrangement claim).

Plaintiff also argues its experts did not need to research prior art because Defendants' experts found none with "all of the lyrical and musical elements at issue." Oppn. at 16; P-AUF 37, 53. But it is Plaintiff's burden to prove its claim, and Plaintiff's experts admitted doing no research at all. *See* accompanying Defs' Resp. to Stmt. of Genuine Disputes ("D-SUF") 5, 139. Further, Defendants' experts identified prior art with much of what Plaintiff now claims is original to it. *E.g.*, D-SUF 110-114, 165. Also, Plaintiff cannot establish an original selection and arrangement by lumping scattered unprotected elements together and calling it a "combination" not seen in prior art. *See above* at 2-3. Instead, Plaintiff must show that the elements form a protectable, coherent pattern, synthesis, or design in *Man*. *Skidmore*, 952 F.3d at 1075. Plaintiff's experts did not do that. *See below* at 6-10.

Plaintiff argues that Mr. Ricigliano *considered Defendants' prior art* and "found each [song] was significantly different from *Man* and *Flowers*." Oppn. at 16:15-17. But the point of prior art is to identify elements (or selections and

arrangements of elements) that are commonplace, generic, or otherwise unprotectable. *See, e.g.*, *Yonay*, 163 F.4th at 700; *Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB(SSx), 2020 WL 2315805 at *6 (C.D. Cal. Apr. 3, 2020), *aff'd*, No. 20-55552, 2021 WL 5564626 (9th Cir. Nov. 29, 2021). Identifying differences in *other portions* of prior art does not negate that the *similarities* are commonplace, generic, or otherwise unprotectable. *Johannsongs-Publ'g*, 2020 WL 2315805 at *6.

Because Plaintiff lacks expert evidence satisfying the extrinsic test, its claim fails as a matter of law.

**(c) <u>Plaintiff Fails to Establish Substantial Similarity in Ideas</u>**

Defendants raised that the extrinsic test requires "substantial similarity of ideas *and* expression" (*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (emphasis added)). Plaintiff argues that *Man* and *Flowers* "share the nearly identical 'ideas' of how someone expresses love in a relationship." Oppn. at 11:16-18. But that gross generalization obscures the different underlying ideas: While *Man* is a breakup song from the perspective of a man who regrets not doing, *Flowers* is a breakup song from the perspective of a woman rejoicing in her independence and self-reliance. D-SUF 146-47.

Plaintiff argues that the difference is in the singer's "perspective," but perspective matters. *See, e.g.*, *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 628 (9th Cir. 2010) (no substantial similarity including because "[t]he two works have opposing perspectives on the modernization of Japan and the end of samurai culture"); *Corbello v. Valli*, 974 F.3d 965, 974 n.2 (9th Cir. 2020) (no substantial similarity including because works "depict[ed] historical events from different perspectives"). And, *e.g.*, *Flowers*' female narrator singing "Started to cry, but then remembered I / I can buy myself flowers" does not mean the same thing and does not have the same underlying idea as *Man*'s male narrator singer "Too young, too dumb to realize / That I should have bought you flowers." *See* Defs' Memo. at 12:7-17; D-SUF 146-151.

///

*Man* and *Flowers* are very different in their ideas and, for that reason alone, Plaintiff's copyright infringement claim fails.

**(d) Plaintiff Fails to Establish That the Claimed Similarities Form a Coherent, Protectable Pattern, Synthesis, or Design in *Man***

Because overall *Man* and *Flowers* are dramatically different, Plaintiff claims that *Man* includes a protectable selection and arrangement of unprotectable musical elements in *Man*'s verse and, separately, a protectable selection and arrangement of unprotected lyrics in *Man*'s chorus, and that *Flowers* copies those selections and arrangements. *See* Oppn. at 7:14-9:25. But Plaintiff fails to establish the first requirement: that *Man* actually includes either of those claimed protectable selections and arrangements.

**(1) Plaintiff Fails to Identify a Protectable Pattern, Synthesis, or Design in the Claimed Unprotected Musical Elements in *Man***

Plaintiff contends that *Man* includes a protectable combination of the admittedly unprotectable musical elements that Plaintiff contends appear in *Man*'s verse and *Flowers*' chorus. Oppn. at 13-15. But those musical elements in *Man*'s verse do not form a protectable selection and arrangement because they are fragmentary, disjointed, and commonplace.

