Alex M. Weingarten (SBN 204410)
  AWeingarten@willkie.com
Jeffrey K. Logan (SBN 136962)
  JLogan@willkie.com
Amy M. Stern (SBN 311382)
  AStern@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 2900
Los Angeles, CA  90067
Telephone:   (310) 855-3000
Facsimile:   (310) 855-3099

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

| | |
|---|---|
| TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>MILEY CYRUS, et al.,<br><br>                    Defendants. | Case No. 2:24-cv-07910-MRA-BFM<br><br>Hon.  Mónica Ramírez Almadani<br><br>**PLAINTIFF TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC 'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF STEVEN WINOGRADSKY**<br><br>Date:        May 26, 2026<br>Time:        10:00 a.m.<br>Location:    411 W. 4th Street<br>             Courtroom 9B<br>             Santa Ana, CA 92701<br><br>Action Filed:   September 16, 2024 |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................1

II.   MR. WINOGRADSKY'S TESTIMONY SHOULD BE EXCLUDED ......2

    A.    Mr. Winogradsky Is Not Sufficiently Qualified to Offer His Opinions ................................................................................................2

        1.    Mr. Winogradsky's Purported Years of Participation in the Creative Aspects of Music Selection Is Not Supported by the Record .......................................................... 3

        2.    Mr. Winogradsky's Exposure to the Relevant Field Through His Legal and Business-Related Work Does Not Make Him Qualified ................................................................. 5

    B.    Mr. Winogradsky's Opinions Are Not Reliable ...............................7

        1.    Mr. Winogradsky's Opinion Cannot Rest on His Assessment of the Songs Alone .............................................. 8

        2.    Mr. Winogradsky Cannot Have Reliably Applied His Purported Criteria Without Considering the Nature of the Productions ................................................................... 10

    C.    Mr. Winogradsky's Opinions Are Speculative Given the Lack of Factual Data to Support Them......................................................12

    D.    Mr. Winogradsky's Testimony Is Neither Relevant Nor Helpful ....14

III.  CONCLUSION ...................................................................................16

    CERTIFICATE OF COMPLIANCE ........................................................ 17

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azco Biotech Inc. v. Qiagen, N.V.*,
2015 WL 350567 (S.D. Cal. Jan. 23, 2015) ........................................................11

*Diviero v. Uniroyal Goodrich Tire Co.*,
114 F.3d 851 (9th Cir. 1997) ................................................................................8

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) ..............................................................................14

*Fortune Dynamic, Inc. v. Victoria's Secret Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) ..............................................................................6

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
397 F.3d 1217 (9th Cir. 2005) ............................................................................11

*Kingsbury v. U.S. Greenfiber, LLC*,
2013 WL 7018657 (C.D. Cal. Nov. 5, 2013) ........................................................3

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (S. Ct. 1999) ..............................................................................5, 6

*Leite v. Crane Co.*,
868 F. Supp. 2d 1023 (D. Haw. 2012) ................................................................13

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ................................................................................14

*In re Silicone Gel Breast Implants Prods. Liability Litig.*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) ................................................................14

*U.S. v. Finley*,
301 F.3d 1000 (9th Cir. 2002) ..............................................................................7

*United States v. Cerna*,
2010 WL 11627594 (N.D. Cal. Dec. 17, 2010) ..................................................13

**Other Authorities**

Fed. R. Evid. 702 ...........................................................................................5, 6, 7

L.R. 11-6.1 .............................................................................................................17

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

ii

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In their Opposition to Plaintiff Tempo Secured Music Rights Collateral, LLC's ("Plaintiff") Motion to Exclude the testimony and report of Defendants' expert Steven Winogradsky (the "Motion"), Defendants vastly overstate Mr. Winogradsky's relevant experience and cherry-pick his testimony to make it sound more reliable and helpful, and less subjective and speculative.  Defendants' efforts are unsuccessful.

