Alex M. Weingarten (SBN 204410)
  AWeingarten@willkie.com
Jeffrey K. Logan (SBN 136962)
  JLogan@willkie.com
Amy M. Stern (SBN 311382)
  AStern@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 2900
Los Angeles, CA  90067
Telephone:   (310) 855-3000
Facsimile:    (310) 855-3099

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MILEY CYRUS, et al.,<br><br>Defendants. | Case No. 2:24-cv-07910-MRA-BFM<br><br>Hon.  Mónica Ramírez Almadani<br><br>**PLAINTIFF TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF MATTHEW BAILEYSHEA (ECF NO. 111)**<br><br>Date:       May 26, 2026<br>Time:       10:00 a.m.<br>Location:   411 W. 4th Street<br>              Courtroom 9B<br>              Santa Ana, CA 92701<br><br>Action Filed:  September 16, 2024 |

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................1

II.    PLAINTIFF'S MOTION IS TIMELY ........................................................2

III.   DR. BAILEYSHEA'S ANALYSIS OF THE WORKS' SIMILARITIES AND DIFFERENCES IS INADMISSIBLE AND IMPROPER ...............................................................................................5

    A.     Dr. BaileyShea Did Not Apply the Extrinsic Test in a Reliable Manner to Plaintiff's Selection-and-Arrangement Claim.................. 5

    B.     Dr. BaileyShea's Opinion Concerning a Coherent Musical Design Is Equally Improper in Light of His Methodology .............. 7

IV.   DR. BAILEYSHEA'S FAIR USE OPINIONS SHOULD BE EXCLUDED .................................................................................................9

    A.     Dr. BaileyShea Is Not Qualified to Offer Opinions on Fair Use..... 10

        1.     Dr. BaileyShea's Fair Use Opinions Are Not Based on Sufficient Qualifications, Nor Are They Helpful to the Court   10

        2.     Dr. BaileyShea's Opinions Are Informed By Subjective Understandings That He Misapplies ................................... 13

    B.     Dr. BaileyShea's Opinions Should Be Excluded Because They Are Impermissible Legal Conclusions.............................................. 15

    C.     Dr. BaileyShea's Fair Use Opinions Are Not Based on a Reliable Methodology........................................................................ 16

V.    DR. BAILEYSHEA IS CUMULATIVE OF DR. FERRARA...................20

VI.   CONCLUSION .......................................................................................22

    CERTIFICATE OF COMPLIANCE .........................................................23

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosetti v. Oregon Cath. Press*
    151 F.4th 1211 (9th Cir. 2025)........................................................................6, 8

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*
    598 U.S. 508 (2023) ...................................................................................13, 14

*Campbell v. Acuff-Rose Music, Inc.*
    510 U.S. 569 (1994) ...................................................................................12, 14

*Cholakyan v. Mercedes-Benz, USA, LLC*
    281 F.R.D. 534 (C.D. Cal. 2012) .......................................................................20

*Daubert v. Merrell Dow Pharm., Inc.*
    509 U.S. 579 (1993) ...............................................................................3, 4, 17

*Diviero v. Uniroyal Goodrich Tire Co.*
    114 F.3d 851 (9th Cir. 1997)...............................................................................18

*Fisher v. Dees*
    794 F.2d 432 (9th Cir. 1986)..........................................................................3, 12

*Gable v. Nat'l Broad. Co.*
    727 F. Supp. 2d 815 (C.D. Cal. 2010), *aff'd sub nom. Gable v.
    Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011)............................................3

*Gregorini v. Apple Inc.*
    2024 WL 5264949 (C.D. Cal. Nov. 25, 2024) ................................................6, 7

*Hanagami v. Epic Games, Inc.*
    85 F.4th 931 (9th Cir. 2023)................................................................................6

*Johannsongs-Publ'g, Ltd. v. Lovland*
    2020 WL 2315805 (C.D. Cal. Apr. 3, 2020).......................................................4

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*
    523 F.3d 1051 (9th Cir. 2008) ..........................................................................16

*Orr v. Bank of America, NT & SA*
    285 F.3d 764 (9th Cir. 2002)............................................................................20

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

ii

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

*Roberts v. Gordy*
  2015 WL 11202356 (S.D. Fla. Sept. 17, 2015)........................................................ 12

*Soares v. Bondi*
  2025 WL 2630919 (C.D. Cal. July 18, 2025) ........................................................... 4

*Sound & Color, LLC v. Smith*
  2025 WL 1232639 (9th Cir. Apr. 29, 2025)............................................................. 6

*Takeguma v. Freedom of Expression LLC*
  2021 WL 487884 (D. Ariz. Feb. 10, 2021) .............................................................. 3

*Tompkins v. Medtronic, Inc.*
  1994 WL 41071 (9th Cir. Feb. 10, 1994)............................................................... 21

*United States v. Finley*
  301 F.3d 1000 (9th Cir. 2002)............................................................................. 11

*United States v. Hermanek*
  289 F.3d 1076 (9th Cir. 2002)............................................................................. 20

*United States v. Johnson*
  637 F.2d 1224 (9th Cir. 1980)............................................................................. 16

*United States v. Valencia-Lopez*
  971 F.3d 891 (9th Cir. 2020)............................................................................... 11

*WMTI Prods., Inc. v. Healey*
  2023 WL 5506712 (C.D. Cal. July 13, 2023) .......................................................... 7

**Other Authorities**

Fed. R. Civ. Proc. 6........................................................................................... 4

Fed. R. Civ. Proc. 26......................................................................................... 4

Fed. R. Evid. 403 .......................................................................................... 2, 20

Fed. R. Evid. 702 ........................................................................................ *passim*

Fed. R. Evid. 704 ............................................................................................ 16

