# Exhibit EEE

UNITED STATES DISTRICT COURT

FOR THE

CENTRAL DISTRICT OF CALIFORNIA

TEMPO SECURED MUSIC RIGHTS )
COLLATERAL, LLC, )
)
)
PLAINTIFF, )
)
)
vs. ) CASE NO.
) 2:24-CV-07910-MRA-BFM
)
)
MILEY CYRUS, ETC., ET AL. )
)
)
)
DEFENDANTS. )
_____)

2nd CORRECTED TRANSCRIPT

ZOOM VIDEOTAPED DEPOSITION OF

EXPERT JEFF ROVIN

FRIDAY, JANUARY 9, 2026

JOB NO:  7798446

REPORTER: JESSICA N. NAVARRO, C.S.R. NO. 13512

Page 1

ZOOM VIDEOTAPED DEPOSITION OF EXPERT JEFF ROVIN

TAKEN ON BEHALF OF DEFENDANTS AT 12:30 P.M., ON

FRIDAY, JANUARY 9, 2026, IN GILFORD, CONNECTICUT,

BEFORE JESSICA N. NAVARRO, C.S.R. NO. 13512,

PURSUANT TO NOTICE.

APPEARANCES OF COUNSEL

FOR PLAINTIFF:

        WILLKIE FARR &  GALLAGHER, LLP

        BY AMY STERN, ATTORNEY AT LAW

        2029 CENTURY PARK EAST

        LOS ANGELES, CALIFORNIA

        310.855.3181

        ASTERN@WILLKIE.COM

FOR DEFENDANTS:

        DAVIS WRIGHT TREMAINE, LLP

        BY ERIC LAMM, ATTORNEY AT LAW

          ALEX CADENA, ATTORNEY AT LAW

        350 SOUTH GRAND AVENUE, FLOOR 27

        LOS ANGELES, CALIFORNIA 90071

        213.633.6800

        ERICLAMM@DWT.COM

ALSO PRESENT:

        SCOTT SLATER, VIDEOGRAPHER

Page 2

A    Yes.                                                     10:58

Q    What is the filtration that you're referring to there?

A    Making sure that I do not consider something that no one can own, that nobody can claim    10:59
is unique.

Q    And one element that you've identified there in your report is unprotectable ideas; correct?

A    Correct.                                                 10:59

Q    Did you evaluate whether there are other elements that no one can own in applying the extrinsic test?

MS. STERN:  Objection; vague and ambiguous.                                                  10:59

THE WITNESS:  Again, once you remove the unprotectable ideas, you look at everything that's left, everything, and do the comparison based on that.

BY MR. LAMM:                                                  10:59

Q    And you testified that you're looking for unique expression; correct?

A    Sorry, that I was looking through what?

Q    I believe you testified you were looking for unique expression, that was the term you used?    11:00

Page 54

A    Yes.    11:00

Q    Is it your opinion that after filtering out unprotectable ideas what remains is unique expression?

A    Unique expression takes many forms.  And    11:00 so you would have to continue to apply contextual, a contextual eye to the material to make sure that what is left is indeed uniquely expressive.

Q    How do you determine whether it's unique?

A    Again, it varies from work to work.  But    11:01 it could be as simple as a combination of words.  It could be as simple as a combination of words and other combination of words.  It varies.  That's why no two matters are the same.

Q    Is there any standard that you apply in    11:01 determining whether any particular expression is unique?

A    Sure.  That's where you use prior art and due diligence to see if it has or has not appeared before in a certain way.    11:01

Q    You also refer to "Flowers" as a derivative work.  This is on page 11, the second bullet.  Do you see that?

A    I see it.

Q    Are you aware that a derivative work, that    11:03

Page 55

term is a term of art in copyright law?                    11:03

    A    If it is, that's not how I intended it.

    Q    How did you intend it?

    A    As just those words, a derivative work.
It is work derived from something else.                    11:03

    Q    Page ten you refer to striking
similarities between the songs.   That's the first
bullet.   Do you see that?

    A    Yes.