Plaintiff claims that in the first two measures (*i.e.*, "unit 1") of *Man*'s verse, there is a "stagnant design of repeating and emphasizing the pitch E, followed by a melodic contour containing the pitch series E-D-C-E-F." Oppn. at 3; P-AUF 11. But Mr. Ricigliano's report only identified the pitches E-D-C-E-F. D-SUF 36. Also, Plaintiff cherry-picks E-E and E-D-C-E-F from *Man*'s "unit 1" pitch sequence, namely, the two pitches E-E followed by *five different pitches*, and then by the pitches E-D-C-E-F. *See* Oppn. at 14; D-SUF 34-35. Further, these are just pitches without rhythm and, thus, abstractions. *Gray*, 28 F.4th at 99-100 (pitch sequences are "abstract … components" of melody). Nowhere has Plaintiff provided expert analysis

///

establishing that two pitches and a later sequence of five pitches forms a coherent, original pattern, synthesis, or design that warrants copyright protection.

Next, Plaintiff claims that in measures 3 and 4 of *Man*'s verse ("unit 2"), there is a "stagnant design of repeating and emphasizing the pitch D, followed by a 2-pitch dissonance of C to A against the G chord, a subsequent leap up a fourth to the dissonant pitch D against the C major chord, and a resolution into the consonant pitch E." Oppn. at 3; P-AUF 11. This time Plaintiff cherry-picks D-D and D-C-A-D-E from *Man*'s "unit 2" pitch sequence, namely the two pitches D-D followed by *another five different pitches*, and then the pitches D-C-A-D-E. Oppn. at 14:13-14; D-SUF 39-40. Plaintiff also adds two chords (G major and C major), but they are just two chords in a commonplace chord progression (Am-Dm-G-C) started in unit 1 (Oppn. at 4:1-4), known as a circle of fifths. D-SUF 91-92, 110-113; P-AUF 11; *Gray*, 28 F.4th at 101-102 (copyright does not protect "conventional" arrangements). Even the combination of emphasized E to F pitches and A minor to D minor chords in *Man*'s "unit 1" and D to E pitches and G major to C major chords in "unit 2" merely forms a generic 5-10-5-10 pattern. D-SUF 103-105. And, once again, nowhere has Plaintiff provided expert analysis establishing that two pitches, a later sequence of five pitches, and some of the chords in a commonplace chord progression, cohere into a holistic pattern, synthesis, or design.

Plaintiff also claims that in measures 5 and 6 ("unit 3"), there is a "repetition of the pattern in the first two bars with slight variation." Oppn. at 3:23-24. But Mr. Ricigliano testified that he did not even analyze unit 3 of *Man*'s verse. His attempt to identify similarities there now should be disregarded. *See* D-SUF 46; P-AUF 35. In any event, Plaintiff identifies merely a generic, abstract idea of "repetition." P-AUF 11.

Plaintiff's reliance on disjointed fragments falls far short of what *Skidmore* rejected. 952 F.3d at 1074-76 (the same five notes of a descending minor chromatic scale, associated chords, similar pitches and melody consisting of a combination of

arpeggios and two-note sequences placed over the descending chromatic line, a rhythm of steady eighth-note beats, and the use of the same "pitch collection" did not cohere into a holistic musical pattern, synthesis, or design). Plaintiff's claim that the unprotected musical elements form a protectable selection and arrangement cannot be reconciled with *Skidmore*.

**(2) Plaintiff Fails to Identify a Protectable Pattern, Synthesis, or Design in the Claimed Lyrical Elements in *Man***

Nor does Plaintiff establish that the unprotectable lyrical elements it cites in *Man* form a protectable selection and arrangement. Instead, Plaintiff first argues in conclusory fashion that *Man*'s entire eight-line chorus is protected. Yet Plaintiff concedes those eight lines do not appear in *Flowers*. Oppn. at 7:20; P-AUF 12-13, 43.

Plaintiff then argues that the following words in bold, as charted in Mr. Ricigliano's Declaration, amount to a "selection and arrangement" in *Man*:

*Man* (chorus)

That I should have **bought** you **flowers**
And **held** your **hand**
Should have gave you all my **hours**
When I had the chance
**Take** you to every party 'Cause all you
wanted to do was **dance**
Now my baby's **dancing**
But she's **dancing** with another man

Ricigliano Decl. (Doc. 108-3) at 16 ¶ 41; P-AUF 16.

But these lyrical elements—namely "bought" and "flowers" in *Man*'s first line, "held" and "hand" in *Man*'s second line, "hours" in *Man*'s third line, "dance" in *Man*'s sixth line, and "dancing" in *Man*'s seventh and eighth lines—are disjointed fragments scattered throughout *Man*'s chorus and do not cohere to form a holistic design.

*Skidmore*, 952 F.3d at 1075 ("Presenting a 'combination of unprotectable elements' without explaining how these elements are particularly selected and arranged amounts to nothing more than trying to copyright commonplace elements.").