Initially, Defendants attempt to characterize Mr. Winogradsky's work as an attorney involved in music licensing as constituting "direct involvement" in the creative components of the music licensing process for audiovisual productions.  Mr. Winogradsky's career may have spanned forty-plus years, but he did not spend any of that time as a music supervisor or in another role that has direct responsibility for selecting music for works based on creative considerations.  Recognizing this, Defendants argue in the alternative that Mr. Winogradsky has the requisite "observational experience," but working, in Mr. Winogradsky's words, "adjacent" to the relevant field does not make one an expert in that field.

Defendants also mischaracterize the criteria on which Mr. Winogradsky claims to rely and how he applies them to counter overwhelming evidence that Mr. Winogradsky's opinion cannot be trusted.  Specifically, Defendants ignore Mr. Winogradsky's testimony that the nature of the particular scene of a production for which music is to be used is an important component in determining whether the music is a good fit, focusing instead on his testimony about the purported importance of the music's style, tempo, and lyrics.  They do this because Mr. Winogradsky admitted to having no knowledge of hundreds of productions for which the song *Flowers* ("*Flowers*") has been licensed and included them in his opinion anyway. But, Mr. Winogradsky's opinion that *Flowers* and the song *When I Was Your Man* ("*Man*") cannot have been in competition for ***any*** of the more than six-hundred

1

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

productions for which *Flowers* has been licensed falls apart in light of his testimony that he has no knowledge of what hundreds of those productions are.

Mr. Winogradsky's testimony is impermissibly speculative for the same reasons. He has no legitimate basis on which to opine that productions that apply what he describes as "subjective criteria" in making creative music decisions would not have viewed *Man* as a viable alternative.

Finally, Mr. Winogradsky's testimony offers no assistance to the trier of fact when Defendants contend it is based on the meaning of the words in *Man* and *Flowers* that are "obvious to all." Given the fatal flaws in his methodology, Mr. Winogradsky's testimony offers no benefit to the Court or the jury.

Accordingly, Plaintiff's Motion should be granted, and Defendants should be precluded from using Mr. Winogradsky's report and testimony at summary judgment or trial.

## II.    MR. WINOGRADSKY'S TESTIMONY SHOULD BE EXCLUDED

Mr. Winogradsky's testimony should be excluded because: (1) he is not qualified as he never had any direct involvement in the creative aspects of music selection save for a handful of examples during his career and his general experience in the industry does not provide him with the requisite expertise; (2) his opinions are unreliable and speculative because he cannot have reliably applied even his purported "objective criteria" to form his blanket opinion without knowing anything at all about hundreds of productions for which *Flowers* was licensed; (3) his opinion rests on the meaning of lyrics that is "obvious" to everyone and he makes sweeping conclusions about productions he knows nothing about.

### A.    Mr. Winogradsky Is Not Sufficiently Qualified to Offer His Opinions

Mr. Winogradsky is not qualified to provide an opinion regarding whether *Flowers* impacted the synch license market for *Man*. Although Defendants claim otherwise, Mr. Winogradsky failed to articulate either direct or observational

2

experience as a transactional attorney that is sufficient to establish the expertise in the creative aspects of music selection that would be expected of a music supervisor or someone in a similar role selecting music for audiovisual productions.

### 1. Mr. Winogradsky's Purported Years of Participation in the Creative Aspects of Music Selection Is Not Supported by the Record

Defendants claim that Mr. Winogradsky is qualified to opine on whether *Flowers* has caused actual or potential harm to the synch licensing market for *Man* because his career included direct involvement in the creative aspect of music licensing. *See* Opp. at 3:16-18. But, the testimony Defendants focus on underscores Mr. Winogradsky's general affirmations of involvement with few specific examples.