L.R. 6-1 ........................................................................................................... 4

PLAINTIFF'S REPLY MEMORANDUM ISO MOTION TO EXCLUDE
REPORTS AND TESTIMONY OF MATTHEW BAILEYSHEA

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In their Opposition to Plaintiff Tempo Secured Music Rights Collateral, LLC's ("Plaintiff") Motion to Exclude the Reports and Testimony of Defendants' musicologist expert Matthew BaileyShea (the "Motion"), Defendants overstate Dr. BaileyShea's experience and attempt to make his limited and subjective analyses seem technical and helpful to the Court.   However, Defendants' efforts are unsuccessful and nothing in their Opposition saves Dr. BaileyShea's unqualified, unreliable, and inadmissible testimony, which the Court should exclude under Federal Rule of Evidence 702.[1]

First, although Defendants contend that the methodology underlying Dr. BaileyShea's comparative analysis is sound,  the filtering method that he employed is improper when assessing the substantial similarity of two works under the selection-and-arrangement theory of copyright infringement on which Plaintiff's claim is based.  Defendants' concession that no prior art captures all of the elements at issue in Plaintiff's claim further renders Dr. BaileyShea's opinions unreliable and inadmissible, regardless of whether he purports to assess the sum of the works' similarities in opining they do not "form a coherent musical design."

Separately, Defendants argue that Dr. BaileyShea is qualified to opine about whether *Flowers* makes fair use of *When I Was Your Man* ("*Man*") by transforming its music and lyrics or otherwise serving as commentary, criticism, or parody on the prior work.  While Dr. BaileyShea is a musicologist, Defendants fail to demonstrate that his musical knowledge qualifies him to opine as an expert on the message or

---

[1] In addition to their substantive arguments, Defendants argue the Motion is untimely because it was served after the dispositive motions deadline in this case.   However, a motion to exclude an expert's testimony is not a dispositive motion.  Additionally, there is absolutely no prejudice Defendants can claim to have suffered when they had 28 days to respond to the Motion.

1

meaning conveyed by the words in a song. Nor can they show it qualifies him to opine on whether *Flowers* constitutes commentary, parody, or a transformative work under the legal doctrine of fair use.

Defendants also dispute that Dr. BaileyShea's opinions on commentary, parody, and transformativeness are merely legal conclusions under the guise of expert testimony. But, by opining that *Flowers* is commentary, parody, or transforms *Man* (whether based on his claimed "commonsense understanding" of those terms or not), Dr. BaileyShea purports to decide an ultimate issue of law.

Finally, Defendants' Opposition establishes that there is needless duplicative testimony as between Dr. BaileyShea and Dr. Ferrara. Given Dr. BaileyShea's admission of overlap, the Court should exclude his cumulative and duplicative opinions regardless of whether Dr. Ferrara offers a slightly different perspective or conclusions. And, while Defendants suggest Rule 403[2] is inapplicable at the summary judgment stage, this ignores that Rule 702 also permits the Court to disregard Dr. BaileyShea's opinions.

Accordingly, Plaintiff's Motion should be granted, and Defendants should be precluded from using Dr. BaileyShea's report and testimony at summary judgment or trial.

## II. PLAINTIFF'S MOTION IS TIMELY

Outside of their response to the merits of Plaintiff's Motion, Defendants argue it is untimely because it was filed after the deadline to file dispositive motions set by this Court. *See* Opp. at 2:22-3:10. According to Defendants, Plaintiff's Motion to exclude expert testimony is a dispositive motion because "expert testimony as to the extrinsic test is necessary." *Id.* That is not how the rules governing dispositive motions and motions to exclude expert testimony work.

---

[2] All references to "Rules" refer to the Federal Rules of Evidence.

2

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

First, a motion to exclude or limit an expert's testimony – otherwise known as a *Daubert* motion – is not a dispositive motion. *Takeguma v. Freedom of Expression LLC*, 2021 WL 487884, at *18 n.2 (D. Ariz. Feb. 10, 2021) ("A *Daubert* motion is not a dispositive motion."). Defendants cite no authority, and none exists, for the proposition that a *Daubert* motion must be filed by the dispositive motion deadline. Indeed, when presented with a nearly identical issue, at least one other court in this Circuit has declined to find *Daubert* motions filed after dispositive motion deadlines untimely. *See id.* (finding *Daubert* motions related to summary judgment motion timely where filed after dispositive motion deadline because *Daubert* motions were not dispositive, no deadline for non-dispositive or *Daubert* motions had passed, and non-moving party had ample time to oppose and argue the merits of the motions).

There is no reason why the copyright context of this case changes the analysis. Despite Defendants' claim, expert testimony is not required for a copyright infringement determination – especially when Defendants themselves argue (in favor of the wrong conclusion) that "the Court can (and should) determine, ***without the aid of expert testimony***, that *Flowers*' lyrics can be reasonably perceived as commentary on *Man*." Opp. at 1:21-25 (emphasis added); *cf. Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 836 (C.D. Cal. 2010) (finding no need to rely on expert testimony where works are aimed at, and can be interpreted by, the "general audience" and "deal with subject matter readily understandable by ordinary persons"), *aff'd sub nom. Gable v. Nat'l Broad. Co.*, 438 F. App'x 587 (9th Cir. 2011); *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986) ("Although we have no illusions of musical expertise, it was clear to us that [Defendant's] version was intended to poke fun at the composers' song, and at [the singer's] rather singular vocal range."). The cases Defendants cite are inapposite, including because they concern a plaintiff's lack of evidence, and the court's rationale does not apply with equal force when considering expert evidence offered by defendants. *See* Opp. at

3

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

2:27-3:5; *see also Johannsongs-Publ'g, Ltd. v. Lovland*, 2020 WL 2315805 at *7 (C.D. Cal. Apr. 3, 2020).

And, even assuming, *arguendo*, there were any merit to Defendants' claim that Plaintiff's Motion is untimely, any neglect on Plaintiff's part is undoubtedly excusable. When an act must be done within a specified time, the Court may, for good cause, extend the time "on a motion made after the time has expired if the party failed to act because of excusable neglect." *See* Fed. R. Civ. Proc. 6(b)(1)(B). When considering whether a party's neglect is excusable, the Court must consider and balance: (1) the danger of prejudice to the nonmovant; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Soares v. Bondi*, 2025 WL 2630919, at *2 (C.D. Cal. July 18, 2025).