    Q    Are you aware that striking similarity is    11:03
a term of art in copyright law?

    A    I did think about that too late.   And I
apologize, I would not have used striking.

    Q    Are you aware of what striking similarity
means in copyright law?                    11:03

    A    Yes.

    Q    Is it your testimony that these
similarities are not sufficient to make the standard
for striking similarity?

    MS. STERN:   Objection to the extent it    11:04
calls for a legal conclusion.

    THE WITNESS:   I was not making that point
there.   That would be a separate conversation.

BY MR. LAMM:

    Q    Are you offering that opinion in this    11:04

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

report?                                                          11:04

        A    I'm offering an opinion on substantial

similarity only.

        Q    Page 11 now, the first bullet point.  You

say Dr. BaileyShea's and -- I'm sorry,                           11:04

"Dr. BaileyShea and Dr. Ferrara's apparent reliance

on one another's reports is prejudicial."

            Do you see that?

        A    Yes.

        Q    My question is prejudicial to whom?         11:04

        A    Prejudicial to the plaintiff.

        Q    And why is that prejudicial to the

plaintiff in your opinion?

            MS. STERN:   Objection to the extent it

calls for a legal conclusion.                                   11:05

            THE WITNESS:   It seems to me that with man

of such repute one would have hoped for a different

perspective from each.   These seem to be simply

repetitive as I recall.

BY MR. LAMM:                                                    11:05

        Q    Were you provided any information on how

Dr. Ferrara prepared his report?

        A    Not that I recall, no.

        Q    Were you provided any information on how

Dr. BaileyShea prepared his report?                             11:06

Page 57

A    No.   Only what is written in the reports themselves.    11:06

Q    Are you offering an opinion as to whether the plaintiff can meet some legal standard of prejudice that is caused by these reports?    11:06

MS. STERN:   Objection --

THE WITNESS:   I'm not.

MS. STERN:   -- outside the scope of his opinion.

THE WITNESS:   Yeah.   No, I'm not.    11:06

BY MR. LAMM:

Q    Thank you.   You say that Dr. Ferrara has limited personal knowledge of what constitutes criticism or commentary.

A    As far as I can tell, yes.    11:07

Q    I'm sorry, there was no pending question.

Have you interviewed Dr. Ferrara about his personal knowledge about commentary or criticism?

A    No, I was relying on the material contained within the reports.    11:07

Q    So you don't know what his personal knowledge is regarding criticism or commentary; isn't that correct?

A    Correct.

Q    And the same is true of Dr. BaileyShea?    11:07

Page 58

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

A    It is.                                          11:08

Q    All right.  In your report on page 22 these are the lyrics of "When I Was Your Man" do you see that?

A    Yes.                                           11:08

Q    And you say here that you used the version furnished in the BaileyShea report.  Do you disagree with any of the lyrics as they're transcribed there?

A    I don't.  But I wanted to make sure, in any case as I say here, that we were working from    11:08 the same lyrics and punctuation.

Q    Did you make any changes to the lyrics that you copied from Dr. BaileyShea's report?

A    Not that I'm aware of.  Certainly not intentionally.                                     11:09

Q    So there's no changes in terms of punctuation?

A    Not that I'm aware of.

Q    Do you disagree with anything that -- sorry.                                             11:09

Do you disagree with anything in the way that lyrics of "Flowers" are transcribed?

A    Same answer.

MS. STERN:  Objection --

THE WITNESS:  Sorry.                               11:09

Page 59

term mean?                                                    11:59

A    I believe that was his phrase and not mine.

Q    And when you're saying he ignores the way syllables are an essential lyrical building block?    11:59

A    Okay.  It was still his phrase, but I have to think about that.  It's simply as stated.

If you -- if you assume that a lyrical building block is how lyrics are constructed, then syllables certainly are an essential part of that.    12:00

Q    Do you believe that having 13 syllables in some lines of your song is a unique element of the songs?

A    No.

Q    We discussed prior art.  In your report    12:00 you refer to -- well, let me start over.

Page 18.  Can we look at page 18?