Plaintiff accuses Defendants of "dissect[ing]" the works and comparing "***individual*** elements." Oppn. at 14. But these are the individual words upon which Plaintiff bases its claim of a protectable selection and arrangement in *Man*'s chorus. And Plaintiff instead negates that claim by relying on scattered words that do not "cohere to form a holistic" pattern, synthesis, or design. *Skidmore*, 952 F.3d at 1075.

Plaintiff claims other cases have found "lyrics protectable based on far less." Oppn. at 7-8. But the two cases Plaintiff cites involved *more* than a few fragmented, out-of-sequence words. *Saunders v. Brown*, No. CV 21-9237, 2022 WL 22970162 at *2 (C.D. Cal. Nov. 21, 2022) (claim survived motion to dismiss where based on chanting of the word "'wet' … ***in a particular rhythmic way***") (emphasis added); *Hall v. Swift*, No. CV 17-6882, 2021 WL 6104160 at *3 (C.D. Cal. Dec. 9, 2021) (plaintiffs' four-part, consecutive lyrical sequence—"Playas, they gon' play/and haters, they gonna hate/Ballers, they gon' ball/shot callers, they gonna call"—potentially original).

**(3) Plaintiff Fails to Identify a Protectable Selection and Arrangement of Musical *and* Lyrical Elements**

Finally, despite analyzing the musical and lyrical "combinations" separately, Plaintiff refers to a purported "original combination of musical *and* lyrical material." Oppn. at 1:18 (emphasis added). But Plaintiff fails to identify any selection and arrangement of both. The claimed musical elements above are in *Man*'s verse, but there are no claimed *lyrical* similarities in *Man*'s verse. D-SUF 264. Meanwhile, the allegedly similar *words* are in *Man*'s chorus, while the musical similarities in the songs' choruses that Mr. Ricigliano identified are so fragmentary and scattered that Plaintiff does not even raise them in its brief. *See* D-SUF 254-263.

///

Required to prove that the identified unprotected elements cohere in *Man* into a holistic pattern, synthesis, or design, Plaintiff instead confirms those elements are disjointed and scattered. For this reason alone, its claim fails as a matter of law.

**(e) *Man* and *Flowers* Do Not Share the Same Particular Selection and Arrangement of Unprotected Elements**

Even if Plaintiff could raise a genuine dispute as to whether *Man*'s claimed selection and arrangement of unprotectable elements is protectable—and Plaintiff does not (*see above* at 6-10)—that is not enough to avoid summary judgment. Plaintiff's reliance on pre-*Skidmore* cases and a "combination" argument ignores that "a selection and arrangement copyright is infringed only where the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,'" selection and arrangement. *Skidmore*, 952 F.3d at 1075 (quoting *Feist*, 499 U.S. at 349, 350-51); *Yonay*, 163 F.4th at 697 (same).

That strict requirement protects a "vigorous public domain" because anything less could "deem substantially similar two vastly dissimilar musical compositions, novels, and paintings for sharing some of the same notes, words, or colors." *Skidmore*, 952 F.3d at 1075-76; *id.* at 1069 ("we must be careful in copyright cases not to cheat the public domain") (quoting *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003)). Plaintiff admittedly relies on public domain elements, and cannot avoid that *Flowers* and *Man* do not have the same particular selection and arrangement of music or lyrics.

**(1) *Man*'s *Verse* and *Flowers*' Chorus Do Not Share the Same Particular Selection and Arrangement of Unprotected Musical Elements**

As discussed above, Plaintiff's claim involves some pitches of overall different melodies, and a few chords, in two of four "units" of *Man*'s verse and *Flowers*' chorus, plus the abstract idea of "repetition." However, the claimed similar elements appear in very different patterns and sequences in *Man* and *Flowers*, with the differences underlined and in bold here:

| | Unit 1 |
|---|---|
| *Man*<br>(verse) | Pitches: E-E-**E-D-E-E-D**-E-D-C-E-F-**F**<br>Chords: A minor **C major** D minor |
| *Flowers*<br>(chorus) | Pitches: E-E-E-D-C-E-F<br>Chords: A minor D minor |

| | Unit 2 |
|---|---|
| *Man*<br>(verse) | Pitches: D-D-**D-C-D-C-D**-D-C-A-D-E-**E**<br>Chords: G major **G7** C major **E minor**/B |
| *Flowers*<br>(chorus) | Pitches: D-D-D-C-A-E-D-E<br>Chords: G major C major **C major**/B |

D-SUF 34-35, 39-40, 46, 51, 90-91, 93-94, 96; P-AUF 11; Oppn. at 14:8-14, 15:14-18.[2] Thus, it is undisputed that *Man*'s pitch sequences have intervening pitches (E-D-E-E-D and D-C-D-C-D) and end with extra pitches (F and E) that do not appear in the *Flowers* pitch sequences, and *Man*'s chord progression has C major, G7, and E minor chords that do not appear in the *Flowers* chord progression.