Mr. Winogradsky may have claimed to have frequent involvement in the creative process, but that is not supported by the record. Specifically, Defendants emphasize Mr. Winogradsky's testimony that he had frequent experience in the creative process of licensing at the Winogradsky Company. *See* Opp. at 3:18-4:25. Mr. Winogradsky was at the Winogradsky Company from 2002 to 2009. Of the six specific examples of television and film productions he recalled assisting with on the creative side, all but one were from his time at the Winogradsky Company. *See* Mot. at 8:7-21 (citing Declaration of Alex M. Weingarten ISO Opp. MSJ ("Weingarten Decl."), Ex. P at 35:3-21, 37:1-3, 38:20-22, 42:5-8, 43:23-25). The other – one song selection for one episode from the series *Miami Vice* – was from his tenure at Universal Pictures and Universal Television from 1996 to 1998. While no one can be expected to recall every single production with which they purportedly assisted with the creative aspects of music licensing in a decades-long career, the few examples cited by Mr. Winogradsky make these facts more akin to *Kingsbury v. U.S. Greenfiber, LLC*, 2013 WL 7018657 at *2 (C.D. Cal. Nov. 5, 2013) than Defendants claim. *See* Opp. at 4:21-5:2 (explaining that the expert in *Kingsbury* "was excluded because he had only encountered the specific issue he was opining

3

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

on *six* times during his thirteen-year career") (emphasis in original). And the three examples Mr. Winogradsky identified in his Report as demonstrating the creative aspect of music selection are not productions with which Mr. Winogradsky was involved in any manner. *See* Mot. at 10:8-11 (citing Weingarten Decl., Ex. XX at 4, Ex. P at 90:14-93:3 (purporting to explain why certain music was selected for a scene from *The Marvelous Mrs. Maisel*, a scene from *Miami Vice*, and a Toyota commercial, none of which Mr. Winogradsky was personally involved in)).

Defendants also point to Mr. Winogradsky's testimony that he was involved in licensing music for *American Idol* and awards shows. *See* Opp. at 3:25-4:2. But, Mr. Winogradsky described the process of selecting and licensing music for those programs in a manner that stands in stark contrast to that involving what Defendants describe as application of Mr. Winogradsky's "objective" criteria. Indeed, Mr. Winogradsky explained in his testimony that producers of talent shows put together a list of songs that contestants can choose from based on, in the first instance, whether the song could be "cleared on terms that are acceptable to the production company" (Supplemental Declaration of Alex M. Weingarten ("Weingarten Supp. Decl."), Ex. CCC at 47:10-19), whether the production company "felt [it] could do business with" those offering the songs (*id*. at 48:12-24), and ultimately whether the songs "fit both creative criteria and business criteria" of the specific talent show in question (*id*.), and, specifically, whether the songs could "showcase a vocalist's ability" (*id*. at 51:19-25).

The rest of Mr. Winogradsky's resume does not establish Mr. Winogradsky's expertise. As noted in Plaintiff's Motion, Mr. Winogradsky could only think of one example of an audiovisual production for which he assisted with the creative process at Universal Pictures and Universal Television – an episode of *Miami Vice* where the previously selected song had "fall[en] out" at the last moment. Mot at 7:12-16 (quoting Weingarten Decl., Ex. P at 20:5-21:1; 24:6-23). And, Defendants accuse Plaintiff of "simply ignor[ing]" Mr. Winogradsky's work at The Clearing House,

4

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Hanna-Barbera Productions, and Winogradsky/Sobel (Opp. at 4:15), but Mr. Winogradsky's description of his work at those companies does not demonstrate his experience in the relevant field. Mr. Winogradsky testified that, at The Clearing House, he sometimes gave suggestions to producers as to what music might be available under certain licensing terms or offered "alternative choices" when a song was unavailable, without recalling any specific productions for which he was involved in song selection. *See* Mot. at 7:5-9 (citing Weingarten Decl., Ex. P at 16:25-18:3). Similarly, Mr. Winogradsky testified that while at Winogradsky/Sobel, he primarily negotiated composer agreements and oversaw the music clearance process for various productions "with the added feature of signing . . . artists and writers to pitch their material to music users, TV, film, video." Weingarten Decl., Ex. P at 45:2-10. And, Mr. Winogradsky testified that at Hanna-Barbera, "99 percent" of the time a composer created original scores, with Mr. Winogradsky having no role in that creative process. Mot. at 8:5-6 (citing Weingarten Decl., Ex. P at 31:12-16). Defendants' claims that Mr. Winogradsky has decades of "direct involvement" in the creative aspect of music selection for audiovisual works belies his testimony. Opp. at 3:17.