Here, Plaintiff recognized that this Court has set deadlines applicable to *Daubert* motions, complied with those deadlines, and filed its Motion within the requisite notice period to have it heard concurrently with Defendants' summary judgment motion. This case's initial scheduling order, set by Judge Pregerson on March 24, 2025 and subsequently adopted by the Court, was silent on a deadline for *Daubert* motions. *See generally* Joint Federal Rule of Civil Procedure 26(f) Report (ECF No. 65); Scheduling Order (ECF No. 78). This Court's Trial Order sets the deadline for filing *Daubert* motions as eight weeks before the Final Pretrial Conference, and under this District's local rules otherwise requires motions be noticed at least 28 days before they are heard. *See* MRA Civil Trial Order (UPDATED 12-30-25) (C.D. Cal. Dec. 30, 2025) (on file with court); L.R. 6-1 (requiring motion to be filed 28 days before hearing). Plaintiff complied with proper procedure by filing its Motion within the requisite notice period on March 24, 2026, 42 days before the formerly set May 5, 2026 hearing date, and 63 days before the now set May 26, 2026 hearing date. In either case, Plaintiff's Motion was filed well

4

in advance of eight weeks preceding the Final Pretrial Conference set for January 12, 2027.  *See* Order Granting Feb. 2026 Stipulation (ECF No. 98).

Plaintiff's good faith belief that the Motion was timely filed is corroborated by the fact that there is no delay and no prejudice.  Indeed, Defendants filed their Opposition on April 21, 2026, giving them 28 days to respond to the Motion.  Accordingly, there is no justification for denying Plaintiff's Motion based on this procedural deficiency, if it is deemed one at all.

## III.   DR. BAILEYSHEA'S ANALYSIS OF THE WORKS' SIMILARITIES AND DIFFERENCES IS INADMISSIBLE AND IMPROPER

Defendants argue Dr. BaileyShea's opinions concerning the similarities and differences between *Man* and *Flowers* are admissible because he properly distinguished between protectable and unprotectable elements of the works and considered the sum of their similarities.  However, Defendants' arguments merely demonstrate that Dr. BaileyShea relied on an inapplicable understanding of the extrinsic test and improperly applied it to Plaintiff's selection-and-arrangement claim.[3]

### A.   Dr. BaileyShea Did Not Apply the Extrinsic Test in a Reliable Manner to Plaintiff's Selection-and-Arrangement Claim

Defendants contend that Dr. BaileyShea properly adhered to the requirements of the extrinsic test in part because he distinguished between protectable and

---

[3] Defendants also claim there is no dispute "that Prof. BaileyShea is qualified to offer his opinions as to objective similarities and differences between the music *and lyrics* of *Man* and *Flowers*."  Opp. at 3:16-18 (emphasis added).  While it is true that Plaintiff does not dispute that Dr. BaileyShea's background meets the minimum threshold for qualifications when it comes to a comparative musicological analysis, Plaintiff does challenge his analysis to the extent it involves his interpretation of the works' lyrics.  *See* Mot. at 6:19-7:7 (stating that an interpretation of the lyrics, standing alone, can and should be based on the understanding of "ordinary persons" as opposed to expert testimony).

PLAINTIFF'S REPLY MEMORANDUM ISO MOTION TO EXCLUDE REPORTS AND TESTIMONY OF MATTHEW BAILEYSHEA

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

unprotectable elements. *See* Opp. at 5:8-6:2. But, Dr. BaileyShea did not just distinguish between protectable and unprotectable elements – he filtered out the supposedly unprotectable (*i.e.,* what he deemed common) elements as a cornerstone of his analysis. That is not how selection-and-arrangement claims are assessed in the Ninth Circuit.

The law requires that, for a selection-and-arrangement claim, expert analysis focus on the overall selection and arrangement at issue – not just its discrete pieces. *See Sound & Color, LLC v. Smith*, 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025) ("[A] selection-and-arrangement theory is an alternative to filtering."); *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 n.11 (9th Cir. 2023) (emphasis added) (explaining proper inquiry when assessing substantial similarity of selection-and-arrangement claims is "whether a protected expression, ***as a whole***, was unlawfully copied"); *Gregorini v. Apple Inc.*, 2024 WL 5264949, at *7 (C.D. Cal. Nov. 25, 2024) (quoting *WMTI Prods., Inc. v. Healey*, 2023 WL 5506712 (C.D. Cal. July 13, 2023)) ("A 'selection-and-arrangement theory of copyright infringement [] does not entail filtering out unprotected elements.'"). Dr. BaileyShea, however, filtered out elements he deems unprotectable. Indeed, Dr. BaileyShea "identifies the elements of each work, including the similarities and differences" and then "identifies the similarities that are insignificant ***because they are, e.g., standard musical building blocks, generic, or commonplace***." Opp. at 4:7-13 (emphasis added); *see also* Mot. at 13:17-15:2. As a more concrete example, Dr. BaileyShea's conclusion that the works share a "textbook" "5-10-5-10 pattern" merely illustrates that he applied the wrong test. *See* Opp. at 4:13-15, 6:12-15. Dr. BaileyShea identified a pattern only to dismiss it as commonplace, rather than evaluating the holistic combination of musical and lyrical elements. That is improper. *See Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1225 (9th Cir. 2025) ("While defendants would have us break down the works into pitch sequences, rhythms, and metrical placements and analyze each element alone, doing so would be improper.").