A    Okay.

Q    Here you're referring to songs that do not have the elements that you found to be similar in    12:01 "When I Was Your Man" and "Flowers."  Do you agree with that?

A    That do not have the similarity with "Flowers" and "When I Was Your Man," yes.

Q    In other words, they're different from the    12:01

Page 86

songs at issue?                                           12:01

        A    In terms of linear time narratives.

        Q    Do you consider this to be prior art as you understand that term?

        A    Yes.                                          12:01

        Q    And just because my question was a little vague.  I mean, the songs you identified on page 18, you consider those to be examples of prior art?

        A    Yes.

        Q    Is that correct?                              12:01

        A    Yes.

        Q    Why in your opinion are songs that do not have the similarities at issue, why are those relevant?

        A    Because it illustrates the multitude of      12:02 ways in which a breakup song can be told in terms of sequence of events and time, linear time or not, flashbacks.

        Q    Did you research prior art in this case that does contain the similarities that you put at      12:02 issue between "When I Was Your Man" and "Flowers"?

        A    Yes.  And I would point out that growing up in the '50s and '60s these songs were ever present and become part of your DNA.

        Q    By saying "these songs," are you referring   12:03

Page 87

to the breakup songs?                                    12:03

A    Absolutely.  Breakup songs and everything

else that was on the radio.

Q    I'm not sure I understand your -- what you

mean.                                                    12:03

A    You asked about research and I'm merely

stating that whether, whether they were sought out

or simply a part of the Zeitgeist, they were around.

I was aware of them.

Q    Do you include songs that were part of the    12:03

Zeitgeist in your research in answering that

question?

A    Yes, I did.

Q    Okay.  In the time you spent preparing

this report, did you search for other songs that        12:03

contained similarities, the similarities you put at

issue in this case?

A    I did not specifically search them out

because that was not a tool I felt I needed.

Q    Page 13 of your report.  You're quoting       12:04

here three lines from "When I Was Your Man" starting

with "That I should have bought you flowers."  Do

you see that?

A    Yes.

Q    And right above it you say "When I Was        12:04

Page 88

Your Man" strings together individual unprotectable    12:04

common nouns to form a protectable unique

expression.  Do you see that?

A    Yes.

Q    Are you referring to these three lines?    12:05

A    Yes.

Q    So is it your opinion that these three

lines form protectable expression?

A    Well, yes, of course they do.

Q    And on what facts do you base that    12:05

opinion?

A    First of all, the three lines taken in

their totality are protectable.  And the point of

bringing them to the fore is the use obviously of

flowers, hand, and hours.  The conjunction of those    12:05

words in proximity is part of protectable

expression.

Q    Why do you find that the -- well, okay,

let me ask this: Flowers, hand, and hours you're

saying it is significant that they're close    12:06

together?  Is that what you're saying?

A    Approximate and rhyming.

Q    And is that in your opinion what makes

it -- what makes these lines protectable expression?

A    The entirety of the lines are protectable    12:06

Page 89

expression and these are part of that.  And as such,          12:06

they're emblematic of "When I Was Your Man".

Q    Are there any other facts on which you

base your opinion that these lines constitute

protectable expression?                                       12:07

A    Three lines of music would be pretty much

the very definition of protectable expression.

Q    I'm asking you these lyrics.  So is there

any other aspect of these lyrics that in your

opinion show that these are -- these three lines of           12:07

lyrics are protectable expression?

A    I'm not clear on what other aspects are

needed.

Q    Sure.  Is that a no?  As you sit here

there are no other aspects that you identify?                 12:07

A    They're part of a breakup song.  It

depends on whether we want to do a larger pullout or

not.  I excerpted those, but they are part of a

breakup song.

Q    You use the term proximate just below it.          12:07

Do you see that?

A    Yeah, uh-huh.

Q    And there are you referring to the fact

that they're nearby?

A    Yes.                                                     12:08

Page 90

Q    Okay.  And the relevant material you're saying is flowers, hours, and hand?                    12:08

A    I'm pointing out hand here.  But, yes, it shows up in the next page.