Significantly, because Plaintiff relies on pitches, these charts do not reflect the undisputed fact that the pitch sequences in *Man* have completely different rhythms, and are set to completely different lyrics, than the pitch sequences in *Flowers*. D-SUF 38, 43. These and other differences are fatal to Plaintiff's claim. *See, e.g.*, *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121-23 (9th Cir. 2018) (differences in elements of plaintiff's and defendants' photographs defeated selection and

---

[2] Plaintiff claims that *Man* and *Flowers* each feature "a subsequent leap up a fourth" from the pitch A to the pitch D. Not so: while *Man* features a leap up a fourth from pitch A to pitch D, *Flowers* instead leaps up a *fifth* from pitch A to pitch E. P-AUF 11; P-AUF 46.

arrangement claim at pleading stage), *overruled on other grounds*, *Skidmore*, 952 F.3d 1051.

Plaintiff argues that "differences in … the songs' rhythms standing alone do not mean they are not substantially similar." Oppn. at 14-15. But rhythm is an *integral part of a copyrightable design*; pitch alone is a mere abstraction. *See Gray*, 28 F.4th at 99-100. Further, there are other significant differences besides rhythm, including differences in pitches and chords (*see above* at 10-11), and other elements (D-SUF 46, 51, 115-122). ***Indeed, it is undisputed that not a single phrase or even unit in the melody of Man and Flowers is shared***. D-SUF 85-86.

Moreover, while Mr. Ricigliano claims to identify many claimed similarities, he plucks them randomly from *anywhere* in the two songs, regardless of whether they appear in the same sequence, pattern, or design. *See* D-SUF 46-50 (comparing "unit 3" of *Flowers*' chorus to "unit 1" of *Man*'s verse); P-AUF 78 (comparing "unit 5" of *Man's* chorus to "unit 1" of *Flowers*' chorus). "When comparing two works' selection and arrangement of elements … **similarities in those elements alone**—no matter their quantity or importance to the work—cannot demonstrate unlawful appropriation." *Yonay*, 163 F.4th at 697. Plaintiff's infringement claim fails as a matter of law.

**(2) *Man*'s Chorus and *Flowers*' Chorus Do Not Share the Same Particular Selection and Arrangement of Unprotected Lyrics**

Likewise, *Man* and *Flowers* use commonplace references to buying flowers, holding hands, hours, and dancing, in different sequences, with different wording and expressions, meaning, and underlying ideas. *See* Defs' Memo. at 9-14; D-SUF 146-160. Accordingly, *Man* and *Flowers* also do not share the same particular pattern, synthesis, or design of unprotected lyrical fragments.

///

///

///

Further, Mr. Ricigliano's chart of the claimed similarities in eight lines of *Man*'s chorus confirms the allegedly copied words are in very different patterns, syntheses, and designs:

| *Man* | *Flowers* |
|---|---|
| 1. **bought** you **flowers** | 1. **buy** myself **flowers** |
| 2. held your **hand** | 2. /// |
| 3. Should have gave you all my **hours** | 3. Talk to myself for **hours** |
| 4. /// | 4. /// |
| 5. **Take** you to every party | 5. I can **take** myself **dancing** |
| 6. 'Cause all you wanted was to **dance** | 6. I can **hold** my own **hand** |
| 7. Now my baby's **dancing** | 7. /// |
| 8. But she's dancing with **another** man | |

Ricigliano Decl. at 16 ¶ 41; P-AUF 43. That is not even close to the same particular selection and arrangement of unprotectable elements. *Yonay*, 163 F.4th at 697; *Rentmeester*, 883 F.3d at 1121-23. Given the different uses of these admittedly unprotected words, Plaintiff's claim "amounts to nothing more than trying to copyright commonplace elements." *Skidmore*, 952 F.3d at 1075.

Plaintiff invokes the overused proposition that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936); Oppn. at 13:23-24. But "courts may identify differences in the works to explain why there is no substantial similarity." *Woodland v. Hill*, 136 F.4th 1199, 1211 n.4 (9th Cir. 2025); *Yonay*, 163 F.4th at 694 (distinguishing *Sheldon* and explaining that where plaintiff claims similarity in plot, differences in plot events make the plots overall less similar). Here, Defendants have demonstrated that the *very elements* Plaintiff puts at issue—the lyrics of *Man*'s chorus and *Flowers* chorus, as well as the melody and chords of *Man*'s verse

and *Flowers*' chorus—contain, at most, only fragmentary similarities among many more differences. D-SUF 19, 46, 51-53, 59, 66-69, 79-82, 85-86, 96, 102, 115-122, 144-145, 254-264.