### 2. Mr. Winogradsky's Exposure to the Relevant Field Through His Legal and Business-Related Work Does Not Make Him Qualified

Recognizing that Mr. Winogradsky has never driven the creative process behind song selection, Defendants alternatively claim that Mr. Winogradsky is qualified based on his "years of observational experience." Opp. at 5:16-18.

As an initial matter, contrary to Defendants' argument, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) does not stand for the proposition that Mr. Winogradsky is qualified through his observational experience. In *Kumho*, the party seeking to offer expert testimony from a tire failure analyst argued that his methodology – a visual/tactile inspection – was sufficiently reliable under Federal

5

Rule of Evidence 702 because it was used by other experts in the field and in the expert's experience working for Michelin. *See id.* The Court clarified in response that the reliability of the methodology itself was not the issue, as "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience" or, in the following sentence, that "as a general matter, tire abuse may often be identified by qualified experts through visual or tactile inspection of the tire." *See id.* Defendants have latched onto the first sentence to defend Mr. Winogradsky's qualifications as an expert through observational experience, but the *Kumho* Court made the comment to explain that the expert's methodology (the visual inspection) was sufficiently reliable. The expert's "extensive and specialized experience" was presumed and included a masters degree in mechanical engineering, a decade working at Michelin, and testimony as a tire failure consultant in other tort cases. *See id.* at 153.

Defendants also equate Mr. Winogradsky to the expert in *Fortune Dynamic, Inc. v. Victoria's Secret Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) – a comparison that is no more successful. In that case, the Court determined that a "forty-year advertising and marketing professional" could be presumed to be "familiar with what companies within the industry do when placing words on a product."[1]   *Id.* at 1040, 1043. Mr. Winogradsky, conversely, cannot fairly be described as a music supervisor or other professional who selects music for audiovisual productions as opposed to a lawyer.

As noted above, Mr. Winogradsky's testimony that he was "[music] supervisor adjacent" (*see* Opp. at 6:1-3) does not mean that has the requisite experience. He recalled specifically being involved in the creative decisions related to music selection for six examples in his career (including the productions he

[1] In contrast, the expert's testimony concerning whether one party used a specific word as a trademark was excluded because "[t]he basis of his knowledge regarding trademark use [was] not entirely clear" in spite of his advertising and marketing experience. *Fortune*, 618 F.3d at 1040.

6

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

assisted with while at the Winogradsky Company and the *Miami Vice* episode), and he had no firsthand or observational involvement in the three case studies he briefly discussed in his Report. *See supra* at 3.

And, nothing about Mr. Winogradsky's past scholarship reflects expertise in the creative components of music selection. Defendants identify past works and lectures including Mr. Winogradsky's co-authorship of "Music for Sports Programming – How Sports Networks Select Their Music and Structure Licensing Deals," a guest lecture at ASCAP Film and TV Composers' Workshop, and moderating "Use of Music in Film, TV, and New Media." *See* Opp. at 6:4-10. This is not evidence that any of these works go beyond legal and business-related aspects of music licensing, such as license budgets, contract negotiations, and paths to clearance.

Accordingly, nothing in Defendants' Opposition establishes that Mr. Winogradsky possesses the requisite qualifications through his years of music-licensing work in a legal and business-related role. Even if he has substantial experience in the industry, he must still be shown to have "sufficient expertise" to opine on the topic at issue. *See U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) (stating the witness "must have sufficient expertise" under Rule 702).

## B. Mr. Winogradsky's Opinions Are Not Reliable

Defendants argue Mr. Winogradsky's opinions are reliable because he: (1) properly based his opinion on objective criteria; and (2) does not need to be familiar with the productions for which *Flowers* was licensed to offer an opinion about them. *See* Opp. at 6-8. Assuming *arguendo*, that Mr. Winogradsky's criteria has any merit, it goes beyond just his assessment of the differences between the two songs and includes consideration of specific aspects of the production. Mr. Winogradsky cannot have reliably applied the criteria to form his blanket opinion without knowing anything, even at a high-level, about hundreds of productions for which *Flowers* was licensed.