6

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Defendants attempt to sidestep this by accusing Plaintiff of failing to distinguish between protectable and unprotectable elements, but Plaintiff properly identified the selection and arrangements of musical and lyrical material that constitute protectable expression.[4] *See* Opp. at 5:23-27; MSJ Opp. at 5:15-22 & n.4. Defendants, on the other hand, never asserted in their Motion for Summary Judgment that the combination of musical and lyrical elements at issue is unprotectable, *i.e.,* unoriginal. In any event, the issue of protectability is distinct from the issue of substantial similarity. Contrary to Defendants' claims, the decisions in *Gregorini* and *WMTI* stand for the proposition that, when assessing substantial similarity, filtering out unprotectable elements as Dr. BaileyShea did is wholly inapplicable in cases dealing with selection-and-arrangement theories of copyright infringement. *See Gregorini*, 2024 WL 5264949, at *7 ("A 'selection-and-arrangement theory of copyright infringement [] does not entail filtering out unprotected elements.'"); *WMTI*, 2023 WL 5506712, at *6 (same).

Accordingly, Dr. BaileyShea's methodology is not reliable nor helpful in analyzing Plaintiff's selection and arrangement claim.

**B.** **Dr. BaileyShea's Opinion Concerning a Coherent Musical Design Is Equally Improper in Light of His Methodology**

Defendants also claim that Dr. BaileyShea's opinion is admissible because he assessed the sum of the works' similarities in rendering his conclusion that those similarities do not "form a coherent musical design, pattern or synthesis in both works that is not commonplace." Opp. at 6:5-11.

---

[4] In his Affirmative Report, musicologist Anthony Ricigliano made clear that there may be individual elements in *Man* that are commonplace, but the combination of musical and lyrical elements at issue is not. *See, e.g.*, Ricigliano Decl., Ex. B (Ricigliano Rpt.) (ECF No. 108-4) at ¶ 3. Whether elements are "protectable" is a legal question (*see* MSJ Opp. at 5:15-7:5), which is confirmed by the absence of that term from Dr. BaileyShea's Affirmative and Rebuttal Reports.

7

Defendants first point to the fact that Dr. BaileyShea purportedly explained that pitches and chords in both works "combine to form a '5-10-5-10 … pattern," which he then determined was commonplace and implemented in *Flowers* and *Man* in different ways.  Opp. at 6:12-7:6.  However, the 5-10-5-10 pattern that Dr. BaileyShea identifies is only one component of the similarities that *Flowers* and *Man* share, and is not, by itself, the correct focus for determining if the relevant elements at issue cohere.  *See* MSJ Opp. at 3:12-4:5 (identifying musical similarities at issue).  Accordingly, it makes no difference whether that specific pattern is commonplace; the proper inquiry is whether that pattern, combined with the other elements at issue, form a unique and coherent design.  Because Dr. BaileyShea focuses his inquiry on only one component, which he then disregards because he found it to be commonplace, he did not perform the extrinsic test correctly.  *See* Mot. at 13:17-15:2.

Defendants next argue that because Dr. BaileyShea opined that the claimed similarities "do not add up to a coherent pattern or synthesis," he must have performed the correct analysis despite failing to identify prior art (to the extent relevant) that contains all of the claimed similarities.  *See* Opp. at 7:7-15.  According to Defendants, this is because the claimed similarities identified by Plaintiff do not demonstrate a protectable selection and arrangement.  *See id*.  However, Plaintiff thoroughly explained how, for example, Units 1 and 2 of *Flowers*' chorus mirrors Units 1 and 2 of *Man*'s verse (and that is not where the similarities end).  *See, e.g.,* MSJ Opp. at 7:6-13, 8:23-9:25, 13:26-15:22 (explaining why *Man*'s elements form coherent pattern copied in *Flowers*).  It matters that the combination of elements that exist in, by way of example, those specific units is not nearly as similar in any of the prior art.  *See Ambrosetti*, 151 F.4th at 1225 (denying summary judgement in part because defendants failed to identify prior art containing the same combination of elements at issue).  Defendants fail to show how this case should be decided any differently given their concession that no such prior art exists here.  *See* MSJ Opp.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

8

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

at 16:10-13.  In any event, Defendants' concession that Dr. BaileyShea's coherence opinion is directly tied to his fundamentally flawed filtration analysis shows that his opinion is unreliable.  *See, e.g.*, Opp. at 6:12-7:1.

Finally, Defendants' claim that Dr. BaileyShea considered each element at issue, such as *Man*'s Unit 2 bass-line, is directly counter to the expert's own admission.  *See* Opp. at 7:16-25.  In his report, Dr. BaileyShea states outright that he "d[id] not directly address" what he terms as "a number of trivial similarities" between the works, including that "both songs use a bass passing tone when moving between C-major and A-minor chords."  *See* Weingarten Decl., Ex. AAA (BaileyShea Rpt.) (ECF No. 108-55) at 24.  This is improper.  *See* Mot. at 14:23-24.  Those similarities, which occur as part of the coherent pattern at issue, are undoubtedly relevant to Plaintiff's selection-and-arrangement claim.  *See* MSJ Opp. at 3:12-4:5, 8:25-9:12.  Defendants point to Dr. BaileyShea's reference to *Don't Cry* by Guns-N-Roses as involving a "similar" chord progression, the same upward-resolving suspensions E-F and D-E, and a "similar" bass passing tone.  *See* Opp. at 7:18-24.  But Dr. BaileyShea's passing reference is not enough to show he properly analyzed the at-issue bass-line, let alone analyzed it within the full extent of the musical similarities at issue in *Man* and *Flowers*.  *See* Ricigliano Decl. (ECF No. 108-3) at ¶¶ 22-23 (discussing similarities in Units 1-3).  That highlights the problem with the methodology underlying Dr. BaileyShea's opinions.

## IV.   DR. BAILEYSHEA'S FAIR USE OPINIONS SHOULD BE EXCLUDED

Dr. BaileyShea offers improper opinions that Defendants rely heavily on to argue that the first and third fair use factors weigh in their favor.  Specifically, he opines that *Flowers* can reasonably be perceived as commentary on, criticism of, or parody of *Man*, or is otherwise sufficiently transformative so as to justify its copying (collectively, "Fair Use Opinions").  Defendants fail to show these Fair Use Opinions are admissible and cannot do so because: (1) Dr. BaileyShea is not

9

qualified to opine on fair use; (2) his opinions related to fair use were not derived through reliable methodology; and (3) his opinions related to fair use are impermissible legal conclusions that will not assist the Court in deciding whether *Flowers* makes fair use of *Man*.