Q    Those three words are used in a different order in the two songs; correct?                    12:09

A    That's correct.

Q    You say -- this is now page 12.

A    Okay.

Q    This is the second sentence.  You say    12:09
"That Miley Cyrus has given the Bruno Mars song a through-the-looking-glass flip."

     Do you see that?

A    Yes.

Q    Through the looking glass is a Lewis    12:09
Carroll reference; right?

A    Correct.

Q    What do you mean by that reference here?

A    I mean that it is a -- there's distaff version, a mirror image.                    12:09

Q    I'm sorry, what was the first word you used?

A    Distaff.  Distaff version.

Q    D-I-S-T-A-F-F?

A    That's right.                    12:10

Page 91

Q    Okay.  Let's look at the character               12:10
section.  And do you believe it's a significant
similarity that in both songs the characters are
nameless?

A    I was getting to the page, both characters       12:10
are what?

Q    Nameless.  In other words, we don't know
the name of the characters.

A    Yeah, I think that's significant.

Q    Under the extrinsic test?                        12:11

A    Yes.

Q    Is it commonplace for breakup songs to
include characters that we don't know the names of?

A    Couldn't tell you.

Q    In "When I Was Your Man" now, you say that       12:11
the male protagonist is looking back at a
relationship that was good.  What lyrics support
that reading that the relationship was good?

A    Well, I'd have to look at the lyrics.  As
I recall, the fact that they were together and        12:11
things were working out and they were in the same
bed.  You have the lyric page number?

Q    Yeah, I think it's 22.

A    Okay.  It was good, it was -- they were
together long enough to have a song, to have mutual   12:12

Page 92

protagonist in "Flowers" admitting about flowers?      03:37

A    That she can buy them for herself because clearly they were not furnished in a way or abundance that she would have liked.

Q    And that's an admission in your opinion?      03:37

A    That they were missing from the relationship, yes.

Q    You also refer -- you point out both songs use the lyric mm.  For the court reporter, we talked about this on Wednesday, but I believe, maybe you      03:37 don't remember it's MM.

Do you see that?

A    Yeah.

Q    Okay.  In "When I Was Your Man" every pre-chorus includes the lyrics, it all just sounds      03:38 like ooh, ooh, ooh, mm, too young, too dumb to realize.  Do you agree?

A    Yes.

Q    And the lyric mm and that occurs in the middle of the pre-choruses; correct?      03:38

A    Correct.

Q    In "Flowers" the lyric mm occurs leading into the pre-choruses, do you agree?

A    Correct.

Q    And the pre-chorus lyrics are "I didn't      03:38

Page 166

want to leave you, I didn't want to lie, started to    03:39
cry, but then remembered I"?

A    Correct.

Q    So on page 37 you say "The protagonists
sing mm in the pre-chorus leading their way into the    03:39
chorus, both immediately before a major admission
about flowers."  But in the song "Flowers" the lyric
mm is an entire section before the admission of
about flowers that you're referring to; is that
correct?    03:39

A    That's correct.  Still before, but it's
correct.

Q    And you're referring to that as
immediately before?

A    Before enough.  There's not a lot of room    03:39
in these lyrics.

Q    Do you agree that they occurred in
different points in the pre-chorus, the lyric mm
occurs at different points in the -- a different
point in the pre-chorus of "Flowers" than it does in    03:40
the pre-chorus of "When I Was Your Man"?

A    Absolutely.

Q    You say both songs -- okay, this is on
page 37.  You say "And both songs feature an
identical transition leading to chorus three."    03:41

Page 167

Do you see that?                                    03:41

A    Yes.

Q    Are you offering an opinion as to what constitutes a transition into chorus three in these songs?                                    03:41

A    No.

Q    How do you define the phrase transitioning into chorus three here?

A    It's before chorus three and there are words that lead into it.                        03:41

Q    Okay.  So here at the bottom of page 37 you've quoted a portion of "When I Was Your Man"; correct?

A    Yes.

Q    And what about that is identical to                03:42 something that happens in "Flowers"?