Finally, because the claimed musical similarities and the lyrical similarities appear in completely different parts of *Man* but in the chorus of *Flowers*, they do not form the same, particular selection and arrangement of lyrics *and* music. Plaintiff's claim accordingly fails as a matter of law.

**3. <u>PLAINTIFF'S CLAIM ALSO IS BARRED BY FAIR USE</u>**

**(a) <u>The First Factor Clearly Favors Fair Use</u>**

**(1) Plaintiff Fails to Rebut Defendants' Showing that *Flowers* Is Transformative**

Defendants have established that the first factor favors fair use because *Flowers* can reasonably be perceived as transformative commentary on *Man* and its commentative character is not outweighed by the mere fact that *Flowers* is commercially available. *See* Defs' Memo. at 18-20.

Plaintiff argues that *Flowers* cannot reasonably be perceived as commenting on "the substance or style" of *Man* and instead can only be seen as "satire," which "ridicule[s] society." Oppn. at 18-20 (*quoting Andy Warhol Found. v. Goldsmith*, 598 U.S. 508, 530 (2024)). But *Flowers* can reasonably be interpreted—and according to evidence Plaintiff submits, *has* been interpreted—as a response that is both directed to the message of *Man*'s protagonist and that sheds light on the naivete of that message. *See* Defs' Memo. at 19-20; Weingarten Decl. Ex. V (Doc. 108-39); *id.* Ex. Z (Doc. 108-43) (opining that *Flowers* "powerfully counters" the message of *Man*). The *Flowers* protagonist's joyful celebration of her independence and ability to buy herself flowers, hold her own hand, *etc.*, is readily interpreted as rejecting the message of *Man*'s forlorn narrator that, to save his relationship, he should have bought his lover flowers, held her hand, *etc*. D-SUF 146-147, 265-266. *Flowers*' upbeat music in contrast to *Man*'s slow piano ballad furthers that commentative character, as do many

other particular musical details. D-SUF 269-272.[3] Because *Flowers* can reasonably be interpreted not merely as commentary on the subject matter of breakups generally (*see* Oppn. at 19:4-8), but as having "critical bearing on the substance … of [*Man*]" and its particular message (*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)), *Flowers* falls within the core of transformative commentary protected under the fair use doctrine. *Id.*; *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013); *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 322-324 (S.D.N.Y. 2008); *see* 17 U.S.C. § 107 (preamble); Defs' Memo. at 18-20.

Plaintiff repeatedly argues that "the songwriters have disavowed any intention of using *Flowers* to comment [on] or critique *Man*." *E.g.*, Oppn. at 19:12-14. But fair use depends on whether a work can be *reasonably perceived* as transformative, not on the subjective views of the creator of the work. *See* Defs' Memo. at 18:24-19:5 (citing cases).[4] Plaintiff cites three cases to argue that intent is relevant if there is evidence of improper or bad faith intent. Oppn. at 19:12-21. But *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997), nowhere discusses the issue and, instead, ruled that the defendants' work did not comment on the plaintiff's work. *Id.* at 1399-1401. In *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985), the Court considered it relevant that the defendants' stated purpose in publishing unauthorized quotes of Gerald Ford's not-yet-published memoir was "supplanting the [plaintiff's] commercially valuable right of first publication," *i.e.*, scooping the plaintiff's exclusive story. *Id.* at 562. But *Flowers* did no such thing.

---

[3] Plaintiff apparently agrees that the Court may make the determination of whether *Flowers*' lyrics can be reasonably perceived as commentary on *Man* without the aid of expert testimony. *See* Pltf's Mot. to Exclude Testimony of Dr. BaileyShea (Doc. 111) at 6:23-7:7.

[4] Further, if copyright infringement claims can be premised upon a theory of *subconscious* copying, then fair use cannot require a showing of conscious intent to *comment* on the plaintiff's work. Precluding fair use for subconscious copying would be illogical and prevent fair use from fulfilling its goal of providing "breathing space within the confines of copyright." *Campbell*, 510 U.S. at 579.

Likewise, *MCA Inc. v. Wilson*, 677 F.2d 180, 183-85 (2d Cir. 1981), discussed whether the defendant acted "in good faith or with evasive motive" but, again, there is no evidence of bad faith or improper motive here. Moreover, the Supreme Court is now skeptical whether "bad faith has any role in a fair use analysis." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021). Regardless, whether or not the authors subjectively interpret their work as commentary is not an issue of bad faith, and under *Campbell* and *Warhol*, the Court merely asks whether the commentary can reasonably be perceived. *See* Defs' Memo. at 18:24-19:5.