7

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

### 1.    Mr. Winogradsky's Opinion Cannot Rest on His Assessment of the Songs Alone

Defendants claim that Mr. Winogradsky reliably applied the criteria he identified for song selection to determine that *Flowers* and *Man* are not synch license substitutes "because *Man* is a slow ballad sung by a man who is despondent after the end of a romantic relationship and wishes he could go back and correct the things he failed to do, while *Flowers* is an upbeat pop song sung by a woman who celebrates her new-found independence and self-reliance." *See* Opp. at 7:13-18. While Plaintiff contests that the identification of the criteria itself is reliable based on Mr. Winogradsky's lack of qualifications (*see supra* at 2-6), Defendants' claim is also at odds with Mr. Winogradsky's testimony, which supports the proposition that one cannot make such a broad determination without consideration of how the songs are being used.

Although Defendants describe the criteria Mr. Winogradsky claims to have applied in forming his opinions as "objective" numerous times throughout their Opposition, including in relation to this argument concerning the reliability of his methods (*see, e.g.*, Opp. at 6:26-7:1), Mr. Winogradsky repeatedly testified that "each production has its own *subjective* criteria for which songs are selected for licensing." Mot. at 9:23-10:3 (quoting Weingarten Decl., Ex. P at 79:18-23 (emphasis added); Weingarten Decl., Ex. XX at 3 ("The process for selecting what songs will be licensed into audiovisual productions varies from project to project . . . . ***Each production has its own very subjective criteria*** for which songs are selected for licensing[.]") (emphasis added)). That is the criteria on which Mr. Winogradsky claims to be relying, making the whole opinion subjective and speculative. An expert opinion is unreliable when it rests on "unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF STEVEN WINOGRADSKY

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Even setting that aside, by virtue of extending his opinion to audiovisual productions with which he is entirely unfamiliar, Mr. Winogradsky ignores his own point that the choice of music for a production depends on what that production is. Mr. Winogradsky's Report states that factors considered in song selection include, in general: "the nature of the scene; whether the lyrics of the song fit the overall feeling of the scene; the tempo of the song; and whether the song is sung by a man or a woman." *See* Mot. at 9:23-10:3 (quoting Weingarten Decl., Ex. XX at 3). He then purports to explain "how the use of a song matches with the visual elements of a scene" using examples from two television series and a commercial that necessarily involve explanations of the relevant scenes in those series and commercials. *Id*. at 10:8-11 (quoting Weingarten Decl., Ex. XX at 4). And, he then discusses what he understands to be the differences in the tempos, styles, and lyrics of the songs, and purports to explain why *Flowers* could not have been a market substitute for *Man* in morning shows, talent competitions, award shows, three commercials, and a film based on information about those specific productions. *Id*. at 4:8-12, 15:23-26 (quoting Weingarten Decl., Ex. XX at 4-5).

Mr. Winogradsky's testimony that *Flowers* aligns with morning shows' practice of using "upbeat, well-known music as 'bumpers,'" fits with the "intended messaging" of a commercial for a self-love bouquet, and fits a scene in a film where a young woman is freed from an abusive relationship (Opp. at 7:23-8:2) demonstrates why, in his opinion, the facts of an individual production matter. Indeed, according to Defendants, *Flowers* is more appropriate than *Man* as a song choice for the film "I love you forever" because *Man* "would be at odds with the overall feeling and/or nature ***of the scene***." Opp. at 8:4-8 (emphasis added). The sheer fact that, according to Mr. Winogradsky, one song is fast and celebratory while the other is slow and sad is not a sufficient basis to conclude that they have never been and are unlikely to be considered market substitutes across the board. By way

9

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

of example, Mr. Winogradsky testified that, in connection with selecting songs for a talent competition like *American Idol*:

> [Y]ou look at who your contestants might be and try to -- to tie[] songs that [show]case their vocal abilities. So that means you wouldn't, you know, you would stay away from heavy metal songs, you would stay away from rap songs because that's not the type of things that showcase a vocalist's ability. So it's the knowledge of that type of music that would assist in the creative process.

Weingarten Supp. Decl., Ex. CCC at 51:19-52:2.