### A.    Dr. BaileyShea Is Not Qualified to Offer Opinions on Fair Use

Dr. BaileyShea's background is insufficient to qualify him to opine on whether *Flowers* can be perceived as transformative or commentary or parody.

### 1.    Dr. BaileyShea's Fair Use Opinions Are Not Based on Sufficient Qualifications, Nor Are They Helpful to the Court

Defendants argue Dr. BaileyShea is qualified to opine on fair use, but instead merely confirm that his experience is limited to music and cannot be applied broadly to support his conclusions concerning how the works' lyrics should be interpreted or characterized in connection with the fair use inquiry.

Defendants claim that Dr. BaileyShea is qualified to offer opinions regarding *Flowers*' and *Man*'s lyrics, including to the extent their "statement and answer dynamic" suggests that *Flowers* can be perceived as commentary on *Man* given that he is "a scholar of lyrical, musical, and poetic analyses." *See* Opp. at 8:7-21. However, nothing in Dr. BaileyShea's music-focused background, including his claimed experience analyzing texts and song lyrics, demonstrates that he is an expert on the relevant topic – whether a song can be perceived as commentary or parody in the context of the legal fair use inquiry. *See* Mot. at 6:21-9:9. Because Dr. BaileyShea admits he lacks the relevant education and experience in fair use (*see* Mot. at 1:17-2:11) – and has demonstrated that he also lacks basic knowledge or skill in such matters (*see id.* at 2:6-8) – he cannot opine on the topic by offering conclusions about *Flowers* as commentary, parody, or transformative, all of which necessarily entail applying legal definitions and reaching legal conclusions. *See infra* § IV.B.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

10

Furthermore, Dr. BaileyShea's meager discussion of the musical elements that supposedly support his Fair Use Opinions do not make his opinions on fair use helpful or relevant. *See* Opp. at 8:27-9:13. As an initial matter, Dr. BaileyShea does not elaborate on the specific musical aspects that supposedly support his fair use findings other than to say, in barely two paragraphs in his 31-page Affirmative Report, that *Man* "has a one-bar *extension* of the concluding section" which allegedly "adds to the sense of longing and regret," whereas *Flowers* "compress[es] the final section by two bars" in a supposed gesture of dismissal. *See* Weingarten Decl., Ex. AAA at 26. In any event, Plaintiff does not dispute that a musicologist can identify musical aspects of works and whether two works share those elements. But, Dr. BaileyShea's opinion that the music of *Flowers* lends to its perception as commentary or transforms *Man* goes beyond these permissible bounds because it relies on him categorizing musical elements as conveying particular emotions and messages. *See id.*; *see also* Mot. at 3:20-4:4, 12:6-13:16. This falls far outside his musical expertise and cannot be substantiated by the amorphous "background in musical and lyrical analysis" he may possess. *See* Opp. at 9:17-19; *see also United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (finding error in court's decision to permit expert to testify where "he failed to link his general expertise with his [] conclusion"). And, it is not the proper subject of expert testimony, as determining whether the music in a song conveys an emotion or message is not subject matter "beyond the common knowledge of the average layman."[5] *See United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) (explaining Rule 702 requires, *inter alia*, that "the subject matter at issue must be beyond the common knowledge of the average layman").

---

[5] Assuming, *arguendo*, that Dr. BaileyShea is qualified to opine on how musical elements contribute to finding a song is commentary, that same knowledge does not automatically qualify him to render an opinion that *Flowers*' lyrics also suggest it is commentary.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Defendants also claim Dr. BaileyShea's "background in musical and lyrical analysis" qualifies him to offer Fair Use Opinions related to *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994). *See* Opp. at 9:14-10:9. But again, Dr. BaileyShea's opinions transcend far beyond the realm of his expertise. While Dr. BaileyShea's music experience may reasonably qualify him to calculate the amount of overlap in musical elements between the works, that same experience has absolutely no relation to his conclusion that *Flowers* takes "no[] more than reasonably necessary" from *Man* to permit it to be interpreted as commentary. *See* Mot. at 4:6-11. It is also worth noting that Defendants completely ignore the relevant authorities in the Motion showing this topic is improper for expert opinion. *See* Mot. at 12:23-13:16; *see also Fisher v. Dees*, 794 F.2d 432, 438 n.4 (9th Cir. 1986) (rejecting fact and expert witness statements as to amount of work needed to conjure up original as "irrelevant" because "it is a question of law whether the taking is excessive under the circumstance"); *Roberts v. Gordy*, 2015 WL 11202356, at *4 & n.13 (S.D. Fla. Sept. 17, 2015) (citing *id.*) (finding opinion offered by Dr. Ferrara that allegedly infringing song incorporated enough "to conjure up" original but that copying was "far from excessive" was "outside the purview of expert opinion" under *Fisher*).

Finally, Defendants attempt to defend Dr. BaileyShea's conclusion that *Flowers* is transformative by characterizing his purported review of material shared by the songs in *Campbell* as "a brief musicological analysis [of the songs in *Campbell*]." Opp. at 10:4-9. However, as explained in the Motion, Dr. BaileyShea's comparison to *Campbell* is merely a poorly disguised and decidedly unqualified attempt at legal analysis. *See* Mot. at 12:6-22. Given his express admission that he is not a legal expert, there is no basis to find Dr. BaileyShea qualified to render this opinion. *See id.* at 7:20-8:7 (citing record of Dr. BaileyShea admitting he lacks legal expertise and can only point to *Campbell* for his knowledge of relevant legal inquiries when finding a song is transformative).