A    Except for the fact that this has one fewer oh in "Flowers" it's the same interjection exclamation as is mm.

Q    I'm sorry, I'm not following.  Are you            03:42 referring to -- you're referring to ooh in -- on the next page, the quoted language?

A    Right.  I'm saying that where it says "Flowers" -- sorry, "When I Was Your Man" the bridge, oh, and then jump down one, two, three lines    03:43

Page 168

to flowers.                                              03:43

          And you have in "Flowers" oh, jump down
one, two, three lines to flowers.  That was the
transition I was talking about.

     Q    Okay.  In this quoted passage on page 38      03:43
this is pre-chorus two of "Flowers".

     A    Okay.

     Q    And at the top you say "Both songs feature
identical transition leading to chorus three."

          Do you see that?                              03:43

     A    Yes.

     Q    So this is a different part of the song of
"Flowers" than what you were referring to before;
isn't that correct?

     A    Well, I'm getting lost in the weeds here.     03:44
I'm not really clear what you're asking here.

     Q    Sure.  Are you referring -- are you
referring to the lyrics of pre-chorus two in
"Flowers" as a transition into chorus three?

     A    No, I don't think so.                         03:44

     Q    So then if you go back to page 37 you say
"Both songs feature identical transition leading to
the chorus three."  So what lyrics are you referring
to in "Flowers"?

     A    Well, obviously chorus three refers only     03:45

Page 169

to "When I Was Your Man" and chorus -- pre-chorus
two refers to "Flowers".

Q    So the songs do not have an identical
transition leading to chorus three; is that correct?

A    Maybe I can simplify this by explaining
that I'm calling attention to those interjections
rather than anything much larger than that and they
lead into the admission, the connection to flowers.

Q    So the similarities is that "When I Was
Your Man" uses the term "oh" in the bridge or the
vocalization "oh" in the bridge and pre-chorus and
I'm sorry, and "Flowers" uses the vocalization "ooh"
at the beginning of pre-chorus two?

A    You know, in a nutshell, that's it.  Of
all the interjections and exclamations one can use,
those are pretty close.

Q    And the term "oh" here from what you
excerpted that's halfway through the bridge in "When
I Was Your Man"; isn't that correct?

A    The location to me is not the point, but
that's correct.

Q    Can we look at page 25.  Well, let me ask
you something else.

A    Yeah.

Q    In your opinion, is this a significant

Page 170

similarity under the extrinsic test?                          03:47

    A    Is what a significant similarity?

    Q    This similarity that you pointed out that
the word "oh" occurs in the bridge of "When I Was
Your Man" and the word "ooh" occurs in pre-chorus      03:47
two of "Flowers"?

    A    It's part of the extrinsic test in terms
of dialogue, again, regardless of what Oxford says.
It's the kind of word or mini-word for which there
are any number of possible substitutions or other     03:47
words one can use.

         In context it underscores a substantial
similarity.  That's what I was saying.

    Q    Do -- in popular music do you have any
sense of which among all of the possible              03:48
vocalizations which are more commonly used and which
are not?

         MS. STERN:  Objection; outside the scope
of his opinion.

         THE WITNESS:  If we want to sit here, and     03:48
I can certainly go through my memory and relate
interjections and exclamations that are oh and aw
and any number of iterations of that, and I will be
the first to agree that oh and ooh are not unique to
these songs.  Ooh, ooh, Child, big song in the '60s.   03:49

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

STATE OF CALIFORNIA      )

COUNTY OF LOS ANGELES   )   ss.


        I, JESSICA N. NAVARRO, C.S.R. NO. 13512, in and for the State of California, do hereby certify:

        That prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

        That said deposition was taken down by me in the shorthand at the time and place therein named and thereafter reduced to typewriting under my direction, and the same is a true, correct, and complete transcript of said proceedings;

        That if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not required.

        I further certify I am not interested in the event of the action.

        Witness my hand this 30th day of JANUARY, 2026.



        JESSICA N. NAVARRO, C.S.R. NO. 13512


        Page 198