Finally, Plaintiff appears to argue that *Flowers* cannot be considered transformative even if it is commentary on *Man*. Oppn. at 19-20. But in both of the cases Plaintiff cites, the secondary works at issue merely used elements of the original work to make a point that did *not* comment on the substance of the work. *Warhol*, 598 U.S. 508-509, 512 (holding silk-screen version of photograph not transformative, claimed commentary on "'dehumanizing nature' and 'effects' of celebrity" had "no critical bearing on" photograph); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 453 (9th Cir. 2020) (mashup of *Star Trek* and Dr. Suess book merely used elements of Suess's book without "mak[ing] a point about" "the substance or style" of book).

It is accordingly beyond dispute that *Flowers* has a transformative purpose and character.

**(2) Plaintiff Fails to Demonstrate that *Flowers* Is Primarily Commercial**

Defendants have also shown that the first fair use factor does not favor Plaintiff simply because *Flowers* is available commercially. Defs' Memo. at 20; *Campbell*, 510 U.S. at 584 ("If, indeed, commerciality carried presumptive force … the presumption would swallow nearly all of the illustrative [fair] uses" like commentary and criticism because they are "generally conducted for profit in this country"). Further, because *Flowers* "is transformative, the fact that [it] is a commercial

production is of little significance." *SOFA Entm't*, 709 F.3d at 1278-79; *Warhol*, 598 U.S. at 531 (for transformative works, a "commercial … use is not dispositive").

Plaintiff argues *Flowers* is not "incidentally commercial" because *Flowers* would "not have a chorus or music without *Man*." Oppn. at 17. But that is beyond hyperbole: *Flowers*' and *Man*'s music is indisputably different, and Plaintiff now admits the claimed similarities are unprotectable. Plaintiff claims the first factor favors Plaintiff because *Man* and *Flowers* are both "pop song[s]" and thus serve the same market. Oppn. at 17. But *Man* is a slow and sad piano ballad and *Flowers* is an up-tempo and joyful pop song. D-SUF 287-288. Indeed, Defendants have demonstrated that *Flowers* did not affect the market for *Man*, while Plaintiff offers nothing to the contrary except unsupported argument. *See below* at 21-22; *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1062 (S.D. Cal. 2007) ("[A]ttorney arguments cannot be offered as evidence in any proceeding….").

In any event, there is no exception to fair use simply because a transformative work is in the same broadly defined genre or market as the work on which it comments. To the contrary, a transformative use can be fair *even if* the plaintiff's and defendant's works serve the same purposes. *Warhol*, 598 U.S. at 532-33 ("If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, *absent some other justification for copying*.") (emphasis added); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1045-46 (N.D. Cal. 2025).

Thus, even assuming arguendo *Flowers*' purpose is partly commercial and broadly in the same market as *Man*, the first factor favors fair use because of *Flowers*' transformative commentary. *See Campbell*, 510 U.S. at 583-84 (lower court erred in holding first factor favored plaintiff because of parody song's commercial purpose); *Kadrey*, 788 F. Supp. 3d at 1045-46 (first factor favored fair use notwithstanding commercial purpose).

The first factor accordingly strongly favors fair use.

**(b) <u>The Second Factor Is Neutral</u>**

Defendants also established that the second factor is neutral because while *Man* is creative, it has long since been published, and *Flowers* is transformative. *See* Defs' Memo. at 21; *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 462 (S.D.N.Y. 2020) (second factor was neutral where plaintiff's song was creative, published, and used transformatively in defendants' film).

Plaintiff argues that the fact that *Man* was published a decade ago does not favor fair use. Oppn. at 20 (quoting *ComicMix*, 983 F.3d at 456). Yet the very next case Plaintiff cites confirms that prior publication "tends to weigh in favor of the fair use of that work." *Seltzer v. Green Day*, 725 F.3d 1170, 1178-79 (9th Cir. 2013).

In any event, the second factor is entitled to very little weight where, as here, a creative but published work is used transformatively. *See Campbell*, 510 U.S. at 586 ("[Second fair use factor] is not much help in this case, or ever likely to help much in … a parody case, since parodies almost invariably copy publicly known, expressive works."); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 212 (2d Cir. 2006) ("second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose"). Even the decision on which Plaintiff relies cautions courts to be "[m]indful that the second factor 'typically has not been terribly significant in the overall fair use balancing.'" *ComicMix LLC*, 983 F.3d at 456.

The second factor accordingly is neutral and, in any event, insignificant.

**(c) <u>The Third Factor Strongly Favors Defendants</u>**

Defendants have established that the third factor favors fair use because the alleged similarities are minimal relative to the whole of *Man* and not more than necessary to permit *Flowers* to be reasonably perceived as commentary on *Man*. Defs' Memo. at 21-22.