Assuming, *arguendo*, that showcasing a vocalist's talent is a chief consideration when selecting songs for talent competitions, that confirms that whether one song is a better fit for an audiovisual production than another depends on more than just the characteristics of those songs. Thus, the methodology underlying Mr. Winogradsky's opinion that *Flowers* has never been and will not be a synch substitute for *Man* across hundreds of different productions – many of which Mr. Winogradsky is unfamiliar with – is not sound.

### 2. Mr. Winogradsky Cannot Have Reliably Applied His Purported Criteria Without Considering the Nature of the Productions

Defendants argue that the "idiosyncrasies" of individual productions for which *Flowers* has been licensed do not impact Mr. Winogradsky's opinions such that it makes no difference whether he has seen or is familiar with the productions or not. *See* Opp. at 8:24-28. This is completely at odds with Mr. Winogradsky's testimony.

While Mr. Winogradsky cannot be expected to have personal knowledge about why *Flowers* was selected for every use for which it was licensed, his testimony indicates that he must at least know what the uses are at a high level in

10

order to apply his purported criteria. *See* Mot. at 9:23-10:8; *see also* Opp. at 7:21-8:8 (discussing Mr. Winogradsky's reasoning for why *Flowers* was a better fit than *Man* for certain productions based on claimed facts about those productions). Mr. Winogradsky admitted his lack of familiarity with numerous programs for which *Flowers* had been licensed (*see* Mot. at 10:11-12:11), and looking to his Report as Defendants direct the Court to do does not solve this problem. Defendants cite, for example, Mr. Winogradsky's testimony that he does not know why *Flowers* was selected for use in various instances listed in the Licensing Reports, "other than for the reasons offer in [his affirmative report]."[2] Opp. at 9:13-15. But, nothing in Mr. Winogradsky's Report (or deposition testimony) explains why *Flowers* would have been a better fit than *Man* in programs with which Mr. Winogradsky is entirely unfamiliar such as *Top TVZ*, *Canta Comiga 5A Temporada*, *Setlist*, *Bonsoir Bonsoir*, *Domingao Com Huck*, and *Space Ape: Beatstar*. *See* Opp. at 9:14 (citing Weingarten Decl., Ex. Q at 6-7 (modifying testimony regarding these shows to add purported clarification)); *see also* Mot. at 11:6-12:11 (quoting Weingarten Decl., Ex. P at 115:16-116:4; 116:8-14; 117:24-118:2; 118:10-15; 118:20-25; 119:6-11; 119:16-25; 121:9-12; 126:6-15). There is no denying based on Mr. Winogradsky's testimony that the facts of a production are critical to his opinion. Indeed, based on his testimony, it cannot be the case that *Flowers* is more appropriate than *Man* for every use essentially because they are different songs.

In short, Mr. Winogradsky was understandably asked if he had personal knowledge of the decisions behind each use of *Flowers* during his deposition, but

---

[2] While it does not change the fact that his opinions are unsupported, Mr. Winogradsky's errata sheet, which changes certain deposition answers to rely on his Report, was untimely without excuse. The 30-day deadline to review began to run when the deposition transcript was received by Defendants' counsel, not Mr. Winogradsky himself. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1224 (9th Cir. 2005) (explaining that the thirty-day correction clock begins upon *notification* of availability, not possession); *Azco Biotech Inc. v. Qiagen, N.V.*, 2015 WL 350567, at *1 (S.D. Cal. Jan. 23, 2015) (stating that the correction clock begins to run when the deponent *or counsel* is notified of the transcript's availability).

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

11

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF STEVEN WINOGRADSKY

whether he was personally involved is not the point (other than to the extent it relates to his lack of qualifications). The point is that Mr. Winogradsky was not even generally aware of hundreds of productions for which *Flowers* was licensed and, as he admitted, cannot offer an opinion "without knowing anything about the program[s]." *See* Mot. at 11:6-22 (citing Weingarten Decl., Ex. P at 115:22-116:4; 116:8-117:14).