12

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Given these shortcomings, it cannot be said that Dr. BaileyShea's opinions are helpful to the Court. Indeed, Defendants concede that "the Court can (and should) determine, without the aid of expert testimony, that *Flowers*' lyrics can be reasonably perceived as commentary on *Man*." *See* Opp. at 1:21-25. If the Court can make this determination unaided, Dr. BaileyShea's opinions are, at best, unhelpful and, at worst, an impermissible attempt to usurp the Court's role. *See* Mot. at 6:23-7:7.

### 2.     Dr. BaileyShea's Opinions Are Informed By Subjective Understandings That He Misapplies

Defendants also take the contrary position that Dr. BaileyShea's opinion as to whether *Flowers* can be perceived as transformative or as commentary or parody is proper because it comports with the legal definition of those terms but at the same time does not overstep his qualifications or role because he is not making a legal conclusion. *See* Opp. at 10:12-12:14. Defendants' argument fails.

As an initial matter, Dr. BaileyShea's understanding of the relevant subjects do not comport with principles of fair use. As to commentary, Dr. BaileyShea would not commit to or provide more than "a fairly loose definition" of commentary, let alone name a single example of a song that served as commentary on another work. *See* Mot. at 8:13-20. But even more crucially, and in direct contradiction to Defendants' claim, Dr. BaileyShea's conclusion that *Flowers* is commentary is based at least in part on observations that have nothing to do with what *Flowers* is saying ***about*** *Man*. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 540, (2023) (quoting *Campbell* for the proposition that commentary "'conjures up' the original work to 'she[d] light' on the work itself, not just the subject of the work"). While Dr. BaileyShea believes it is enough for a song to constitute commentary if it "affect[s] the way we think of another" (Mot. at 8:13-20), the actual standard requires more. Indeed, anything could affect how one perceives a work of art, but only art that says something about that work specifically,

13

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

rather than just about its general subject, can be said to be commentary in the fair use context. Against this backdrop, Dr. BaileyShea's interpretation of *Flowers* as, for instance, a "song of female empowerment" that asserts "self-assurance, independence, and self-love" shows that his understanding of commentary does not comport with the relevant legal inquiry. Mot. at 3:23-4:4. Dr. BaileyShea's incorrect understanding of the impact of the songwriters' intentions further underscores that conclusion. *See* Mot. at 9 n.6.

On transformative use, Defendants incorrectly argue that Dr. BaileyShea's use of the term comports with the fair use statute "because that term encompasses works that comment on or criticize another work." Opp. at 11:10-19. At base, Dr. BaileyShea's understanding of whether a work is transformative fails because it is based on his faulty understanding of commentary. Furthermore, as explained in the Motion, Dr. BaileyShea clearly uses the term "transformative" incorrectly on its face. Indeed, he testified that he defines "transform" as involving "kind of altering or changing something," which more aptly describes a derivative work rather than a work protected by fair use. *See* Mot. at 8:25-9:9. He also claims *Flowers* is transformative because it "gives new meaning, new expression, and a new message to [*Man*]" (Mot. at 3:23-4:4 (citing Dr. BaileyShea's testimony)) – an obvious attempt to give his words legal significance – even though the Supreme Court has cautioned that such findings are not enough for a finding of transformative use (*id.* at 9 n.5) (citing *Warhol* for the proposition that the fair use statute cannot be read to weigh in favor of "any use that adds some new expression, meaning, or message"). Regardless, whether any new meaning, expression, or message to *Man* exists is not the proper subject of expert testimony. *See* Mot. at 6:23-7:7, 12:6-13:16. Indeed, nothing in *Campbell* or *Warhol* suggests expert testimony is necessary or even relevant to the finding.

As to parody, Defendants claim that Dr. BaileyShea's opinion is admissible because the meaning of parody is irrelevant. *See* Opp. at 11:20-12:14. According

14

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

to Defendants, what matters is "whether a work, parody or not, uses some elements of a prior author's composition to create a new one that, at least in part, comments on the original work." Opp. at 11:22-25 (citing *Campbell*) (internal quotations omitted). Even if that is true, it does not solve the problem. *See* Mot. at 7:8-9:9. As noted above, Dr. BaileyShea is not qualified to opine on what constitutes commentary in a legal or non-legal sense, nor does his understanding of it comport with the legal definition. Defendants also attempt to minimize Dr. BaileyShea's discussion of parody specifically by stating that he only addressed whether *Flowers* was parody of *Man* "in just a single sentence of his sixty-four page Report." *See* Opp. at 12:6-12. This makes no difference. It is another opinion of Dr. BaileyShea's that highlights the improper nature of his expert testimony.

**B. Dr. BaileyShea's Opinions Should Be Excluded Because They Are Impermissible Legal Conclusions**

Defendants claim Dr. BaileyShea's Fair Use Opinions are not impermissible legal conclusions because, rather than opining on the definition of commentary, parody, or transformative use, Dr. BaileyShea instead "is conducting a musicological analysis of *Flowers* and determining that it can fairly be understood as commenting on *Man*." *See* Opp. at 12:16-13:13 (citing Fed. R. Evid. 704(a)). At base, Defendants fail to show how Dr. BaileyShea's methodology related to his Fair Use Opinions constitutes a musicological analysis (*see infra* § IV.C). Moreover, as explained in the Motion, whether a work is commentary, parody, transformative, or takes more than necessary from an original source are all issues of law to be decided by the Court. *See* Mot. at 12:6-13:16. Accordingly, by purporting to assess whether *Flowers* can be fairly characterized as commentary, parody, or transformative, Dr. BaileyShea inherently performs legal analyses and offers legal conclusions. *See id.* If, as Defendants seem to suggest, Dr. BaileyShea performed some other type of assessment, it is unclear how that is at all relevant to the issues before this Court.