It is undisputed that not one of *Man*'s lyrical phrases or melodic phrases is found in its entirety in *Flowers*. *Compare* Oppn. at 20:24-27 *with* D-SUF 85-86, 169,

275. Plaintiff's claim involves bits and pieces of lyrics, pitches, and chords, scattered throughout overall different lyrics and music. *See above* at 10-14.

Plaintiff claims that its "experts disagree" with the amount and substantiality of the alleged copying. Oppn. at 21:2. But Plaintiff's argument is "supported" only by conclusory legal argument masquerading as "facts." *See* P-AUF 9-10, 21, 25. Mr. Ricigliano's admission that there is no copied lyrical or melodic phrase is significant because the vast majority of fair use cases involve *verbatim* copying of a substantial part of the plaintiff's work. *Campbell*, 510 U.S. at 588-89 (parody song copied entire first line of lyrics and entire "characteristic opening bass riff (or musical phrase) of the original"); *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986) (fair use favored parody song notwithstanding copying of *six entire measures* and entire "recognizable main theme"; summary judgment affirmed); *Seltzer*, 725 F.3d at 1178-79 (third factor neutral notwithstanding use of entirety of Plaintiff's artwork).

Further, Prof. BaileyShea demonstrates that the lyrical ***and musical*** elements support the perception of commentary and are "not more than reasonably necessary to permit *Flowers* to be perceived as commentary." Defs' Memo. at 22; D-SUF 276-281. Plaintiff lacks evidence to rebut that showing because Mr. Ricigliano admits he is not opining on whether *Flowers* is commentary, and Mr. Rovin is not opining on the songs' musical elements. D-SUF 8, 142.

Plaintiff also dramatically misstates Prof. BaileyShea's undisputed quantitative analysis in claiming that 15% to 25% of *Man* was purportedly copied. Oppn. at 21. Prof. BaileyShea opined that *Flowers* and *Man* (a) share "*less than* 15%" of the same words in their lyrics, and (b) that ***<u>if</u> all the music and lyrics of Man's verse*** (where Mr. Ricigliano's claimed similarities are focused) ***were found in Flowers***, that would constitute 24.8% of *Man*'s duration. D-SUF 276, 278-279. However, it is undisputed that *Flowers* does ***not*** share all of the music and lyrics in *Man*'s verse; rather, it includes abstract and fragmentary pitches and chords that cannot be measured in terms of duration because the rhythms are different. D-SUF 279. Accordingly, Prof.

BaileyShea opined that the amount Plaintiff puts at issue is "*substantially less* than 24.8%" of the song. BaileyShea Decl. Ex. 3 (Doc. 100-9) at 29. Plaintiff offers no evidence to rebut that conclusion.

And even assuming Plaintiff could establish that the similarities amount to 15% to 25% of *Man*—and Plaintiff cannot—Plaintiff is wrong that this figure cannot be "deemed insignificant as a matter of law." Oppn. at 21. Courts have often found fair use as a matter of law where even more than that was allegedly copied. *See* Defs' Memo. at 21-22 (citing cases). That is particularly true where, as here, the allegedly copied material is used transformatively and is not more than reasonably necessary to support the commentative character. *See id.* at 19-20, 21-22 (citing cases).

Finally, Plaintiff argues that because parodies purportedly "must 'go to the heart of the original," Defendants have "implicitly admit[ed]" that *Flowers* copies the "heart" of *Man*. Oppn. at 21 (quoting *Campbell*, 510 U.S. 588-89). But *Campbell* does not hold that parodies must copy the heart of the original; rather, *Campbell* holds that "[c]opying does not become excessive in relation to parodic purpose *merely because* the portion taken was the original's heart." *Campbell*, 510 U.S. at 588 (emphasis added). Nor does Defendants' position depend on a finding that *Flowers* is a parody. It is sufficient for fair use purposes that *Flowers* can reasonably be perceived as commenting on *Man*. *Campbell*, 510 U.S. at 579 ("parody, like other comment or criticism, may claim fair use under § 107"); *SOFA Entm't*, 709 F.3d at 1278-79 (use of song in non-parodic biographical musical); *Seltzer*, 725 F.3d at 1177 (non-parodic fair use in poster); *Lennon*, 556 F. Supp. 2d at 323 (use of song in non-parodic film); *see also Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1268 (11th Cir. 2001). And even assuming the "heart" of *Man* is its chorus, *Man*'s chorus and *Flowers* share only a few words and musical fragments. D-SUF 53-71, 254-263.

The third factor accordingly strongly favors fair use.