### C. Mr. Winogradsky's Opinions Are Speculative Given the Lack of Factual Data to Support Them

Defendants state that it makes no difference that Mr. Winogradsky has no direct or indirect knowledge about licenses issued for *Flowers* because "[e]xperts often testify regarding general practices about which they have knowledge and experience, and apply that to specific events or occurrences with which they had no involvement." Opp. at 11:16-18. While that may be true as a general matter, here there is too great a gap between the licensing activity of *Flowers* and Mr. Winogradsky's opinion.

While Mr. Winogradsky is not expected to "contact all the individuals involved in the over six-hundred audiovisual works that licensed *Flowers* to render his opinions here" (Opp. at 11:22-26), he must do more than speculate as to why *Flowers* is a better fit than *Man* in more than six hundred works considering that "[e]ach production has its own very subjective criteria" according to his own Report. *See* Mot. at 3:18-22 (quoting Weingarten Decl., Ex. XX at 3).

As discussed above, Mr. Winogradsky made a blanket statement that *Flowers* could not have been a substitute for *Man* in connection with over six-hundred audiovisual productions based on his claimed experience in and exposure to some creative music licensing decisions, with few examples. *See supra* 3-5; Mot. at 7:12-16; 8:12-19. He came up with a list of subjective criteria that productions purportedly consider when deciding to license music and then discussed them in the context of a small number of specific categories and examples – morning shows,

12

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

talent competitions, awards and late-night shows, three commercials, and one film. *See* Mot. at 3:25-4:12 (quoting Weingarten Decl., Ex. XX at 3-5). As for why *Flowers* would have been licensed for one other film (*Dog Man*), Mr. Winogradsky testified that he "ha[d] no idea and frankly [was] a bit perplexed." Mot. at 15:5-8 (quoting Weingarten Decl., Ex. P at 74:7-11).

Defendants claim that Mr. Winogradsky went above and beyond by "reviewing actual synch uses for *Flowers*," but that is clearly not the case for the hundreds of licenses of *Flowers* that fall outside of the categories and examples. Opp. at 12:25-27. As such, with respect to, at minimum, *Dog Man* and every other production for which *Flowers* has been licensed that is not one of the above specific categories or examples, there is no connection between the data and Mr. Winogradsky's opinion. Even for the programs Mr. Winogradsky did attempt to address specifically in his Report, there is not a sufficient nexus between his alleged experience and the application of the subjective criteria he described. *See United States v. Cerna*, 2010 WL 11627594, at *6 (N.D. Cal. Dec. 17, 2010) (excluding expert whose opinions were, mostly "too general to allow for a determination of whether a particular opinion was rooted in something more than his 'say so'").

Defendants compare Mr. Winogradsky to the experts in *Leite v. Crane Co.*, 868 F. Supp. 2d 1023, 1035 (D. Haw. 2012), contending those experts "were not required to interview every Navy officer" to offer their opinions about whether the Navy would have rejected warnings from the seller of equipment and products containing asbestos. Opp. at 11:22-26. *Leite* is inapposite, as the Court held that the experts' "extensive experiences in the Navy provide[d] the basis and foundation for their opinions regarding what the Navy would, or would not, have allowed as to asbestos warnings" and thus took their testimony "outside the realm of unsupported speculation." *Leite*, 868 F. Supp. 2d at 1036. Mr. Winogradsky does not have equivalent experience, as Mr. Winogradsky has not worked in a music supervisory role on any of the productions at issue, past or present. He was given Licensing

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

13

Reports with the specific productions for which *Flowers* was licensed, and then claimed *Man* would not have been a substitute for any of those uses without even looking into the specific circumstances of the vast majority of those productions. *See* Mot. at 9-10; *supra* at 10-12.

Defendants claim that "Plaintiff has the Licensing Reports yet failed to ascertain whether *Man* was in contention too." Opp. at 12:5-6; 2:2-3. It is Defendants who bear the burden of proving fair use, including "the effect of the [infringing] use upon the potential market for or value of the copyrighted work." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 451 (9th Cir. 2020). And, it is the party proffering expert testimony who must establish its admissibility under *Daubert*. *See Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) (explaining that party seeking to introduce expert testimony bears the burden of proving admissibility). Mr. Winogradsky's opinions do not help Defendants meet that burden when they are unreliable and inadmissible. *See In re Silicone Gel Breast Implants Prods. Liability Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) ("[A]ny step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible.").