15

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Similarly, Defendants suggest that Rule 704(a) does not prohibit Dr. BaileyShea's testimony because it permits an expert to embrace "the ultimate issue," which they claim he does in using terms like commentary, parody, or transformative use. *See* Opp. at 12:25-26. However, while Rule 704(a) may permit expert opinions embracing ultimate issues *of fact*, it does not make it permissible for an expert to offer "an opinion on an ultimate issue *of law*," which is categorically a "legal conclusion" and therefore improper as the subject for expert testimony at the summary judgment stage.[6] *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)) (emphasis added) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue *of law*."). By opining that *Flowers* is commentary, parody, or transforms *Man*, Dr. BaileyShea purports to decide the ultimate issue of law, and his opinions should be excluded on that basis. Because it is the Court, not any witness, who ultimately decides these issues, Dr. BaileyShea's testimony should be excluded.

### C. Dr. BaileyShea's Fair Use Opinions Are Not Based on a Reliable Methodology

Defendants claim the methodology Dr. BaileyShea used to reach his Fair Use Opinions is sound. *See* Opp. at 13:15-19. None of Defendants' arguments – or their irrelevant comparisons of Dr. BaileyShea's methodology to the methods applied by Plaintiff's lyrical expert, Jeff Rovin – help them meet their burden to establish that

---

[6] The case Defendants cite – *United States v. Johnson* – is distinguishable. 637 F.2d 1224 (9th Cir. 1980). In *Johnson*, the treating physician was allowed to give his expert opinion that an individual had suffered "serious bodily injury" – a legal term. *See id.* at 1247. There, the doctor rendering his opinion was qualified to do so and made it clear his opinion was "based on facts which were consistent with the legal definition." *Id.* Notably, "seriously bodily injury" was also deemed "readily understandable to the average layperson." *Id.* That is clearly not the case here where there is a disagreement as to what the relevant terms entail.

16

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

Dr. BaileyShea used reliable methods to conclude that *Flowers* makes fair use of *Man*'s music and lyrics. *See* Mot. at 9:12-11:18.

Defendants argue that Dr. BaileyShea's methodology did not merely entail him making up and applying his own definitions of commentary and parody because his analysis "involves only the objective words and music of the two songs and a commonsense understanding of the word 'commentary' that comports with the fair use test." *See* Opp. at 13:21-24. But whether Defendants call something a "commonsense understanding" or a "definition," "commentary" has to have *some* meaning that sets a standard under which Dr. BaileyShea analyzed *Flowers* and decided the term applies. As outlined herein, Dr. BaileyShea's definitions of commentary, parody, and transformative use that Dr. BaileyShea applied ***do not*** comport with the fair use test. *See supra* § IV.A.2. Thus, Defendants cannot differentiate Dr. BaileyShea's opinion from Mr. Rovin's on the basis that Dr. BaileyShea's "commonsense understanding" "comports with the fair use test" (Opp. at 13:21-24), whereas Mr. Rovin "invent[ed] a definition of commentary that has nothing to do with the fair use standard" (*see id.* at 1:28-2:2). Unlike Dr. BaileyShea's definitions, Mr. Rovin's "understanding" of commentary aligns with relevant legal authority and is backed up by his robust experience. *See* Rovin Mot. Opp. (ECF No. 109) at 12:3-15:13, 15:23-18:23.

Defendants also contend that Dr. BaileyShea's interpretation of the works' lyrics is not "subjective" because it was "based on the objective and undisputed elements of the songs' lyrics and music." Opp. at 14:4-16. Obviously the lyrics of the songs are what they are. The dispute here is about whether Dr. BaileyShea properly applied reliable methods when analyzing those lyrics. *See* Fed. R. Evid. 702. Here, the method of interpretation that Defendants suggest Dr. BaileyShea utilized does not meet *Daubert*'s standards. A listener's interpretation of song lyrics inherently requires them to draw from their own intuition and subjective impressions about a song's meaning. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

17

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

590 (1993) (explaining Rule 702 requires "more than subjective belief or unsupported speculation"); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) ("Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs."). Dr. BaileyShea's opinions necessarily rest on subjective beliefs when they are based on his having listened to the songs and deciding what the songs mean without citing any qualifications to suggest he has more or better insight than the average listener. While Defendants may make the conclusory claim that Dr. Ferrara's failure to find that *Flowers* can be construed as a parody of *Man* "does not make Prof. BaileyShea's opinions any less objective" (Opp. at 14 n.3), it in fact proves Plaintiff's point. Dr. Ferrara listened to the songs and reached a different conclusion based on his subjective understanding.

Again, Defendants try to compare Dr. BaileyShea's analysis to that of Mr. Rovin, claiming that Mr. Rovin's analysis is flawed because he "makes sweeping claims about the works' elements in their entireties without conducting the objective analysis required to support those claims." Opp. at 14:19-23. Defendants' contention ignores that Mr. Rovin's analysis is identical to Dr. BaileyShea's to the extent both experts based their opinions on the same "objective and undisputed elements" – the songs' lyrics. *Id.* at 14:6-7; *see also* Rovin Mot. Opp. at 2:23:4:13, 6:20-9:28. Accordingly, Defendants' arguments in favor of admitting Dr. BaileyShea's opinion directly conflict with their own contentions that Mr. Rovin's opinions should be excluded on the same basis. *See, e.g.*, Rovin Mot. (ECF No. 101-1) at 6:22-8:11. Any music background that Dr. BaileyShea offers does not apply to each of his commentary opinions, and therefore is not a sufficient basis on which Defendants can reasonably explain why the same analysis would warrant exclusion of one expert but not the other.

Knowing that "critical listening" and forming a subjective opinion does not equate to a reliable methodology on which to base Dr. BaileyShea's Fair Use

18

Opinions, Defendants argue that it is no different from what Plaintiff's expert musicologist did. *See* Opp. at 13:27-14:3. However, the subject matter of the opinions are obviously different. A musicologist applying a comparative musicological analysis employs critical listening among other methods, based on specific qualifications, to provide an opinion on a subject that is not readily understandable by the average layperson. That is not the case here, where the opinions at issue are based on what readily understandable words in song lyrics mean. To the extent Dr. BaileyShea offered a couple of additional sentences suggesting that the music of the works contributes to his findings, that cannot salvage his Fair Use Opinions largely based on his pages of explanations of his claimed understanding of the lyrics on their face.