///

///

**(d) <u>Plaintiff Offers Nothing to Rebut Defendants' Showing of Lack of Harm Under the Fourth Factor</u>**

Finally, Defendants have established that the fourth factor strongly favors fair use because *Flowers* caused no actual or potential market harm to *Man* whatsoever. Defs' Memo. at 22; D-SUF 282-290.

Plaintiff claims it has evidence of "market harm" because its designated witness testified that "[*Flowers*] did not obtain a license to appropriate *Man*." P-AUF 64. Courts routinely reject that argument. *Bill Graham Archives*, 448 F.3d at 614 ("[W]e do not find a harm to [plaintiff's] license market merely because [defendant] did not pay a fee for [plaintiff's] copyrighted images."); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Assoc.*, 953 F.3d 638, 652 (9th Cir. 2020) ("Nor does the decision by secondary users to pay, or not pay, [the plaintiff] establish whether fair use exists.").

Instead, the fourth factor concerns harm caused by "market substitution" (*Campbell*, 510 U.S. at 593) or "market dilution" (*Kadrey*, 788 F. Supp. 3d at 1060). *Man* and *Flowers* are very different songs and plainly are not substitutes in the synch market. *See Tresona*, 953 F.3d at 652; Winogradsky Decl. (Doc. 100-05) and Ex. 13 (Doc. 100-19). And Plaintiff's Rule 30(b)(6) witness specifically testified that *Man* "continues to be a strong performer" in streaming markets. D-SUF 283.[5]

Plaintiff misstates the law when it argues that it need not rebut Defendants' showing because "a court can presume likely market harm." Oppn. at 22. A presumption of market harm "makes common sense" when a commercial use amounts to a "mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591. But "[n]o 'presumption' or inference of market harm … is applicable to a case involving something beyond mere duplication for commercial purposes." *Id.* For example, the

---

[5] Plaintiff's admission that *Man* "continues to be a strong performer" likewise demonstrates that its claim that *Man* only experienced a "temporary" increase in streaming activity after *Flowers*' release is meritless. D-SUF 282; Oppn. at 22.

case Plaintiff cites applies a presumption of market harm to the unlicensed display of plaintiff's *entire song lyrics* in the defendants' karaoke machine. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008). But the Ninth Circuit has held that no presumption is permissible if the secondary work is not mere duplication, *even if it is not transformative*. *ComicMix LLC*, 983 F.3d at 458-59. Here, this is not a case of mere duplication, and *Flowers* is transformative. There is no presumption of market harm and, even if there were, it would be rebutted by Defendants' uncontroverted evidence of lack of harm.

It also does not help Plaintiff that courts may consider whether Defendants' purported conduct, if "unrestricted and widespread," would "hurt the *potential* market for the original and derivatives." *Penguin Books*, 109 F.3d at 1403 (emphasis added). There is no licensing market for works that transformatively comment on *Man*, or that otherwise qualify for fair use. *Campbell*, 510 U.S. at 592 ("[T]here is no protectible derivative market for criticism."); *Bill Graham Archives*, 448 F.3d at 615 ("Copyright owners may not preempt exploitation of transformative markets."). Accordingly, Plaintiff would not suffer any actual market harm even if transformative works like *Flowers* become widespread. *See id.*

The fourth factor, and the fair use test as a whole strongly favors fair use. Accordingly, Plaintiff's infringement claim fails as a matter of law.

///

///

///

///

///

///

///

///

///

**4. CONCLUSION**

For the foregoing reasons, Defendants' Motion should be granted and summary judgment awarded to Defendants.

Dated: April 21, 2026

/s/ Peter Anderson, Esq.
Peter Anderson, Esq.
Eric H. Lamm, Esq.
Alexandra P. Cadena, Esq.
DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants
MILEY CYRUS, GREGORY HEIN, MICHAEL POLLACK, MCEO, INC., SONY
[continued next page]
MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING (US) LLC, PULSE 2.0, LLC, PURE TONE MUSIC, LLC, BLASTRONAUT, INC., WARNER-TAMERLANE PUBLISHING CORP., AMAZON.COM SERVICES LLC, APPLE INC., PANDORA MEDIA, LLC, DISNEY PLATFORM DISTRIBUTION, INC., TARGET CORP., BARNES & NOBLE BOOKSELLERS, INC., TIDAL MUSIC LLC, WALMART INC., WAL-MART.COM USA, INC., WIDE EYED GLOBAL, IHEARTMEDIA, INC., LIVE NATION ENTERTAINMENT, INC., XANDRIE SA, DEEZER S.A., and SOUNDCLOUD GLOBAL LIMITED & CO. KG

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this Memorandum contains 6,954 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 21, 2026

/s/ Peter Anderson
Peter Anderson, Esq.