## D. Mr. Winogradsky's Testimony Is Neither Relevant Nor Helpful

Defendants claim that Mr. Winogradsky's understanding of *Man* and *Flowers* which are based on the "objective meaning of the words" is relevant to the extent it relates to his "application of the synch criteria." Opp. at 13:18-19. According to Defendants, the objective meaning of the words in *Man* and *Flowers* is "obvious to all." *Id*. at 3:20. That is Plaintiff's point. Mr. Winogradsky's testimony is not helpful to the extent it rests on "obvious" lyrical and stylistic differences between *Flowers* and *Man*.

In their Opposition, Defendants repeatedly characterize the lyrical and stylistic differences of the songs as the crux of Mr. Winogradsky's opinion that *Flowers* has not been and will not be a market substitute for *Man*. *See* Opp. at 7:13-

14

18 (stating Mr. Winogradsky applied his criteria and concluded that *Flowers* and *Man* are not synch license substitutes "because *Man* is a slow ballad sung by a man who is despondent after the end of a romantic relationship and wishes he could go back and correct the things he failed to do, while *Flowers* is an upbeat pop song sung by a woman who celebrates her new-found independence and self-reliance"). Assuming, *arguendo*, that is the criteria that matters, then the fact finder can draw their own conclusions. Indeed, Defendants take the position that the objective meaning of the words in *Man* and *Flowers* is obvious, requiring nothing more than a review of the lyrics themselves.[3] *See* Opp. at 3:19-20.

If, however, the inquiry goes beyond that, then one would assume based on Mr. Winogradsky's testimony that the specific uses matter. *See* Mot. at 9:23-10:3 (quoting Weingarten Decl., Ex. XX at 4 (discussing how aspects of the scenes for which a song is being used are purportedly relevant to music selection). It is on that basis that Mr. Winogradsky's testimony offers no assistance to the trier of fact. As discussed at length in Plaintiff's Motion and above, Mr. Winogradsky's opinion that *Flowers* was not a market substitute for *Man* with respect to the hundreds of productions for which *Flowers* was licensed does not have a reliable basis unless he has some understanding of those productions. *See* Mot. at 10:8-11; *id*. at 11:6-10 (quoting Weingarten Decl., Ex. P at 115:22-116:4 (stating "I don't know anything about the program, so I can't speak to what decisions were made" with respect to the production *Bonsoir Bonsoir*); *see id.* at 11:19-22 (quoting Weingarten Decl., Ex. P at 116:8-117:14) (stating that "[w]ithout knowing anything about the program, I can't offer an opinion" with respect to the production *Top TVZ*).

---

[3] In their Motion and their Summary Judgment Motion, Defendants have gone back and forth about whether expert testimony relating to the lyrics is relevant or helpful depending on the context. For example, when it comes to the testimony of Plaintiff's musicologist that the similarity of the specific lyrics at issue is obvious from the face of the lyrics, Defendants claim that more is required. *See* Defs' MSJ at 12-14. Here, Defendants take the position that the objective meaning of the words in *Man* and *Flowers* is obvious, requiring nothing more than a review of the lyrics themselves. *See* Opp. at 3:16-24.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF STEVEN WINOGRADSKY

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Accordingly, Mr. Winogradsky's testimony is either unhelpful and irrelevant because: (1) it rests on the meaning of lyrics that is "obvious" to everyone; or (2) it makes sweeping conclusions about productions that Mr. Winogradsky knows nothing about.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be granted, and Mr. Winogradsky's opinion, testimony, and Report should be excluded in their entirety.

Dated: May 5, 2026

**WILLKIE FARR & GALLAGHER LLP**

By:   */s/ Alex M. Weingarten*
Alex M. Weingarten
Jeffrey K. Logan
Amy M. Stern

*Attorneys for Plaintiff*
Tempo Secured Music Rights Collateral, LLC

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

16

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this Memorandum contains 5,582 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 5, 2026

_/s/ Alex M. Weingarten_
Alex M. Weingarten

17