Finally, Defendants rely on entirely new evidence involving a discussion for the first time of the supposedly "widely accepted principles of 'text painting' or 'word painting'" to claim that Dr. BaileyShea based his findings on objective principles. Opp. at 14:23-15:4. This argument is both untimely[7] and meritless. According to Dr. BaileyShea, text painting is a musicological concept describing how composers use music to illustrate lyrics. *See* BaileyShea Reply Decl. (ECF No. 122-5) at ¶¶ 4–5. Even assuming that is true, Dr. BaileyShea's understanding of text painting does not salvage his opinions based on the lyrics and therefore cannot possibly be characterized as a legitimate basis for his Fair Use Opinions. Furthermore, there is a difference between finding that ascending pitches on the word "flowers" exist (a musicological observation) and opining that this means *Flowers* can be perceived as commentary on *Man* (a poorly disguised legal conclusion), or that it means that *Man* is about regret whereas *Flowers* is about hope

---

[7] See Plaintiff's concurrently filed evidentiary objections to Dr. BaileyShea's new declaration, which explains that this discussion of entirely new evidence (including a brand new exhibit consisting of a dictionary definition) supposedly underlying his opinion has never before been raised.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

19

(a subjective view). *See* Opp. at 9:2-7. The Court should not allow improper expert opinions by Dr. BaileyShea outside of the musicological realm because Defendants have a burden under Rule 702 to "establish that reliable principles and ***methods underlie the particular conclusions offered***." *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002) (emphasis added).

## V. <u>DR. BAILEYSHEA IS CUMULATIVE OF DR. FERRARA</u>

Instead of addressing the clear and admitted overlap between the opinions offered by their two musicologist experts, Defendants argue that Dr. BaileyShea's opinions should not be excluded as cumulative because: (a) Federal Rule of Evidence 403 "serves no purpose at summary judgment"; (b) Dr. BaileyShea has specialized lyrical expertise and performed different analyses; and (c) the experts' opinions are different. *See* Opp. at 15:10-16:25. None are persuasive.

First, Defendants claim that Plaintiff's objection to Dr. BaileyShea's testimony as cumulative under Federal Rule of Evidence 403 is inapplicable at the summary judgment stage. *See* Opp. at 15:10-20. However, Defendants' Rule 403 challenge does not affect the fact that Rule 702 independently permits the Court to exclude unreliable expert testimony, which includes expert testimony that relies primarily on another expert's opinion. *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012) ("An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions."). Moreover, Plaintiff's Motion is not limited to requesting exclusion of Dr. BaileyShea only on consideration of Defendants' motion for summary judgment, but also seeks his exclusion at trial in this matter. *See generally* Mot. Furthermore, the Court has discretion to exclude irrelevant or inadmissible evidence at any stage of the proceedings. *See Cholakyan*, 281 F.R.D. at 543 (noting court's "broad discretion" to exclude experts); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can consider only admissible evidence in ruling on a motion for summary judgment."). This is especially true where, as here, a party uses as

20

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

expert as merely a vehicle to amplify the opinions and testimony of another in order to create an illusion of independent corroboration and consensus. The Court should not permit this bootstrapping at any stage of these proceedings, and accordingly should disqualify Dr. BaileyShea.

Second, Dr. Ferrara's and Dr. BaileyShea's opinions are duplicative regardless of whether Dr. BaileyShea has a different "professional perspective" or offers specialized expertise in "song lyrics" compared to Dr. Ferrara. *See* Opp. at 15:21-16:11; *cf. Tompkins v. Medtronic, Inc.*, 1994 WL 41071, *4 (9th Cir. Feb. 10, 1994) (concluding district court did not abuse discretion in excluding introduction of forensic pathologist's testimony as cumulative of general surgeon's testimony). Defendants all but admit the direct overlap of their experts' fair use opinions by conceding that only one expert performed a "comprehensive" analysis of commentary, whereas the other expert merely "agrees with" that "analysis and conclusions." Opp. at 16:7-11; *see also id.* at 18:24 (claiming Dr. BaileyShea's music analysis merely "complements" Dr. Ferrara's "thorough[]" analysis). To that end, Defendants try to distinguish the experts' qualifications when it comes to music and lyrics, describing Dr. BaileyShea as having further experience in song lyric analysis. *See* Opp. at 16:1-3. Plaintiff does not dispute that Dr. BaileyShea has certain experience analyzing song lyrics, but deciding what they mean and trying to applying them to legal terms is in no way supported by that experience.

Third, Defendants claim "there are significant differences between Dr. Ferrara's and Prof. BaileyShea's analyses." Opp. at 16:12-25. But that is directly contradicted by Dr. BaileyShea's own testimony, which confirms the two performed identical analyses. *See* Mot. at 16:1-17:28. For example, Defendants point to Dr. BaileyShea's explanation relating to the works' "5-10-5-10" pattern as one of the "significant differences" between the experts' analyses. *See* Opp. at 16:18-24. But, Dr. BaileyShea himself has made clear that "Dr. Ferrara's Report draws out the same similarity using different labels." *See* Weingarten Decl., Ex. AAA at 19. Minor

21

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

differences in the terminology the experts used to express their opinions concerning those analyses cannot, as Defendants suggest, overcome the cumulative and prejudicial nature of their duplicative opinions.  Accordingly, Dr. BaileyShea's cumulative and duplicative opinions should be set aside.

## VI.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff Tempo's Motion and preclude Defendants from relying on the testimony and reports of their designated expert, Dr. Matthew BaileyShea, at summary judgment or at trial.

Dated: May 5, 2026

**WILLKIE FARR & GALLAGHER LLP**

By:      */s/ Alex M. Weingarten*
Alex M. Weingarten
Jeffrey K. Logan
Amy M. Stern

*Attorneys for Plaintiff*
Tempo Secured Music Rights Collateral, LLC

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

22

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this Memorandum contains 6,978 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 5, 2026                    /s/ Alex M. Weingarten
                                      Alex M. Weingarten

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

23