Alex M. Weingarten (SBN 204410)
  AWeingarten@willkie.com
Jeffrey K. Logan (SBN 136962)
  JLogan@willkie.com
Amy M. Stern (SBN 311382)
  AStern@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 2900
Los Angeles, CA  90067
Telephone:  (310) 855-3000
Facsimile:   (310) 855-3099

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| TEMPO SECURED MUSIC RIGHTS COLLATERAL, LLC,<br><br>                              Plaintiff,<br><br>               v.<br><br>MILEY CYRUS, et al.,<br><br>                              Defendants. | Case No. 2:24-cv-07910-MRA-BFM<br><br>Hon. Mónica Ramírez Almadani<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Action Filed:  September 16, 2024 |

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Tempo Secured Music Rights Collateral, LLC ("Plaintiff") respectfully submits this Notice of Supplemental Authority to bring to the Court's attention the July 1, 2026 decision by Judge André Birotte Jr. of the Central District of California in *Browne v. Clark*, No. 2:21-cv-02840-AB-AJR, ECF No. 841 (C.D. Cal. July 1, 2026), attached hereto as **Exhibit A** (the "Order"). Notice of the Order is proper because it supports Plaintiff's pending Opposition to Defendants' Motion For Summary Judgment (ECF 108-58) and was not available at the time of briefing or oral argument. *See Pac. Shore Stones, LLC v. Allied Prop. & Cas. Co.*, No. 2:25-CV-04370-MRA-MAA, 2026 WL 1047694, at *10 n.6 (C.D. Cal. Mar. 31, 2026) (considering unreported state trial court decision submitted via notice of supplemental authority).

The Order is relevant to the pending summary judgment motion in this action. In the Order, the Court denied the parties' cross-motions for summary judgment and related *Daubert* motions directed to the issue of whether plaintiffs' asserted works, or portions thereof, possess sufficient originality and are otherwise protectable. *See generally* Ex. A; ECF 108-58 at 5:13-9:25. Specifically, the record in *Browne* "present[ed] genuine disputes of material fact regarding the identification, characterization, and protectability" of the alleged musical elements originating in the claimed works, which "[were] driven almost entirely by competing expert analyses." Ex. A at 40. The *Browne* Court recognized that the applicable legal framework "incorporates multiple, related inquiries, including originality, filtration of unprotectable elements, and the role of prior material in assessing protectability." *See id*. at 9. The Court held that the parties' arguments as to whether the experts "over- or under-emphasized considerations such as prior art, independent creation, or selection and arrangement . . . bear on the weight of the testimony, not its admissibility," and denied the parties' summary judgment motions on that basis. *Id*; *see also id*. at 40 ("[T]he evidentiary record presents competing, facially credible

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

expert opinions regarding what elements exist in the Claimed Works, how those elements function musically, whether they are commonplace or original, and whether they form a coherent and protectable selection and arrangement.").

Dated: July 14, 2026

**WILLKIE FARR & GALLAGHER LLP**

By:    */s/ Alex M. Weingarten*
Alex M. Weingarten
Jeffrey K. Logan
Amy M. Stern

*Attorneys for Plaintiff*
Tempo Secured Music Rights Collateral, LLC

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

NOTICE OF SUPPLEMENTAL AUTHORITY

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   2:21-cv-02840-AB-AJR | Date:   July 1, 2026 |

Title:   *Cleveland Constantine Browne et al v. Rodney Sebastian Clark et al*

Present: The Honorable   **ANDRÉ BIROTTE JR., United States District Judge**

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT AND *DAUBERT* MOTIONS [Dkt. Nos. 706, 707, 709–711, 713, 721, 735, 737, 741, 742, 747, 751]**

This action arises from a series of consolidated copyright infringement claims brought by Plaintiffs Cleveland Constantine Browne, Steely and Clevie Productions Ltd., Carl Gibson, and Shea Johnson (collectively, "Plaintiffs") against multiple defendants, including those represented by Pryor Cashman LLP (the "PC Defendants") and Defendants Rimas Music, LLC and Benito Antonio Martínez Ocasio p/k/a Bad Bunny (the "Rimas Defendants") (collectively, "Defendants"), concerning the alleged copying and protectability of musical elements originating in the composition "Fish Market" and related works. The parties now bring cross-motions for summary judgment directed to a threshold issue in this phased litigation—whether Plaintiffs' asserted works, or portions thereof, possess sufficient originality and are otherwise protectable under copyright law. The parties also bring cross-motions to exclude each other's expert testimony and reports. The Court heard argument on December 19, 2025, and subsequently took the Motions under submission. *See* Fed. R. Civ. P. 78; Local Rule 7-15.

This Order addresses the following motions to exclude:

| Motion | Opp'n | Reply | Ruling |
|---|---|---|---|
| Judith Finell *Daubert* Motion (Dkt. No. 707) | Dkt. No. 734 | Dkt. No. 763 | DENIED |
| Kenneth Bilby *Daubert* Motion (Dkt. No. 709) | Dkt. No. 709 | Dkt. No. 762 | DENIED |
| Non-Retained Expert *Daubert* Motion (Dkt. No. 713) | Dkt. No. 744 | Dkt. No. 764 | GRANTED IN PART |
| Peter Ashbourne-Firman *Daubert* Motion (Dkt. No. 711) | Dkt. Nos. 753, 792 | Dkt. No. 770 | DENIED |
| Lawrence Ferrara *Daubert* Motion (Dkt. No. 741, 788) | Dkt. No. 767 | Dkt. No. 786 | DENIED |
| Paul Geluso *Daubert* Motion (Dkt. No. 735) | Dkt. No. 765 | Dkt. No. 782 | GRANTED |
| Peter Manuel *Daubert* Motion (Dkt. No. 747) | Dkt. No. 768 | Dkt. No. 783 | DENIED |
| Wayne Marshall *Daubert* Motion (Dkt. No. 737) | Dkt. No. 771 | Dkt. No. 781 | DENIED |

This Order addresses the following motions for summary judgment:

| Motion | Opposition | Reply | Ruling |
|---|---|---|---|
| PC Defendants' Partial Motion for Summary Judgment (Dkt. No. 706) | Dkt. No. 742 | Dkt. Nos. 772, 773 | DENIED |
| Plaintiffs' Partial Motion for Summary Judgment (Dkt. No. 742) | Dkt. Nos. 772, 773 | Dkt. No. 790 | DENIED |

The following joinder motions were also filed:

| Motion | Motions Joining | Ruling |
|---|---|---|
| Joinder Motion of Maybach Music Group, LLC (Dkt. Nos. 710, 723) | Dkt. Nos. 706, 707, 709, 711, 713 | DENIED consistent with rulings on underlying motions. |

| Joinder Motion of Nelson Diaz Martinez; Jose Angel Lopez Martinez (Dkt. No. 718) | Dkt. Nos. 706, 707, 709, 711, 713 | DENIED consistent with rulings on underlying motions. |
|---|---|---|
| Joinder Motion of Gabriel Pizarro (Dkt. No. 720) | Dkt. Nos. 706, 707, 709, 711, 713 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Aubrey Drake Graham; Ovo Sound, LLC (Dkt. Nos. 716, 775) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 767, 768, 769, 770, 771, 772, 773 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Benito Antonio Martínez Ocasio p/k/a Bad Bunny; Rimas Music, LLC (Dkt. Nos. 717, 776) | Dkt. Nos. 706, 707, 708, 709, 711, 713, 762, 763, 764, 765, 767, 768, 770, 771, 772 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of William Sami Etienne Grigahcine p/k/a DJ Snake; Empire Distribution, Inc (Dkt. Nos. 722, 777) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Rich Music, Inc. (Dkt. Nos. 719, 778) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Camilo Echeverría (Dkt. Nos. 721, 779) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772, 773 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Cinq Music Group, LLC; Cinq Music Publishing, LLC (Dkt. Nos. 712, 780) | Dkt. Nos. 706, 707 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772, 773 | DENIED consistent with rulings on underlying motions. |

## I.    BACKGROUND

This consolidated copyright action arises from Plaintiffs' allegations that numerous musical works unlawfully copied protectable expression contained in the musical composition "Fish Market" and related works, including "Dem Bow" and

"Pounder (Dub Mix II)." *See generally* Second Consolidated Amended Complaint ("SCAC"), Dkt. No. 305. For ease of reference, the Court refers collectively to "Fish Market," "Dem Bow," and "Pounder (Dub Mix II)" as the "Claimed Works." The present motions do not concern infringement generally. Rather, pursuant to the Court's phased case administration plan, the issues presently before the Court are limited to whether Plaintiffs' Claimed Works or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law. *See* Order Granting Stipulation Re: Case Administration ("Administration Order"), Dkt. No. 143 at 1–2.

As discussed more fully below, Plaintiffs assert copyright interests in the Claimed Works and contend that they embody protectable musical expression. *See generally* Plaintiffs Consolidated Motion for Partial Summary Judgment and Opposition to Defendants' Motion for Summary Judgment on Originality and Protectability ("Plaintiffs' MSJ & Opp'n"), Dkt. No. 742. Defendants dispute both the scope of the claimed expression and whether the asserted elements, individually or in combination, are protectable under copyright law. *See generally* The Pryor Cashman Defendants' Notice of Motion and Motion for Summary Judgment as to Originality and Protectability ("Defendants' MSJ"), Dkt. No. 706. These disputes are supported by competing expert analyses and testimony.

This action originated as three related copyright cases that were subsequently consolidated for coordinated pretrial proceedings. *See* Dkt. No. 93. In light of the number of defendants, the number of accused works, and the overlapping legal and factual issues presented, the Court adopted a phased case administration plan under which the parties agreed to first litigate originality and protectability before proceeding, if necessary, to later phases addressing issues such as standing, access, substantial similarity, affirmative defenses, and damages. *See* Administration Order at 1–2; Stipulation Re: Case Administration ("Joint Stipulation"), Dkt. No. 142 at 4–5.

## II.     APPLICABLE LEGAL FRAMEWORK

The Court begins by setting forth the legal framework governing this phase of the case. Because the parties' disputes turn in significant part on how this phase is defined, it is necessary to clarify the scope of the inquiry before addressing the applicable doctrines.

### A. Scope of This Phase

The scope of this phase is defined by the Court's Administration Order and the parties' Joint Stipulation, which limit the inquiry to whether Plaintiffs' Claimed Works or portions thereof are sufficiently original and otherwise protectable under copyright law. *See* Administration Order at 1–2; Joint Stipulation at 4–5.

As previously clarified by Judge Richlin, this phase is directed to the protectability of the alleged elements of the Claimed Works, hereinafter referred to as the "Fish Market Elements," and whether the Fish Market Elements contain sufficient creative expression to be protected, rather than resolving broader infringement questions such as substantial similarity, access, or damages. *Browne v. Clark*, 2025 WL 819024, at *6 (C.D. Cal. Feb. 18, 2025).

Consistent with Ninth Circuit authority, this inquiry permits—and in some respects requires—the Court to consider the role of unprotectable material in assessing the scope of claimed protection. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1476 (9th Cir. 1992) (explaining "[a]nalytic dissection is relevant not only to the copying element of a copyright infringement claim, but also to the claim's ownership element," particularly "the copyrightability of the subject matter and, more particularly, the scope of whatever copyright lies therein"). This consideration is not for purposes of adjudicating novelty or conducting a patent-style prior art analysis, but rather to assist in determining whether genuine disputes exist as to what is protectable in the first instance. *See id.*

The parties' competing positions reflect differing emphases within this framework. Plaintiffs contend that the inquiry is limited to independent creation and a minimal degree of creativity. *See, e.g.,* Plaintiffs' MSJ & Opp'n at 14. Defendants contend that protectability necessarily requires examination of whether the asserted Fish Market Elements and their combination are drawn from prior works or otherwise unprotectable. *See, e.g.,* Defendants' MSJ at 9.

As set forth below, the governing legal standards incorporate aspects of both positions, and the Court applies those principles in evaluating whether summary judgment is appropriate on the present record.

## B. Originality Standard

"The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the

copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017); *see* 17 U.S.C. § 106. Only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement of that right. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013). To state a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019). "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).

Copyright protection extends only to original works of authorship. *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988) (citing *Scott v. WKJG, Inc.*, 376 F.2d 467, 469 (7th Cir. 1967) ("The essence of a copyright protection is the protection of originality rather than novelty or invention.")). The Supreme Court has explained that originality requires "independent creation plus a modicum of creativity." *Feist*, 499 U.S. at 346. This standard does not require novelty, and a work may be original even if it resembles prior works, so long as any similarity is not the result of copying. *Id.* at 345. To be sure, as this Court has stated, "the originality necessary to support a copyright merely calls for independent creation, not novelty." *Browne v. Donalds*, 2024 WL 3468898, at *21 (C.D. Cal. May 28, 2024) (citing *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970)).

The threshold for creativity is low, and even a modest degree of creative expression is sufficient. *Feist*, 499 U.S. at 345; *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020). Because of this low standard, "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir.2000) (quoting *Feist*, 499 U.S. at 345). Nevertheless, originality alone does not define the scope of protection, and copyright does not extend to all aspects of an original work. *Feist*, 499 U.S. at 348.

## C. Protectability & Filtration Doctrine

"The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist*, 499 U.S. at 348. The Ninth Circuit requires courts to perform "analytic dissection" to identify and filter out unprotectable

elements before assessing infringement. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).

This filtration process excludes ideas, material drawn from others or the public domain, and scènes à faire. *See Feist*, 499 U.S. at 350; *Idema v. Dreamworks*, *Inc.*, 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001); *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 426 F. Supp. 2d 1101, 1112–13 (E.D. Cal. 2006). Courts also filter out elements that are "universally observed," "commonplace," or "expected as a matter of course," as well as those that are "trivial," "practically inevitable," "firmly rooted in tradition," reflective of "an age-old practice," or otherwise "utterly" or "manifestly" conventional. *Feist*, 499 U.S. at 363; *Satava v. Lowry*, 323 F.3d 805, 811 (2003); *Gray v. Hudson*, 28 F.4th 87, 101 (9th Cir. 2022).

Where a plaintiff asserts protection based on a selection and arrangement theory, the inquiry focuses on whether the combination of elements—viewed as a whole—reflects sufficient originality to be protectable. *Skidmore*, 952 F.3d at 1074 (quoting *Satava*, 323 F.3d at 811) (stating copyright protection may extend to the original combination of those elements if they are "numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship"). "Put another way, what a selection and arrangement copyright protects is the particular way in which the artistic elements form a coherent pattern, synthesis, or design." *Id.* "[T]o merit protection, the [elements] must be selected, coordinated, or arranged 'in such a way' as to render the work as a whole original." *Feist*, 499 U.S. at 358.

Even in that context, however, courts must still exclude unprotectable material before assessing whether the remaining selection and arrangement is original. *Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 696 (9th Cir. 2026) (stating "[f]iltering and selection and arrangement are not truly distinct tests"). Importantly, filtration does not operate independently from the selection and arrangement inquiry; rather, it informs whether the asserted combination contains protectable expression at all. *See id.* (citing *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 n.11 (9th Cir. 2023); *Collier v. McKay*, 761 F. Supp. 3d 1300, 1309 (C.D. Cal. 2025) (stating "the selection and arrangement must itself be original to merit copyright protection") (citing *Skidmore*, 952 F.3d at 1074).

In applying this framework, courts may consider prior works and established conventions within the relevant field—not as a means of imposing a novelty requirement, but to provide context for determining whether asserted elements, and

their combination, are sufficiently original to warrant protection. *See Feist*, 499 U.S. at 345–48; *Satava*, 323 F.3d at 811. Accordingly, at the same time, this contextual inquiry does not permit the Court to engage in a patent-like comparison against a catalog of prior works, nor to require that identical combinations appear in earlier compositions. *See Mazer v. Stein*, 347 U.S. 201, 218 (1954); *Satava*, 323 F.3d at 811. Rather, prior works function as guideposts within the analytic dissection process, informing both the filtration of unprotectable material and the assessment of whether the remaining selection and arrangement embodies the minimal degree of creativity required for copyright protection. *See Apple Computer, Inc.*, 35 F.3d at 1443.

## III.   MOTIONS TO EXCLUDE

As noted above, the parties have moved for summary judgment, in part, on the grounds that the other side's expert testimony should be excluded. The Court will thus first address the parties' motions to exclude and then apply its ruling on these motions to the parties' motions for summary judgment.

### A. Legal Standard

Federal Rule of Evidence ("FRE") 702 allows expert testimony where "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). A party who plans to rely on expert testimony must disclose it and comply with the requirements of Rule 26(a)(2), including providing a written expert report.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93, 597 (1993), the Supreme Court explained that, in applying FRE 702, "the trial judge plays a 'gatekeeping role,' which 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015) (internal citations omitted). "The Court emphasized that the focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). "Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Id.* at 1295.

### B. Threshold Issue: Experts' Application of Legal Standards

At the outset, the Court notes that both sides argue, as a basis for exclusion, that the opposing experts were instructed to apply an incorrect legal standard for originality and protectability under copyright law, resulting in filtration analyses and consideration of prior works that were either unduly expansive or impermissibly narrow. *See, e.g.*, Dkt. No. 788-1 at 2–5; Dkt. No. 737 at 4–6. Under FRE 702, expert testimony is admissible only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Consistent with this requirement, courts in the Ninth Circuit have recognized that expert opinions premised on a misunderstanding of the governing legal framework may be excluded as unhelpful or irrelevant. *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1260–61 (9th Cir. 2021).

Here, the Court acknowledges that the parties' experts adopt differing articulations of the governing legal standards regarding originality. However, as set forth above, the applicable framework at this phase incorporates multiple, related inquiries, including originality, filtration of unprotectable elements, and the role of prior material in assessing protectability. *See Feist*, 499 U.S. at 345–48; *Skidmore*, 952 F.3d at 1074; *Yonay*, 163 F.4th at 696; *Apple Computer, Inc.*, 35 F.3d at 1443. Within that framework, the Court concludes that neither side's expert testimony is rendered categorically irrelevant merely because it emphasizes one aspect of the inquiry over another. To the extent the parties contend that an expert has over- or under-emphasized considerations such as prior art, independent creation, or selection and arrangement, those arguments bear on the weight of the testimony, not its admissibility. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Accordingly, the Court does not exclude expert testimony on the ground that an expert was directed to apply a particular articulation of the legal standard, and instead evaluates each motion in light of FRE 702's reliability and helpfulness requirements.

### C. Judith Finell Motion to Exclude

#### i. *Summary of Contentions*

Defendants move to exclude the testimony and report of Plaintiffs' expert Dr. Judith Finell. *See generally* Dkt. No. 707. Defendants contend that Finell's originality opinions are based on speculation rather than identifiable prior art or reliable comparative analysis. *Id.* at 6–8. Defendants further argue that while Finell did conduct a prior art search, she did not disclose it because it did not support her opinion in violation of Rule 26. *Id.* at 8–12. Moreover, Defendants claim that

Finell's report fails to address the lack of originality in the Claimed Works, and the analysis was based on audio files generated in 2021. *Id.* at 12–23. Finally, Defendants contend that Finell's rebuttal report, which ostensibly rebuts the report of Defendants' expert, Dr. Lawrence Ferrara, is in most respects incorrect and misses the point of Ferrara's report. *Id.* at 23–25.

Plaintiffs oppose, arguing originality does not require novelty or a prior art search. Dkt. No. 734 at 4–7. In addition, Plaintiffs argue Finell correctly applied a selection and arrangement framework, thereby not overly filtering elements. *Id.* at 8–11. Further, because Finell's opinions expressly exclude reliance on prior art, Plaintiffs argue no disclosure obligation was triggered. *Id.* at 11–13. Plaintiffs also contend that Finell's rebuttal report is proper because she engages in proper musicological analysis and provides a helpful framework to understand why Ferrara engaged in improper prior art/filtering analysis, as well as his failure to consider certain elements. *Id.* at 14–16. Finally, Plaintiffs assert that Defendants' arguments go to the weight of the testimony rather than its admissibility. *Id.* at 16–19.

### ii. *Discussion*

Evidence is admissible so long as it is relevant and sufficiently reliable to assist the trier of fact, and disputes regarding the basis or persuasiveness of an expert's opinions generally go to weight rather than admissibility. Fed. R. Evid. 401–402, 702. Applying these principles, the Court concludes that Defendants have not demonstrated that exclusion of Finell's testimony is warranted.

As an initial matter, the Court has already addressed the parties' competing arguments regarding the proper scope of filtration and the role of prior works in assessing originality and protectability. To the extent Defendants raise those arguments as a basis for exclusion, they do not warrant exclusion here for the reasons previously stated. Accordingly, in terms of methodology, the Court finds that Finell relied on well-established and respected musicological principles, basing her opinions on audio recordings and transcriptions of the Claimed Works, analyzing the compositional features of the various Fish Market Elements. *See* Expert Report of Judith Finell ("Finell Report"), Dkt. No. 749-1 at 3–4, 7 11.

To the extent Defendants claim that Finell did conduct a prior art search, the Court is not persuaded that this search was hidden and undisclosed in violation of Rule 26. Rule 26(a)(1) requires parties—subject to certain limited exceptions—to provide initial disclosures without awaiting a discovery request. *See* Fed. R. Civ. P.

26(a)(1)(A)–(B). In addition to these baseline disclosures, Rule 26(a)(2) specifically addresses expert testimony, requiring parties to identify any witness they may call at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. *See* Fed. R. Civ. P. 26(a)(2)(A). These evidentiary rules concern testimony based on specialized knowledge. *See, e.g.*, Fed. R. Evid. 702. Where a witness is retained or specially employed to provide expert testimony, the disclosure must be accompanied by a written report prepared, signed by the witness. *See* Fed. R. Civ. P. 26(a)(2)(B). Defendants note that the Advisory Note to 2010 Amendment to the Rule state that this disclosure should include "the facts or data considered by the witness in forming [their opinions]." Dkt. No. 707 at 10. The timing of such disclosures is governed by the schedule set by the court. *See* Fed. R. Civ. P. 26(a)(2)(D).

Here, the Court concludes that Rule 26 did not require disclosure of facts relating to Finell's 2022 preliminary prior art inquiry. The record reflects that Finell conducted only a limited, exploratory review in 2022, which she did not rely upon in forming the opinions expressed in her expert report. *See* Videotaped Videoconference Deposition of Judith Finell ("Finell Dep."), Dkt. No. 707-3 at 26:17–27:16; Finell Report at 3. As Finell explained:

> I did originally conduct in 2022 […] a preliminary prior art search to determine the history of the rhythms involved in this case. I did conduct that study and arrived at inconclusive results in terms of predecessors that related to the music at hand
>
> My assignment changed in those years, the 2021 report was a comparison between "Fish Market" and Dem Bow as compared to two other songs that had similarities […].
>
> The 2025 report was not in comparison to specific other works, and so the scope and focus had changed; however, in 2022, I did conduct a preliminary investigation into prior art, considering the initial report I had done and the comparisons I had done and did not find prior art that […] convinced me that the works […] depended on anything prior.
>
> Finell Dep. at 26:17–27:12 (cleaned up).

This testimony establishes that Finell's 2022 inquiry was both preliminary and inconclusive, and that her ultimate opinions were developed under a different assignment that did not rely on comparisons to prior works. Moreover, Finell

testified that although the knowledge she gained from her 2022 prior art inquiry may have informed her general understanding, that inquiry was not part of her assignment in this case and was not relied upon in forming her 2025 opinions. Finell Dep. at 35:6–22. Consistent with that testimony, Finell repeatedly disclaimed offering any opinion regarding prior art, including any materials reviewed during her 2022 inquiry. *See id.* at 35:1–5; Finell Report at 3. Because Finell's prior art inquiry did not inform or underpin the opinions disclosed in her report, the Court concludes it does not constitute "facts or data considered" within the meaning of the Rule. Accordingly, no disclosure obligation was triggered.

Defendants' additional challenges to Finell's reliance on particular audio materials, including recordings generated after the original works or portions of recordings that are allegedly difficult to perceive, similarly go to the weight of her analysis rather than its admissibility. *See Kennedy*, 161 F.3d at 1231. These issues bear on the credibility and persuasiveness of her conclusions and may be explored through cross-examination and competing expert evidence. *See City of Ponoma v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (explaining that an expert's testimony is admissible if the knowledge underlying the opinion has "a reliable basis in the knowledge and experience of the relevant discipline" and noting that the test for reliability is "not the correctness of the expert's conclusions but the soundness of his methodology.").

Finally, the Court is not persuaded that Finell's rebuttal report so clearly erroneous as to justify wholesale exclusion. *See* Review of Report by Lawrence Ferrara ("Finell Rebuttal Report"), Dkt. No. 749-2. The Court emphasizes that in applying FRE 702, the judge functions only as "a gatekeeper, not a fact finder." *See Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010), as amended (Apr. 27, 2010); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1026 (C.D. Cal. 2013). Although the "minimum" role of gatekeeping does not permit the Court to pass judgment on the persuasiveness of an expert's opinion, "nothing prevents [Plaintiffs] from offering [their] arguments against the admissibility of [the expert's] opinions to the jury as arguments for why those opinions are not credible." *Ardestani v. BMW of N. Am., LLC*, No. SA CV 17-00721-JDE, 2018 WL 6016956, at *7 (C.D. Cal. Oct. 15, 2018). Defendants' general disagreement with Finell's conclusions and reasoning in her rebuttal to Ferrara are not grounds to exclude her testimony under FRE 702. Altogether, "[t]hese challenges go to weight, not admissibility." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 585 (N.D. Cal. 2020).

In sum, Defendants' arguments largely reflect disagreements with Finell's

assumptions, analytical choices, and ultimate conclusions. Such disputes do not provide a basis for exclusion under the Federal Rules of Evidence. Accordingly, Defendants' Motion to Exclude the testimony and reports of Dr. Judith Finell is **DENIED.**

## D. Kenneth Bilby *Daubert* Motion

### i. *Summary of Contentions*

Defendants move to exclude the testimony and report of Plaintiffs' expert Dr. Kenneth Bilby. *See generally* Dkt. No. 709. Defendants contend that Bilby failed to disclose all the materials and prior art he reviewed in forming his opinion violation of Rule 26. *Id.* at 4–8. Moreover, Defendants contend that Bilby obscured the methodology underlying his prior art search by failing to disclose the criteria used to select the recordings and musical works on which he relied, rendering his analysis not meaningfully testable. *Id.* at 8–12. Defendants also argue that Bilby fails to identify the key Fish Market Elements that he found existed in prior works because he was instructed to engage in an improper inquiry by Plaintiffs' counsel. *Id.* at 12–19. In addition, Defendants claim that Bilby does not adequately identify the relevant combination of elements which are claimed to be relevant in the Claimed Works, thereby expanding the elements in the claimed selection and arrangement. *Id.* at 19–24. Finally, Defendants argue that the majority of Bilby's report is irrelevant to the issue of originality and protectability. *Id.* at 24–25.

Plaintiffs oppose, asserting that Defendants' motion rests on two flawed premises: first, that originality requires novelty; and second, that non-protectable elements cannot be considered as part of an original selection and arrangement. Dkt. No. 740 at 3–4. Plaintiffs therefore argue that Defendants' emphasis on prior art and filtration is misplaced, and that Bilby's report remains admissible notwithstanding the contention that he did not conduct a comprehensive prior art search or independently filter unprotectable elements. *Id.* at 4–11. Plaintiffs further contend that Bilby offers reliable and relevant ethnomusicological testimony addressing what is original about the Claimed Works, including their creation and the features that support their originality. *Id.* at 12–14.

According to Plaintiffs, Bilby's methodology—grounded in historical and cultural research, with disclosed data and a transparent analytical framework—is well-established in the field and therefore reliable. *Id.* at 15–17. Plaintiffs also maintain that his opinions are relevant because they situate the Claimed Works within their proper musical and cultural context, thereby assisting the jury. *Id.* at

17–19. Finally, Plaintiffs argue that Bilby's rebuttal report properly responds to the opinions of Defendants' experts, including Wayne Marshall and Melvin Butler, and that, in any event, Defendants' criticisms go to the weight of his testimony rather than its admissibility. *Id.* at 19–24.

### ii. *Discussion*

The Court concludes that Defendants have not established a basis to exclude the testimony or report of Bilby. As an initial matter, the Court finds that Bilby is qualified to testify as an expert. He is a trained anthropologist and ethnomusicologist who has studied Caribbean music for over forty years, including extensive research on Jamaican musical traditions such as ska, rocksteady, and reggae, supported in part by a Guggenheim Fellowship. *See* Expert Report of Kenneth Bilby, Ph.D ("Bilby Report"), Dkt. No. 740-2 at 4. He has authored scholarly works on Caribbean music, including "The Caribbean as a Musical Region" and the textbook "Caribbean Currents: Caribbean Music from Rumba to Reggae," and has taught courses on Caribbean, African, and world music at various institutions. *See id.* at 4–5.

With respect to Defendants' contention that Bilby failed to disclose all materials and prior art considered in forming his opinions in violation of Rule 26, the Court disagrees. Rule 26(a)(2) requires disclosure of the facts or data "considered" by the expert, not an exhaustive accounting of all materials reviewed in the course of background research. *See* Fed. R. Civ. P. 26(a)(2); Advisory Committee Notes (2010 Amendments). Bilby testified that he considered relevant musical and cultural materials in forming his opinions, and the record reflects that his report sets forth the parameters guiding his analysis, including the categories of works and traditions he examined. *See* Bilby Report at 7–8; Videotaped Deposition of Kenneth Mansfield Bilby, Ph.D ("Bilby Dep."), Dkt. No. 740-3 at 51:13–52:6. Moreover, the record reflects that Bilby was questioned at deposition regarding the materials he considered and the basis for his opinions, and he provided responsive testimony identifying the works and sources that informed his analysis. *See* Reporter's Transcript of Motion for Summary Judgment ("Hearing Transcript"), Dkt. No. 839 at 75:15–76:1. That Defendants disagree with the scope or sufficiency of those materials does not render his methodology unreliable within the meaning of FRE 702. *See United States of Am. v. J-M Mfg. Co., Inc.*, No. EDCV 06-55-GW(PJWX), 2018 WL 11349904, at *17 (C.D. Cal. June 21, 2018) ("[T]he mere potential that his inputs could be proven wrong, or questioned, does not undermine the reliability of [the expert's] methods for the purposes of Rule 702."). Furthermore, the fact that Defendants believe additional materials should

have been considered, or that the search should have been broader, goes to the weight of his testimony, not its admissibility. *See Lessem v. Taylor*, 766 F. Supp. 2d 504, 511–12 (S.D.N.Y. 2011) (holding that challenges to the completeness of an expert's analysis generally go to weight, not admissibility).

The Court likewise rejects Defendants' argument that Bilby failed to identify what is original and protectable in the Claimed Works, rendering his opinions unreliable or irrelevant. As Plaintiffs note, Bilby explains that the Claimed Works reflect a "unique combination of particular characteristics that reductive representations "unique combination of particular characteristics that reductive representations […] ignore," including "pitch, timbre, dynamics, tempo, rhythmic stress, and 'feel,' among others, as well as various structural or 'spatial; considerations." Bilby Report at 15. He further situates the Claimed Works within the history of Jamaican music and articulates why, in his view, the Dem Bow Riddim reflects original expression. *See, e.g.*, Rebuttal Report of Kenneth Bilby, Ph.D ("Bilby Rebuttal Report"), Dkt. No. 740-4 at 6; Bilby Report at 6–11, 13–15, 72–73. Defendants' criticisms thus amount to a disagreement with Bilby's identification and characterization of the relevant musical features, as well as the legal premises informing his analysis. Such disputes go to the weight of his testimony, not its admissibility under FRE 702. *See Lessem*, 766 F. Supp. 2d at 511–12. Accordingly, the Court declines to exclude Bilby's opinions on this basis.

Further, the Court finds that Bilby employs generally accepted ethnomusicological and musicological methods, including "detailed historical and cultural research and analysis, combined with a close examination of musical elements and characteristics" of the Fish Market. *See* Bilby Report at 7. In applying these methods, Bilby searched for examples of prior works from Jamaica and elsewhere from which Fish Market might be derived, and examined influences from traditional Jamaican music to assess whether any similarities "could be shown to be of such specificity and so consistently and integrally parallel as to affect Plaintiffs' claims of originality." *Id.* at 8; Bilby Dep. at 51:24–52:6. He further identified specific Jamaican musical traditions and evaluated whether the Dem Bow Riddim reflects copying of any fixed or preexisting rhythmic or melodic patterns. *See* Bilby Report at 9–11. These approaches are standard within the field and provide a sufficient methodological foundation for his opinions. Defendants' criticisms—that his analysis is incomplete, insufficiently specific, or based on an improper scope—go to the weight of his testimony, not its admissibility, and are properly addressed through cross-examination and competing expert evidence. *See Lessem*, 766 F. Supp. 2d at 511–12; *Kennedy*, 161 F.3d at 1231.

Finally, to the extent Defendants argue that portions of Bilby's reports are

irrelevant to the issues in this phase, the Court is not persuaded that such concerns justify wholesale exclusion. Bilby's discussion of historical and cultural musical context bears on his analysis of originality and assists in situating the works within their broader musical framework. *See City of Ponoma*, 750 F.3d at 1044 (explaining that an expert's testimony is admissible if the knowledge underlying the opinion has "a reliable basis in the knowledge and experience of the relevant discipline" and noting that the test for reliability is "not the correctness of the expert's conclusions but the soundness of his methodology."); *see Primiano*, 598 F.3d at 565 (stating that when an expert's testimony meets the threshold established by FRE 702, the expert may testify and the jury decides how much weight to give to the evidence). Any overbreadth or lack of focus may be explored through cross-examination and does not render the testimony inadmissible.

In sum, Defendants' objections largely challenge the sufficiency and persuasiveness of Bilby's analysis rather than its admissibility. Accordingly, Defendants' motion to exclude the testimony and report of Bilby is **DENIED.**

### E. Peter Ashbourne-Firman *Daubert* Motion

#### i. *Summary of Contentions*

Defendants move to exclude the testimony and expert report of Peter Ashbourne-Firman. *See generally* Dkt. No. 711. Defendants contend that Ashbourne-Firman is not a trained musicologist and lacks advanced or graduate-level training in musicology. *Id.* at 10. Defendants further argue that his opinions are not probative because he applied an incorrect legal standard for originality as instructed by Plaintiffs' counsel. *Id.* at 11–12. Defendants also challenge Ashbourne-Firman's methodology, asserting that he failed to "rely on, consider, or even review any 'prior art'" in forming his opinions, which they contend is essential to a reliable originality analysis. *Id.* at 12–13. Defendants further argue that his reliance on MP3 "stems" created in 2021, rather than contemporaneous recordings, renders his analysis unreliable. *Id.* at 14–16. In addition, Defendants contend that Ashbourne-Firman failed to analyze the asserted elements individually or in combination against preexisting or common musical patterns, undermining his conclusion that "Dem Bow" and "Pounder" are derivative of "Fish Market." *Id.* at 17–18. Finally, Defendants argue that his rebuttal opinions exceed the permissible scope and should likewise be excluded. *Id.* at 21–25.

Plaintiffs oppose, arguing that Ashbourne-Firman is qualified based on decades of experience as a composer, performer, arranger, and educator within the

relevant musical genres. Dkt. No. 792-1 at 12–14. Plaintiffs further contend that Defendants' arguments improperly import a novelty requirement into the originality inquiry. *Id.* at 5–6. Plaintiffs argue that a prior art search is not required, particularly where, as here, they assert a selection and arrangement theory rather than a substantial similarity claim. *Id.* at 7–8. Plaintiffs also defend Ashbourne-Firman's methodology as grounded in accepted compositional and analytical practices. *Id.* at 10. With respect to the use of stems, Plaintiffs note that Ashbourne-Firman initially conducted his analysis using the original recordings and only later consulted isolated stems, which they contend is consistent with industry practice. *Id.* at 11. Plaintiffs further argue that any alleged deficiencies in his analysis go to weight, not admissibility. *Id.* at 12.

### ii. *Discussion*

As an initial matter, the Court concludes that Ashbourne-Firman is qualified to offer expert testimony. He is a Jamaican composer, performer, and arranger with a Bachelor's degree in music composition from Berklee College of Music and decades of experience working within the relevant musical genres. *See* Expert Report of Peter Ashbourne-Firman ("Ashbourne-Firman Report"), Dkt. No. 753-2, Exh. A (Curriculum Vitae). He has substantial experience transcribing, analyzing, and composing music, and has an extensive professional background as a recording and performing artist. *Id.* "The threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *4 (N.D. Cal. Oct. 27, 2011). Indeed, experience alone may qualify an expert under FRE 702, and such qualification need not derive from formal academic training in a particular subdiscipline. *See* Fed. R. Evid. 702; *Primiano*, 598 F.3d at 565; *Rogers v. Raymark Indus. Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991). That Ashbourne-Firman is not a formally trained forensic musicologist therefore does not warrant exclusion. *See id.*; *United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993). Accordingly, the Court finds that Ashbourne-Firman possesses the requisite knowledge, skill, and experience to offer expert testimony in this matter.

Second, as to Defendants' contention that Ashbourne-Firman applied an incorrect legal standard and therefore conducted an impermissibly narrow prior art inquiry, as the Court has already noted, the Court declines to exclude his testimony on this basis. As explained above, the governing framework incorporates multiple, related considerations, and the appropriate scope of prior art analysis lies between the parties' competing positions. In that context, the Court does not find that

Ashbourne-Firman's opinions are rendered categorically irrelevant or nonprobative merely because they reflect a narrower view of the role of prior works. Accordingly, any such criticisms go to the weight of his testimony, not its admissibility. *See Kennedy*, 161 F.3d at 1231.

Likewise, the Court is not persuaded that the use of stems renders Ashbourne-Firman's methodology unreliable. These criticisms concern the scope and inputs of his analysis, not whether his methodology is fundamentally unsound. As with Finell, these issues bear on the credibility and persuasiveness of her conclusions and may be explored through cross-examination and competing expert evidence. *See City of Ponoma*, 750 F.3d at 1044 (explaining that an expert's testimony is admissible if the knowledge underlying the opinion has "a reliable basis in the knowledge and experience of the relevant discipline" and noting that the test for reliability is "not the correctness of the expert's conclusions but the soundness of his methodology."); *Kennedy*, 161 F.3d at 1231; *Primiano*, 598 F.3d at 564.

More broadly, the Court finds that Ashbourne-Firman's analytical approach—grounded in transcription, comparative listening, and compositional analysis—is consistent with accepted practices in the field and sufficiently reliable under FRE 702. In applying these methods, Ashbourne-Firman used transcriptions and audio recordings to isolate instrumental components and analyze the Fish Market Elements. *See* Remote Videotaped Deposition of Peter Ashbourne-Firman ("Ashbourne-Firman Dep."), Dkt. No. 753-1 at 82:8–21; 85:14–86:16. He identifies specific musical features, including pitched bass lines, layered rhythms, and syncopated percussion. *See* Ashbourne-Firman Report at 3–5. Specifically, he explains:

> Fish Market comprises a composite of interlocking components of multiple timbres constructed and layered in tiers of percussion patterns (played by percussion instruments). In addition, it includes harmonic patterns in the bass repeated throughout essentially the song's entirety. The interlocking tiers from the essential expression of "Fish Market," supporting the work's few additional elements …

*Id.* at 4–5.

This type of identification and analysis of musical elements is consistent with established musicological practice. *See Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (recognizing that expert dissection and analysis of musical elements is

appropriate in assessing protectable expression). The Court sees no basis to depart from that framework here. Any perceived shortcomings in Ashbourne-Firman's analysis—whether as to completeness, specificity, or scope—bear on the persuasiveness of his conclusions, not their admissibility. *See Kennedy*, 161 F.3d at 1231; *Primiano*, 598 F.3d at 564.

Finally, the Court finds that Ashbourne-Firman's rebuttal opinions are properly directed towards responding to Dr. Joe Bennett's expert analysis and do not warrant exclusion. Rebuttal testimony is admissible where it is "intended solely to contradict or rebut evidence on the same subject matter identified by another [party's expert.]" Fed. R. Civ. P. 26(a)(2)(D)(ii). A rebuttal expert "is not limited to only critiquing the methods and opinions of opposing experts; he may also provide an alternate means of evaluating the same issue." *Ohio Six Ltd. v. Motel 6 Operating L.P.*, 2013 WL 12125747, at *16 (C.D. Cal. Aug. 7, 2013). Defendants have not shown that Ashbourne-Firman's rebuttal opinions exceed the permissible scope of rebuttal. To the contrary, his rebuttal report directly responds to the opinions advanced by Bennett, including analysis of the asserted Fish Market Elements and their alleged commonality and originality within Caribbean musical traditions. *See generally* Rebuttal Report of Peter Ashbourne-Firman ("Ashbourne-Firman Rebuttal Report"), Dkt. No. 753-3. It does not introduce new subject matter, but instead remains within the scope of the issues raised by Bennett. *See id.* at 2–3, 7–8.

Accordingly, Defendants' motion to exclude the testimony and report of Peter Ashbourne-Firman is **DENIED**.

### F. Lawrence Ferrara *Daubert* Motion

#### i. *Summary of Contentions*

Plaintiffs move to exclude the testimony and reports of Defendants' expert Dr. Lawrence Ferrara. *See generally* Dkt. No. 788-1. Plaintiffs first argue that Ferrara applies an incorrect legal standard for originality by effectively imposing a "novelty" requirement, rendering his opinions irrelevant and inadmissible. *Id.* at 1–3. Plaintiffs further contend that Ferrara's opinions are not the product of reliable principles and methods because he subjectively characterizes certain compositional Fish Market Elements as insignificant while elevating others as fundamental, without objective support, and at times excludes components from his analysis altogether. *Id.* at 8–10. According to Plaintiffs, this approach is inconsistent with accepted musicological principles. *Id.* Finally, Plaintiffs argue that Ferrara's

rebuttal report improperly critiques the credibility and competence of Plaintiffs' experts, thereby intruding on the province of the jury. *Id.* at 13–14.

Defendants oppose the motion, arguing that Ferrara's analysis—including his consideration of prior material—is directly relevant to the issue of protectability at this phase of the case. Dkt. No. 767 at 5–10. Defendants contend that assessing whether the asserted Fish Market Elements reflect original expression or unprotectable material necessarily entails examining prior works and common musical conventions. *Id.* at 6–7. Defendants further assert that Ferrara employed a reliable methodology, including transcription, comparative analysis, and filtration, and that he disclosed both his methods and analytical criteria in detail. *Id.* at 11–13. Defendants also dispute Plaintiffs' characterization of other cases involving Ferrara, noting that his testimony has not been excluded in those matters. *Id.* at 14–17. Finally, Defendants argue that Ferrara's rebuttal report properly responds to Plaintiffs' experts and does not constitute impermissible credibility testimony. *Id.* at 17–22.

### ii.  *Discussion*

As a threshold matter, and as discussed above, the Court does not exclude expert testimony on the basis that a party contends the expert applied an incorrect articulation of the governing legal standard. To the extent Ferrara's analysis emphasizes considerations such as prior material or filtration, those issues bear on the weight of his opinions, not their admissibility, and therefore will not be a basis for exclusion. *See Kennedy*, 161 F.3d at 1231; *Primiano*, 598 F.3d at 564.

Turning to reliability, the Court finds that Ferrara's methodology is sufficiently reliable under FRE 702. Ferrara conducted a detailed musicological analysis, including transcription of the relevant works, comparative evaluation of musical elements, and application of filtration principles. *See, e.g.* Report of Lawrence Ferrara, Ph.D Report ("Ferrara Report"), Dkt. No. 786-2 at 4–5 ¶ 11, 7–13 ¶¶ 15–25, 14–27 ¶¶ 31–65. His report sets forth his analytical steps and criteria in a manner that is both transparent and capable of evaluation through cross-examination. *Id.* at 6–27. Plaintiffs' criticisms—namely, that Ferrara improperly discounted certain elements or characterized others as more significant—go to the substance of his conclusions rather than the reliability of his methodology. *See City of Ponoma*, 750 F.3d at 1044 (explaining that an expert's testimony is admissible if the knowledge underlying the opinion has "a reliable basis in the knowledge and experience of the relevant discipline" and noting that the test for reliability is "not the correctness of the expert's conclusions but the soundness of his

methodology."). Such disputes are properly addressed through "[v]igorous cross-examination" and the presentation of contrary expert evidence, not exclusion. *Daubert*, 509 U.S. at 596.

The Court is likewise unpersuaded by Plaintiffs' reliance on other cases involving Ferrara to argue that he consistently makes methodological error. As Defendants note, those cases did not result in exclusion of his testimony. For example, in *Connor Bowen v. Paisley*, while the court did acknowledge that Ferrera did not address the element of originality, the court acknowledged that Ferrara was asked to consider another question and still ultimately relied on his testimony. *See* No. 3:13-CV-0414, 2016 WL 4480165, at *9, *12–14 (M.D. Tenn. Aug. 25, 2016). Likewise, in *Lester v. U2 Ltd.*, the court declined to exclude the testimony of Ferrara and instead relied upon such testimony in its summary judgment determination. *See* No. CV0706612SJOCWX, 2009 WL 10673938, at 3–4 (C.D. Cal. Apr. 10, 2009) Moreover, in *Hines v. BMG Rights Mgmt. (US) LLC*, the court accepted a similar analytical approach, including consideration of prior material. See 694 F. Supp. 3d 341, at 348–49 (S.D.N.Y. 2023). Accordingly, these cases do not demonstrate that Ferrara's methodology is so fundamentally unreliable as to warrant exclusion under FRE 702; if anything, they illustrate that any perceived weaknesses in his analysis are properly addressed through cross-examination and competing expert testimony, rather than exclusion.

In addition, the Court declines to conclude that Ferrara's testimony is cumulative and redundant, as Plaintiffs argue. FRE 403 permits the Court to exclude needlessly cumulative testimony that has little incremental value. *United States v. Miguel*, 87 Fed.Appx. 67, 68-69 (9th Cir. 2004); Fed. R. Evid. 403. "Cumulative evidence replicates other admitted evidence." *United States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979). A witness's testimony may be needlessly cumulative if the party presents evidence bearing on the same point through other witnesses. *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430-31 (9th Cir. 1991) (affirming district court's decision to exclude witness testimony that had little probative value and presented cumulative testimony). Here, however, although Ferrara and Defendants' other experts address overlapping subject matter to an extent, Ferrara offers distinct opinions regarding the originality of the asserted rhythmic selection and arrangement, the presence of those asserted elements in the accused works, and the musicological bases for his conclusions. That portions of his testimony may overlap with other experts does not render it needlessly cumulative within the meaning of Rule 403. *See Calvert v. Ellis*, No. 2:13-CV-00464-MMD, 2015 WL 732523, at *2 (D. Nev. Feb. 20, 2015) ("[T]he mere presence of overlap, reference to another expert's report, or a similar conclusion,"

does not render an expert report "unnecessarily cumulative."). Rather, his opinions provide independent analytical support for Defendants' positions and therefore possess probative value beyond merely repeating the testimony of other witnesses. *See Chavez-Herrera v. Shamrock Foods Co.*, No. 219CV01327GMNBNW, 2024 WL 111732, at *3 (D. Nev. Jan. 9, 2024) ("Because courts frequently permit multiple experts to opine on similar issues where each expert's credentials and expertise differ, the probative value of [the expert's] opinions is not substantially outweighed by any potential risk of his opinions being cumulative of Plaintiff's other experts.") (internal quotations omitted). Accordingly, the Court declines to exclude Ferrara's testimony on this basis.

Finally, the Court rejects Plaintiffs' argument that Ferrara's rebuttal report constitutes impermissible credibility testimony. Although an expert may not opine on the credibility of another witness, *see United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), Ferrara's rebuttal critiques the methodology and conclusions of Plaintiffs' experts rather than their veracity. *See* Rebuttal Report of Lawrence Ferrara, Ph.D ("Ferrara Rebuttal"), Dkt. No. 786-3 at 2; Ferrara Rebuttal, App. A at 10 n.3; App. B at 15 n.1. Such critique falls within the proper scope of rebuttal expert testimony. Moreover, as Defendants correctly highlight, Platintiffs' own expert whom Ashbourne-Firman is rebutting uses virtually identical language that Finell used in her rebuttal, which Plaintiff attempt to categorize as an improper credibility opinion. *Compare* Dkt. No. 706-26 ¶ 12 ("I would submit the analysis in both reports [of Finell and Ashbourne-Firman] are materially incomplete and therefore not useful") *with* Dkt. No. 749 ¶ 19 ("I would submit that the Ferrara Report's analysis is materially incomplete and therefore not useful."). Plaintiffs may not characterize materially identical critiques as proper when offered by their own expert but improper credibility opinions when offered by Defendants' expert.

As to Plaintiffs' second critique of Ferrara, "challenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony." *See Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015); *see also Laflamme v. Safeway, Inc.*, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010) (stating that rebuttal reports that "address the initial experts' assertions by questioning their assumptions and methods" are proper under Rule 26). Here, Plaintiffs take issue with Ferrara's statement that he is "not aware of what Finell has been told, or by whom she was told, about the creation of 'Fish Market' that enables her to offer a conclusion, based on a definition she has been supplied, regarding the originality of 'Fish Market,' especially without any analysis of prior art." Rebuttals to the Reports of Judith Finell and Peter Ashbourne-Firman ("Ferrara Rebuttal Report"), Dkt. No. 706-28, App. A at 10 n 3; *see also* Ferrara

---

Rebuttal Report, App. B at 15 n1. Read in context, however, Ferrara is not opining on Finell's truthfulness or personal credibility. Rather, he questions the factual assumptions underlying her opinions and the absence of an explanation in her report regarding the information on which those opinions rest. Such criticism goes to the reliability and sufficiency of the foundation for Finell's expert analysis—not her veracity—and is therefore a proper subject of rebuttal expert testimony. Any disagreement over whether Ferrara's critique is well-founded is a matter for cross-examination and competing expert testimony, not exclusion under FRE 702. Accordingly, Plaintiffs' motion to exclude Ferrara is **DENIED**.

### G. Paul Geluso *Daubert* Motion

#### i. *Summary of Contentions*

Plaintiffs move to exclude the testimony and report of Paul Geluso on the ground that he was designated solely as a rebuttal expert but offers opinions that do not respond to any affirmative opinions disclosed by Plaintiffs' experts. *See generally* Dkt. No. 735. Plaintiffs argue that Geluso's central opinion—that certain audio files produced in discovery are not "stems" from a master recording—does not rebut any position actually taken by Plaintiffs' experts, who did not opine that those files were mechanically derived from a master recording. *Id.* at 3. Plaintiffs further contend that Defendants' designation was untimely because Defendants failed to disclose any affirmative expert on this topic by the applicable deadline and instead raised it for the first time through a rebuttal expert. *Id.* at 3–4. According to Plaintiffs, this delay was neither justified nor harmless, as they had no reason to depose Geluso given his designation as a rebuttal witness. *Id.* at 4. Plaintiffs also argue that Geluso's opinions are cumulative of those offered by Ferrara. *Id.* at 5.

Defendants oppose, asserting that Geluso's opinions directly respond to Plaintiffs' experts' reliance on certain audio files that Plaintiffs characterized as "stems" of the Claimed Works. Dkt. No. 765 at 5–6. Defendants also contend that Geluso's analysis addresses the same subject matter as the opinions of Finell and Ashbourne-Firman—the "stems"—and is therefore proper rebuttal. *Id.* Defendants further argue that Geluso's testimony is not cumulative because it is based on a distinct technical analysis, even if it reaches similar conclusions as Ferrara. *Id.* at 6–7. Finally, Defendants contend that any challenge based on cumulativeness is premature at the summary judgment stage. *Id.* at 8.

#### ii. *Discussion*

Under Rule 26(a)(2)(D)(ii), rebuttal expert testimony is limited to evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another [party's expert.]" Fed. R. Civ. P. 26(a)(2)(D)(ii). This limitation is construed narrowly to prevent parties from using rebuttal designations to introduce new affirmative theories or opinions that could have been disclosed earlier. *See TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *7 (C.D. Cal. Aug. 17, 2016); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 2017 WL 11489792, at *2 (C.D. Cal. Nov. 15, 2017).

Here, the Court finds that Geluso's opinions do not constitute proper rebuttal within the meaning of Rule 26. "The test of whether an expert's opinion constitutes rebuttal or a 'new' opinion, however, is not 'whether a rebuttal expert employs new testing or methodologies' but instead, whether 'a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut.' " *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018) (quoting *Wadler v. Bio-Rad Labs., Inc.*, 2016 WL 6070530, *3 (N.D. Cal. Oct. 17, 2016)). "[A] district court has broad discretion in deciding what constitutes proper rebuttal evidence." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 601 (9th Cir. 1991) (citing *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1033 (7th Cir. 1990)).

Although Defendants characterize Geluso's report as responding to Plaintiffs' experts' use of certain audio files as "stems," the record does not show that Plaintiffs' experts offered an affirmative opinion that those files were mechanically derived stems from a master recording in the technical sense that Geluso addresses. Rather, Geluso's report advances a distinct, technical characterization of the files that does not directly contradict a specific opinion disclosed by Plaintiffs' experts. *See* Expert Report of Paul Geluso ("Geluso Report"), Dkt. No. 735-1 ¶¶ 19, 58, 59. Finell and Ashbourne-Firman did not opine on whether the sound files constituted original "stems" from a master recording in the technical sense Geluso addresses, but instead referenced the files only as inputs for their musical analyses. *See generally* Finell Report; *see also* Ashbourne-Firman Report. Their limited reliance on those materials does not place at issue the technical provenance or classification of the files in the manner Geluso proposes. As such, Geluso's analysis is not responsive to a disclosed opinion, but instead introduces a new, affirmative line of technical inquiry. In that respect, Geluso's testimony goes beyond rebuttal and falls outside the permissible scope of Rule 26(a)(2)(D)(ii).

This conclusion is reinforced by the timing of Geluso's disclosure. To the extent Defendants believed that the nature of the audio files was significant to their defense, that issue was reasonably foreseeable and could have been addressed during the affirmative expert phase. *See TCL Commc'ns*, 2016 WL 7042085, at \*7. Permitting Defendants to introduce this analysis for the first time through a rebuttal expert would undermine the orderly disclosure framework established by Rule 26 and prejudice Plaintiffs, who had no obligation to depose a witness designated solely for rebuttal on matters not actually rebutting their experts. *See Unicolors*, 2017 WL 11489792, at \*2.

Moreover, the substance of Geluso's opinions—namely, whether the audio files are properly characterized as "stems"—is a matter that can be adequately explored through cross-examination of the existing experts and does not require a separate rebuttal expert to introduce a new technical theory at this stage. Finally, while the Court need not rest its ruling on Rule 403, the overlap between Geluso's analysis and Ferrara's rebuttal report further underscores the limited incremental value of Geluso's testimony. *See United States v. Marabelles*, 724 F.2d 1374, 1382; cf. *A.B. v. Cty. of San Diego*, 2020 WL 4430971, at \*28 (S.D. Cal. July 31, 2020).

Accordingly, the Court finds that Geluso's report exceeds the proper scope of rebuttal and was untimely disclosed. Plaintiffs' motion to exclude is therefore **GRANTED**.

### H. Peter Manuel *Daubert* Motion

#### i. *Summary of Contentions*

Plaintiffs move to exclude the testimony and reports of Peter Manuel. *See generally* Dkt. No. 747. Plaintiffs first argue that Manuel's report exceeds the permissible scope of rebuttal because, although framed as responding to Plaintiffs' experts, it introduces "broad, new opinions" on riddim licensing practices, song structure, rhythmic terminology, and prior art. *Id.* at 3–5. Plaintiffs contend that Defendants' disclosure of Manuel was therefore untimely and prejudicial, warranting exclusion under Rule 37(c)(1). *Id.* at 4–5. Plaintiffs further assert that Manuel applies incorrect legal standards and offers opinions unsupported by any discernable or reliable methodology. *Id.* at 5–13. In addition, Plaintiffs argue that Manuel's report is cumulative of Dr. Marshall's, as both address Caribbean musical traditions and rhythmic conventions and reach similar conclusions. *Id.* at

13–15. Plaintiffs also challenge Manuel's reliance on internet materials, including YouTube videos, mash-ups, and streaming playlists, arguing that such sources are unauthenticated and methodologically unsound. *Id.* at 15–16. Finally, Plaintiffs contend that Manuel improperly critiques the credibility, competence, and motivations of Plaintiffs' experts rather than providing substantive expert analysis. *Id.* at 16–18.

Defendants oppose, arguing that Manuel's report falls squarely within the proper scope of rebuttal because it responds to and contextualizes the opinions of Plaintiffs' experts, particularly with respect to musical structure, historical context, and alleged originality. Dkt. No. 768 at 2–5. Defendants further contend that courts routinely permit expert testimony on background matters such as musical conventions, prior art, and genre-specific practices. *Id.* at 5–7. According to Defendants, Manuel employs reliable methodologies, including transcription, comparative analysis, and evaluation of both individual elements and their combinations. *Id.* at 7–9. Defendants also argue that Manuel's opinions are not cumulative, as they reflect an independent analysis even where they overlap in subject matter with other defense experts. *Id.* at 9–10. Finally, Defendants maintain that Manuel's use of online materials is appropriate and distinguishable from cases holding that such materials are unreliable, because Manuel relies on identifiable sources rather than introducing unauthenticated third-party mash-ups, and thus does not present the same reliability concerns. *Id.* at 10–11.

### ii. *Discussion*

Under Rule 26(a)(2)(D)(ii), rebuttal expert testimony is limited to evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another [party's expert.]" Fed. R. Civ. P 26(a)(2)(D)(ii). This limitation is construed narrowly to prevent parties from using rebuttal designations to introduce new affirmative theories or opinions that could have been disclosed earlier. *See TCL Commc'ns Tech. Holdings Ltd.*, 2016 WL 7042085, at *7; *Unicolors, Inc.*, 2017 WL 11489792, at *2. Accordingly, rebuttal experts should "restrict their testimony to attacking the theories offered by the adversary's experts." *Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*, No. C-93-20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995).

Plaintiffs' primary challenges—to the scope of Manuel's rebuttal, his methodology, and the materials on which he relies—do not warrant exclusion. With respect to rebuttal, the Court agrees with Defendants that Manuel's report is directed to the same subject matter addressed by Plaintiffs' experts, including the

structure, originality, and cultural context of the asserted musical elements. *See* Expert Report of Peter Manuel, Ph.D. ("Manuel Report"), Dkt. No. 706-33 at 6, 12–13; *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address and does not introduce new arguments." *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011). Read as a whole, Manuel's report repeatedly identifies the opinions of Plaintiffs' experts that he is addressing and explains why, in his view, their conclusions regarding the originality, protectability, and historical significance of the asserted musical elements are flawed. *See, e.g.,* Manuel Report at 22 ("In my opinion, the failure of all of the Plaintiffs' experts to even mention the long-standing prior uses of the percussive rhythm […] makes their conclusory claim that the 'Fish Market' rhythm is original unsupported and unsupportable as it relates to the issue presented for our musicological analysis."). Although Manuel relies on additional musical examples and historical sources in doing so, those materials are offered to challenge the assumptions, methodology, and conclusions underlying Plaintiffs' experts' opinions—not to advance an unrelated affirmative theory. Such analysis falls within the permissible scope of rebuttal because it is directed to the same subject matter addressed by Plaintiffs' experts and responds to their opinions rather than introducing a new line of expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Plaintiffs rely on several authorities to argue that courts routinely exclude expert testimony that does not respond to an opposing party's expert opinion. *See* Dkt. No. 747 at 3–5. The Court finds these authorities distinguishable. In *Unicolors*, as Defendants correctly note, the court excluded the challenged expert because the expert had been disclosed solely as a rebuttal expert, yet there was no opposing expert testimony to rebut. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 2017 WL 11489792, at *2 (C.D. Cal. Nov. 15, 2017) ("Because Defendant only disclosed Ms. Lake as a rebuttal expert, Ms. Lake will not be permitted to offer expert testimony without Plaintiff first offering expert testimony to rebut."). Those circumstances are not present here. Rather, Manuel's rebuttal opinions are directed at, and expressly respond to, the opinions offered by Plaintiffs' experts. Nor does *Dixon v. Legacy Transp. Sys.* support Plaintiffs' position. There, the court permitted the challenged expert to testify as a rebuttal expert because the expert's opinions directly countered those of the opposing party's expert. LLC, 2017 WL 3927105, at *3 (D. Nev. Sept. 6, 2017). That is precisely the circumstance presented here. Finally, *Roger v. S. Route Maritime SA* is likewise inapposite. 2014 WL 12029283, at *2 (W.D. Wash. Sept. 16, 2014). Unlike here, the court concluded that there was nothing to rebut because the challenged reports "were written years before plaintiffs' expert disclosures were

made." *Id.* Accordingly, the reports could not have been prepared to contradict or rebut the opposing experts' opinions. In sum, none of the authorities on which Plaintiffs rely involved circumstances comparable to those presented here. Rather than supporting exclusion, those cases confirm that rebuttal testimony is proper where, as here, it is directed to the opinions and methodologies of an opposing party's expert. That Manuel provides broader context or critiques the analytical frameworks used by Plaintiffs' experts does not render his testimony improper rebuttal. *See, e.g., A.B. v. Cty. of San Diego*, No. 18-CV-1541-MMA-LL, 2020 WL 4430971, at *28 (S.D. Cal. July 31, 2020) (permitting rebuttal opinions that address the same subject matter through different analytical approaches).

As to Plaintiffs' contention that Manuel applied an incorrect legal standard and therefore conducted an impermissibly broad inquiry seeking to impose a novelty standard, as the Court has already noted, the Court declines to exclude his testimony on this basis. As explained above, the governing framework incorporates multiple, related considerations, and the appropriate scope of prior art analysis lies between the parties' competing positions. In that context, the Court does not find that Manuel's opinions are rendered categorically irrelevant or nonprobative merely because he considered prior art more broadly than Plaintiffs contend is appropriate or evaluated originality through that lens. Rather, any disagreement regarding the proper scope of the originality inquiry or the extent to which prior art should inform that analysis goes to the weight of Manuel's opinions, not their admissibility. *See Kennedy*, 161 F.3d at 1231.

Nor do Plaintiffs' claims that Manuel's report includes impermissible legal conclusions justify exclusion. Although an expert may not instruct the jury on the law or opine as to the ultimate legal conclusion, *see Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), an expert may apply specialized knowledge to evaluate the originality, composition, and historical development of musical works. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064–65 (9th Cir. 2020) (en banc); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000). Read in context, Manuel's report does not purport to define the governing legal standards or instruct the Court on the law. Rather, Manuel applies musicological principles to evaluate the asserted musical elements, including their historical usage, prevalence in prior works, and relationship to broader musical conventions. *See* Manuel Report at 14–18, 22–29. His discussion of whether particular musical elements are "original," "protectable," or constitute "musical building blocks" is offered as part of his musicological analysis and in direct response to the opinions advanced by Plaintiffs' experts, who likewise address those subjects. *See id.* at 12–18. To the extent Manuel employs terminology that

also appears in copyright jurisprudence, the Court is satisfied that he uses those terms descriptively, not as legal instructions to the jury. Nor does his reference to "musical building blocks" transform his opinions into impermissible legal conclusions, particularly where that terminology is commonly employed by musicologists and appears in both the parties' expert reports and copyright decisions discussing musical composition. Accordingly, the Court concludes that Manuel's report does not cross the line from permissible expert analysis into inadmissible legal opinion.

The Court likewise concludes that Manuel's methodology is not so unreliable or disconnected from the facts of the case as to require exclusion; rather, Plaintiffs' criticisms go to the weight of his testimony, not its admissibility. Manuel employs standard musicological tools, including transcription, comparative analysis, and consideration of musical conventions and prior works. *See* Manuel Report at 14, 16, 17, 18. Challenges to the scope of his prior art review, his characterization of musical elements, or the weight he assigns to particular sources go to the persuasiveness of his opinions, not their admissibility. *See Kennedy*, 161 F.3d at 1231 ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology… go to the weight, not the admissibility, of his testimony."); *Primiano*, 598 F.3d at 564–65 (9th Cir. 2010) (same). These are classic issues for cross-examination and competing expert testimony, not grounds for exclusion. Moreover, as discussed above, the Court rejects both parties' competing conceptions of the proper scope of the originality inquiry. The governing framework neither forecloses consideration of prior art altogether nor permits prior art to serve as a freestanding novelty test. Accordingly, even assuming Manuel's prior art analysis is broader than Plaintiffs contend is appropriate, that methodological disagreement does not render his opinions categorically irrelevant or unreliable. Rather, it presents a question regarding the proper application of accepted musicological principles to the legal framework governing originality—a question that bears on the weight of Manuel's testimony and is appropriately explored through cross-examination and competing expert evidence.

Plaintiffs' objections to Manuel's reliance on online materials similarly fail. Experts may rely on otherwise inadmissible materials if they are of a type reasonably relied upon in the field. Fed. R. Evid. 703. Courts have recognized that publicly available media, including online audio and video, may form part of a reliable basis for expert analysis. *See Gray v. Perry*, 2019 WL 2992007, at *17 (C.D. Cal. July 5, 2019). Unlike in *Gray*, Manuel does not rely on unidentified third-party mash-ups, but instead cites discrete, identifiable sources to illustrate

musical conventions. *See id.* Any concerns regarding the reliability or relevance of those materials are appropriately explored through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

The Court also does not find Manuel's testimony to be impermissibly cumulative or to constitute improper credibility commentary. FRE 403 permits the Court to exclude needlessly cumulative testimony that has little incremental value. *United States v. Miguel*, 87 Fed.Appx. 67, 68-69 (9th Cir. 2004); Fed. R. Evid. 403. "Cumulative evidence replicates other admitted evidence." *United States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979). A witness's testimony may be needlessly cumulative if the party presents evidence bearing on the same point through other witnesses. *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430-31 (9th Cir. 1991) (affirming district court's decision to exclude witness testimony that had little probative value and presented cumulative testimony). To the extent Manuel's opinions overlap with those of other defense experts, they reflect independent analysis and do not render his testimony inadmissible. *See A.B.*, 2020 WL 4430971, at *28; *S.S. by & through Stern v. Peloton Interactive, Inc.*, No. 321CV01367BENMMP, 2023 WL 7135265, at *9 (S.D. Cal. Oct. 27, 2023) ("Finding the reports independently formed and distinct, the Court need not exclude Dr. Thompon's report simply because certain opinions overlap with those of Dr. Carroll."); *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 3:18-cv-00331-BEN-LL, 2020 WL 907060, at *13 (S.D. Cal. Feb. 25, 2020) (declining to exclude expert testimony as cumulative because, despite minor overlap, each expert independently developed a distinct analysis that provided a relevant rebuttal to the opposing expert's opinions).

Finally, while Manuel critiques the conclusions and methodologies of Plaintiffs' experts, such critique does not amount to impermissible vouching or credibility determinations. *See United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985). Accordingly, Plaintiffs' motion to exclude Manuel is **DENIED**.

## I. Wayne Marshall *Daubert* Motion

### i. *Summary of Contentions*

Plaintiffs move to exclude the testimony and reports of Defendants' expert Dr. Wayne Marshall. *See generally* Dkt. No. 737. Plaintiffs contend that Marshall applied an incorrect legal standard and engaged in improper filtering of elements, rendering his testimony unhelpful. *Id.* at 4–8. They further argue that his report

relies on irrelevant materials, including an incorrect version of "Dem Bow," musical works and online content that post-date "Fish Market," and even portions Marshall allegedly concedes are immaterial. *Id.* at 8–10. Plaintiffs also assert that Marshall's originality opinions are not based on any reliable or objectively verifiable methodology, claiming he selectively disregards elements without principled justification and conducts a speculative prior art analysis. *Id*. at 10–13. In addition, Plaintiffs challenge his reliance on self-created "mashups" unrelated to the works at issue and citations to third-party social media content, arguing these further undermine the reliability of his analysis. *Id.* at 13–15. Finally, Plaintiffs contend that Marshall improperly bolsters the opinions of other defense experts rather than offering independent analysis. *Id.* at 16..

Defendants oppose Plaintiffs' motion, first contending that Marshall applied the correct originality standard and that it was proper for Marshall to assess the Fish Market Elements individually. Dkt. No. 771 at 4–12. Defendants add that even though the individual assessment of the elements was proper, Marshall assessed the elements in combination as well. *Id.* at 7–12. Moreover, Defendants assert that Marshall utilized reliable methodology including but not limited to a comprehensive prior arts search and musical transcriptions *Id.* at 12–14. This methodology is consistent with standard ethnomusicological practice. *Id.* at 14. Any of the credibility challenges Plaintiffs aim to raise, Defendants argue, are unfounded and are nothing more than nitpicking. *Id.* at 14–19. Lastly, Defendants assert that Marshall's report does not engage in any vouching for Defendants' other expert witnesses, and his critique of Plaintiffs' experts are not credibility opinions. *Id.* at 19–20.

### ii. *Discussion*

At the outset, the Court finds that Marshall is more than qualified to opine as an expert in this matter, given his training in ethnomusicology focusing on American, Caribbean, and Afrodiasporic musical histories. *See* Expert Report of Wayne Marshall, Ph.D ("Marshall Report"), Dkt. No. 706-21, App'x 2 (Curriculum Vitae). In addition and consistent with the Court's prior discussion, the Court declines to exclude Marshall's testimony on the basis that Plaintiffs contend he applied an incorrect legal standard or engaged in improper filtering. To the extent Marshall's analysis emphasizes certain considerations—such as prior material or the treatment of individual elements—those issues bear on the weight of his opinions rather than their admissibility. *See Kennedy*, 161 F.3d at 1231.

Turning to methodology, the Court finds that Marshall employed sufficiently

reliable principles and methods. His report reflects the use of transcription, comparative analysis, and prior art review grounded in ethnomusicological practice. As Defendants highlight, Marshall identifies and analyzes 52 specific examples of prior art and provides musical transcriptions and notated comparisons using TUBS (time unit box system). *See* Marshall Report ¶¶ 5–16, 26–27, 32–52. He further employs close listening, transcription, graphical representation, digital reconstruction, and audio comparison—techniques widely accepted in the field. *See id.* ¶¶ 26–45. This type of systematic identification and comparison of musical elements is consistent with established musicological methodology. *See Swirsky*, 376 F.3d at 849 (approving the use of analytic dissection and expert analysis of musical elements in assessing protectable expression); *Watt v. Butler*, 744 F. Supp. 2d 1315, 1323–24 (N.D. Ga. 2010) (recognizing form of methodology as reliable when it was consistent with others in the field).

Plaintiffs' contention that Marshall considered materials that purportedly have no bearing on the originality or protectability of the asserted musical elements likewise does not warrant exclusion. Whether particular prior works, historical examples, or contextual materials are ultimately relevant to the originality inquiry under the governing legal framework is a matter that affects the weight and persuasiveness of Marshall's opinions, not the reliability of the methodology he employed. Moreover, Plaintiffs' criticisms—that Marshall selectively discounted certain elements, relied on an assertedly incorrect version of "Dem Bow," or considered materials post-dating "Fish Market"—do not render his methodology unreliable. Rather, these challenges go to the persuasiveness of his conclusions and are appropriately addressed through cross-examination. *See Kennedy*, 161 F.3d at 1231. The Court likewise rejects Plaintiffs' assertion that Marshall "conceded" the irrelevance of portions of his analysis; the cited testimony does not support exclusion on that basis.

Nor do the additional materials relied upon by Marshall warrant exclusion. Experts may rely on otherwise inadmissible materials in forming their opinions. *See Gray*, 2019 WL 2992007, at *17. Courts also regularly consider publicly available materials, including online content, in appropriate circumstances. *See Woodall v. Walt Disney Co.*, 2024 WL 5337348, at *4. With respect to the "mashups," this case is distinguishable from *Gray*, where the materials were created by unknown third parties. *Gray*, 2019 WL 2992007, at *17 ("Here, in the absence of testimony from the creators of those videos as to the manner by which they altered the sound recordings, the Court finds that these videos cannot be properly authenticated under Federal Rule of Evidence 901"). Here, however, Marshall himself created the mashups as part of his analysis, a practice that courts

have recognized in evaluating musical works. *See, e.g., Williams v. Gaye*, 895 F.3d
1106, 1126–27 (9th Cir. 2018). Accordingly, the authentication concerns that
drove the court's ruling in *Gray* are not present here. Because Marshall can testify
regarding the manner in which the mashups were created and their role in his
analysis, any FRE 901 objection does not provide a basis for excluding his
testimony. Any disagreement regarding the accuracy or significance of the
mashups is properly addressed through cross-examination and competing expert
testimony, rather than exclusion under FRE 702.

Finally, the Court does not find that Marshall improperly vouched for
Defendants' other experts or impermissibly attacked the credibility of Plaintiffs'
experts. Plaintiffs point to Marshall's statements that Ferrara's transcriptions "offer
greater accuracy" than other transcriptions, his discussion of what Ferrara's
transcriptions purportedly show, and his references to the analyses contained in the
Ferrara, Bennett, and Butler reports. *See* Marshall Report ¶¶ 6(h), 25; Expert
Rebuttal Report of Wayne Marshall, Ph.D ("Marshall Rebuttal Report"), Dkt. No.
706-22 ¶ 17. Read in context, however, these statements do not simply endorse the
opinions of other experts. Rather, Marshall discusses those reports as part of his
own independent musicological analysis and explains why, in his view, they
support his conclusions regarding the musical issues at hand.

Likewise, Plaintiffs' reliance on Marshall's characterization of Plaintiffs'
experts' analyses as "obfuscating and evasive," "deliberately conflating" musical
elements, "untrue," or constituting "misdirection and mis-definition" does not
warrant exclusion. *See* Marshall Report ¶¶ 32, 35(f); Marshall Rebuttal Report ¶¶
17, 40. Although experts may not opine on the credibility or truthfulness of another
witness, *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), Marshall's
statements are directed at the methodologies, assumptions, and conclusions
underlying Plaintiffs' experts' opinions—not their veracity. The challenged
statements are best understood as vigorous criticism of Plaintiffs' experts'
analytical approaches and interpretation of the musical evidence, rather than
impermissible credibility determinations. To the extent Marshall's rhetoric is
forceful, that goes to the weight of his testimony and is appropriately addressed
through cross-examination, not exclusion under FRE 702. *See Kennedy*, 161 F.3d
at 1231. The motion to exclude Dr. Wayne Marshall is therefore **DENIED**.

### J. Non-Retained Expert *Daubert* Motion

###### i.  *Summary of Contentions*

Defendants move to exclude the testimony and declarations of Cleveland Browne and Lynford Marshall. *See generally* Dkt. No. 713. Defendants first argue that both witnesses are inherently biased, as Browne is a named plaintiff in this action, and both Browne and Marshall were involved in the creation of "Fish Market." *Id.* at 9–10. Defendants further contend that their opinions regarding the originality of "Fish Market" are not grounded in any reliable methodology, are neither testable nor replicable, and therefore lack probative value. *Id.* at 8–9. Defendants also assert that Browne and Marshall are unqualified to offer expert opinions on originality because they are not trained musicologists or historians, and instead rely solely on their experience in Jamaican reggae and dancehall music, which Defendants argue does not constitute the "scientific, technical, or other specialized knowledge" required under FRE 702. *Id*. at 5–8. Finally, Defendants argue that their opinions are irrelevant and unhelpful because they do not address the specific issues presented in this phase of the case. *Id.* at 11–12.

Plaintiffs oppose the motion, arguing that Browne and Marshall are qualified to provide relevant expert testimony as to originality of the Claimed Works, as their testimony is relevant to whether the Claimed Works contain creative expression and are independently created. Dkt. No. 744 at 6–7. Plaintiffs further contend that as professional musicians, the Browne and Marshall need not be formal musicologists or historians to provide qualified opinions, because they both have a deep understanding of Jamaican reggae and dancehall music. *Id.* at 7–9. Moreover, Browne and Marhsall's methodology, Plaintiffs argue, can be addressed through cross-examination, as any issues with their testimony go to weight, not admissibility. *Id.* 9–11.

###### ii.  *Discussion*

The Court concludes that the testimony of Cleveland Browne and Lynford Marshall is admissible in part, but not in the capacity for which Plaintiffs offer it. Specifically, while these witnesses may testify as fact witnesses based on their personal knowledge, they may not offer expert opinion testimony under FRE 702.

As an initial matter, the Court finds that Browne and Marshall possess firsthand knowledge relevant to the creation and development of the Claimed Works. To be sure, Marshall was the mixing engineer during the studio session at which Fish Market was created. *See* Declaration of Lynford Marshall ("L. Marshall

Decl."), Dkt. No. 744-2 at 2:23-26. Moreover, Brown wrote and recorded Fish Market. *See* Declaration of Cleveland Browne in Support of Plaintiffs' Motion for Summary Adjudication ("Declaration of Cleveland Browne"), Dkt. No. 748 ¶ 6. Testimony regarding Browne and Marhsall's personal experiences in composing, recording, and producing "Fish Market," including whether they copied from or were influenced by other works, is plainly relevant under FRE 401 and 402. *See* Fed. R. Evid. 401 (providing that evidence is relevant if it has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence").

However, the Court declines to permit these witnesses to testify as experts. Plaintiffs have not demonstrated that designation as expert witnesses is necessary to present their testimony, nor that such designation would assist the trier of fact beyond what can be conveyed through fact testimony. The Court does not view this as a distinction without consequence. Labeling a witness as an expert carries an imprimatur of authority that may improperly elevate the witness's conclusions beyond their factual foundation. *See United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007) (noting a "concern[ ] that a [witness] who testifies as an expert receives 'unmerited credibility' for lay testimony"); *El Sayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1063–64 (9th Cir.2002) (stating "[m]aintaining *Daubert*'s standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony"). It is one thing for a witness to testify, based on personal experience, as to what they created and how they created it; it is another for that same witness to extrapolate from that experience to offer broader conclusions about originality or the absence of similar prior works. *See Daubert*, 509 U.S. at 592 (An expert offers opinions not based on first-hand knowledge, because his opinions presumably "will have a reliable basis in the knowledge and experience of his discipline."); *see also Certain Underwriters at Lloyds v. Sinkovich*, 232 F.3d 200, 203-4 (4th Cir.2000) (witness who proffered general opinions concerning matters beyond common experience and requiring expert skill and knowledge is an expert witness).

This distinction is particularly salient here, where the proffered opinions risk collapsing firsthand factual testimony into generalized assertions about the state of the field. A witness may testify, for example, that they did not copy or were not aware of prior works when creating a composition—this could be done through lay testimony. But extending that testimony into an expert conclusion that no such prior works existed—or that the work is therefore original as a matter of copyright law—goes beyond permissible lay testimony and is not supported by a reliable

expert methodology.

As to methodology, Browne and Marshall's proffered testimony lacks a sufficiently reliable methodological foundation under FRE 702. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *2, *5 (N.D. Cal. Nov. 6, 2017). Although both witnesses possess extensive practical experience in music creation and production, their opinions are not grounded in any identifiable or consistently applied analytical framework. They do not articulate a discernible methodology— such as transcription, comparative analysis, or systematic evaluation of musical elements—by which they reached their conclusions, nor do they explain how their experience was reliably applied to the facts of this case. Instead, their opinions appear to rest primarily on generalized assertions and personal impressions untethered to a testable or reproducible process. Under these circumstances, the Court cannot conclude that their reasoning or methodology is sufficiently reliable to assist the trier of fact, and therefore declines to admit their opinions as expert testimony under FRE 702.

The Court is also mindful that where a purported expert has a direct financial or personal interest in the litigation, concerns arise regarding objectivity and the appropriate role of such testimony. *See, e.g., Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *3 (C.D. Cal. Mar. 24, 2015). While such concerns do not bar testimony altogether, they further underscore that the proper vehicle for such evidence is fact testimony, not expert opinion cloaked with the authority of FRE 702.

To the extent Plaintiffs argue that Browne and Marshall are qualified to offer testimony based on their experience in reggae and dancehall music, the Court finds that such experience may inform their factual testimony but does not, on this record, justify admission of broad expert opinions on originality or protectability. Nor is expert designation necessary for the Court to consider their personal knowledge of the Claimed Works.

Accordingly, Defendants' motion is **GRANTED IN PART**. Browne and Marshall may testify as fact witnesses regarding matters within their personal knowledge, but may not offer expert opinions under FRE 702.

## IV.   MOTIONS FOR SUMMARY JUDGMENT

Having ruled on the parties' motions to exclude, the Court now turns the parties' motions for summary judgment.

## A. Legal Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

## B. Statement of Undisputed Facts

The Court sets forth below those background facts that are not subject to genuine dispute and are sufficient to provide context for the pending motions.[1]

### i. *Relevant Works at Issue*

---

[1] The PC Defendants' fact statement is Dkt. No. 706-1 and Plaintiffs' fact statement is Dkt. No. 738. In addition, the parties filed declarations, deposition transcripts, and other documentary evidence. Any objections to evidence relied on herein are **OVERRULED**. All other objections are overruled as moot.

1.  Creation and Composition of "Fish Market"

Plaintiffs Cleveland Browne ("Clevie") and the late Wycliffe Johnson ("Steely"), known professionally as "Steely & Clevie," were active figures in reggae music during the 1980s. Plaintiffs' Statement of Disputed Facts ("PSDF") 2–3, Dkt. No. 738. In 1989, Steely and Clevie wrote, recorded, and released the instrumental recording "Fish Market." PSDF 4; Defendants' Statement of Disputed Facts ("DSDF") 24, Dkt. No. 706-1. The record reflects that "Fish Market" was released as the Side B instrumental version associated with the vocal recording "Poco Man Jam." DSDF 25, 65; PSDF 18.

The record further reflects that Steely and Clevie jointly contributed to the creation of "Fish Market," with Clevie responsible for drum and percussion components and Steely responsible for bassline and other melodic or harmonic elements. PSDF 4–7. Plaintiffs describe the "Fish Market" composition as incorporating a combination of drum, bass, and additional percussion elements that together form the instrumental backing of the work. *See generally* PSDF 5–10.

2.  Subsequent Works: "Dem Bow" and "Pounder (Dub Mix II)"

In 1990, the artist Shabba Ranks released the song "Dem Bow," which incorporates the instrumental backing associated with "Fish Market" with the addition of a vocal performance. PSDF 19. The record reflects that "Dem Bow" utilizes the same multitrack instrumental recording as "Fish Market," with vocals layered over that recording. PSDF 19.

Also in 1990, Ephraim Barrett, p/k/a "Count Shelly," and Denis Halliburton, p/k/a "Denis the Menace," released a sound recording titled "Pounder (Dub Mix II)." DSDF 28; PSDF 20. The record reflects that "Pounder (Dub Mix II)" is a replay or cover of the instrumental associated with "Dem Bow." PSDF 20.

The record further reflects that "Pounder (Dub Mix II)" contains percussion and bass instrumentation, including drum and rhythmic components, while omitting certain elements present in "Fish Market," such as certain melodic or auxiliary percussion components, and differing in certain respects in its performance. PSDF 21–22.

3.  Claimed Copyright Interest

Plaintiffs assert ownership of the "Fish Market" musical composition and sound recording, as well as the "Dem Bow" musical composition. DSDF 19–20. Plaintiffs do not claim ownership of the "Dem Bow" sound recording. DSDF 21. Plaintiffs assert ownership of the "Pounder (Dub Mix II)" sound recording, but do not claim ownership of the underlying musical composition embodied in that recording. DSDF 22–23.

### ii. *Procedural Background*

Plaintiffs commenced this action on April 1, 2021, asserting claims of copyright infringement involving two works allegedly infringing the "Fish Market" composition ("Dem Bow I"). DSDF 1. Plaintiffs subsequently filed a second action on October 19, 2021, asserting infringement claims involving ten additional works ("Dem Bow II"). DSDF 2. Plaintiffs thereafter initiated a third action on May 16, 2022 in the Southern District of New York involving forty-four allegedly infringing works, which was later transferred to this Court as a related action ("Dem Bow III"). DSDF 3.

On July 15, 2022, this Court consolidated the Dem Bow I, Dem Bow II, and Dem Bow III actions for coordinated pretrial proceedings. DSDF 4; Dkt. No. 93. The Court ordered Plaintiffs to file a consolidated complaint, which Plaintiffs filed on July 29, 2022. DSDF 5–6; Dkt. Nos. 93, 99. The Court subsequently granted leave to amend, and Plaintiffs filed an amended consolidated complaint following that authorization. DSDF 7; Dkt. Nos. 112, 115.

In light of the number of defendants, the number of works at issue, and the existence of overlapping legal and factual questions, the Court adopted a phased case administration plan. DSDF 9; Joint Stipulation. That plan provides for an initial phase of limited discovery and summary judgment practice focused on whether Plaintiffs' Claimed Works or portions thereof possess sufficient originality of authorship and are otherwise protectable under copyright law. *See* Administration Order at 1–2.

Plaintiffs filed the operative Second Consolidated Amended Complaint on April 21, 2023. DSDF 12; SCAC.

### C. Material Factual Disputes Preclude Summary Judgment

Given the Court's rulings above, the Court concludes that the record presents genuine disputes of material fact regarding the identification, characterization, and protectability of the Fish Market Elements, precluding summary judgment in either side's favor. These disputes go directly to the core questions of originality and protectability that define this phase of the case. Critically, they are driven almost entirely by competing expert analyses. Accordingly, both Motions for Summary Judgment are **DENIED**.

The Court has determined that the parties' proffered experts are, for the most part, admissible. As a result, the evidentiary record presents competing, facially credible expert opinions regarding what elements exist in the Claimed Works, how those elements function musically, whether they are commonplace or original, and whether they form a coherent and protectable selection and arrangement. The Court need not recount this factual record, however, virtually none of these facts fall into the undisputed category that the Court may consider on a motion for summary judgment. Put simply, Plaintiffs' experts advance one account of the relevant musical features and their significance, while Defendants' experts offer a fundamentally different interpretation of those same features. These are classic disputes of fact, not law.

Under well-established summary judgment principles, the Court may not resolve such conflicts. "Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable." *City of Pomona*, 750 F.3d at 1049 (9th Cir. 2014) (citing *United States v. Sandoval–Mendoza,* 472 F.3d 645, 654 (9th Cir.2006)). Thus, when the record presents a "battle of the experts," summary judgment is generally inappropriate because resolving the dispute would require the Court to weigh competing evidence and make credibility determinations. *See id*; *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.").

Courts in this Circuit have repeatedly denied summary judgment in materially indistinguishable circumstances. *See, e.g., Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 937 (C.D. Cal. 2016) ("Accordingly, the Court is precluded from granting summary judgment in either side's favor. This case boils down to a battle of the experts, and such a battle must be left for the jury's resolution."), aff'd, 742 F. App'x 282 (9th Cir. 2018); *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, No. CV03-2052, 2005 WL 6070811, at *31 (C.D. Cal. Mar. 14, 2005) ("The court

is once again faced with conflicting expert declarations. Resolving such conflicts and the weighing of evidence are jury functions, not those of a judge."), aff'd, 469 F.3d 978 (Fed. Cir. 2006); *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV 99-1877, 2000 WL 986995, at *12 (C.D. Cal. 2000) ("[T]his Court may not weigh the evidence as presented by the parties. The inferences to be drawn from the parties' evidence could weigh in favor of either party."). The Ninth Circuit has likewise repeatedly recognized that conflicting expert testimony presents a quintessential jury question and generally precludes summary judgment. *See, e.g., Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 979-80, 982 (9th Cir. 1980) (reversing a district court's grant of summary judgment where the parties provided conflicting expert testimony and the district court granted summary judgment by relying solely on the moving party's expert testimony); *DeLew v. Adamson*, 293 Fed.Appx. 504, 506 (9th Cir. 2008) ("The existence of conflicting expert assessments suggests that neither party is entitled to summary judgment.").

Similarly, where both sides present admissible expert testimony supporting their respective positions, "a reasonable juror could find by a preponderance of the evidence that each is entitled to a verdict in its favor," thereby precluding summary judgment. *Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545, 2010 WL 1734960, at *8 (S.D. Cal. Apr. 27, 2010); *see also Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005) ("If two contradictory expert witnesses can offer testimony that is reliable and helpful, both are admissible and it is the function of the finder of fact, not the trial court, to determine which is the more trustworthy and credible." (citation and alterations omitted)). And where expert opinions rely on technical or specialized methodologies, courts are especially reluctant to resolve such disputes as a matter of law. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1300 (E.D. Cal. 2012) (denying summary judgment where "the two conflicting expert opinions create a material issue of fact" requiring evaluation by a factfinder).

That is precisely the situation here. Each side has marshaled expert testimony that, if credited, would support its position on originality and protectability. At the same time, each side vigorously challenges the methodology, assumptions, and conclusions of the opposing experts. Resolving these disputes would necessarily require the Court to determine which experts are more persuasive, which analytical framework to adopt, and which factual account of the works is correct. The Court cannot do so at summary judgment.

Accordingly, because the material facts underlying the parties' competing theories are genuinely disputed—and because those disputes turn on conflicting

expert testimony that the Court may not weigh—summary judgment in favor of either side is inappropriate. This case "boils down to a battle of the experts," and that battle must be resolved by the trier of fact, not the Court on summary judgment. *Lewert*, 212 F. Supp. 3d at 937. Accordingly, both Plaintiffs' Motion for Summary Judgment and Defendants' Motion for Summary Judgment are both **DENIED.**

## V.     CONCLUSION

For the foregoing reasons, the Court resolves the parties' motions as set forth above. Because this Order addresses numerous claims, defenses, and evidentiary objections, the Court includes the summary tables below for ease of reference.

The Court rules as follows on the parties' *Daubert* motions to exclude expert witnesses:

| Motion | Opp'n | Reply | Ruling |
|---|---|---|---|
| Judith Finell *Daubert* Motion (Dkt. No. 707) | Dkt. No. 734 | Dkt. No. 763 | DENIED |
| Kenneth Bilby *Daubert* Motion (Dkt. No. 709) | Dkt. No. 709 | Dkt. No. 762 | DENIED |
| Non-Retained Expert *Daubert* Motion (Dkt. No. 713) | Dkt. No. 744 | Dkt. No. 764 | GRANTED IN PART |
| Peter Ashbourne-Firman *Daubert* Motion (Dkt. No. 711) | Dkt. Nos. 753, 792 | Dkt. No. 770 | DENIED |
| Lawrence Ferrara *Daubert* Motion (Dkt. No. 741, 788) | Dkt. No. 767 | Dkt. No. 786 | DENIED |
| Paul Geluso *Daubert* Motion (Dkt. No. 735) | Dkt. No. 765 | Dkt. No. 782 | GRANTED |
| Peter Manuel *Daubert* Motion (Dkt. No. 747) | Dkt. No. 768 | Dkt. No. 783 | DENIED |
| Wayne Marshall *Daubert* Motion (Dkt. No. 737) | Dkt. No. 771 | Dkt. No. 781 | DENIED |

The Court rules as follows on the parties' cross motions for summary judgment:

| Motion | Opposition | Reply | Ruling |
|---|---|---|---|

| PC Defendants' Partial Motion for Summary Judgment (Dkt. No. 706) | Dkt. No. 742 | Dkt. Nos. 772, 773 | DENIED |
| --- | --- | --- | --- |
| Plaintiffs' Partial Motion for Summary Judgment (Dkt. No. 742) | Dkt. Nos. 772, 773 | Dkt. No. 790 | DENIED |

The Court rules as follows on the parties' motions for joinder:

| Motion | Motions Joining | Ruling |
| --- | --- | --- |
| Joinder Motion of Maybach Music Group, LLC (Dkt. Nos. 710, 723) | Dkt. Nos. 706, 707, 709, 711, 713 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Nelson Diaz Martinez; Jose Angel Lopez Martinez (Dkt. No. 718) | Dkt. Nos. 706, 707, 709, 711, 713 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Gabriel Pizarro (Dkt. No. 720) | Dkt. Nos. 706, 707, 709, 711, 713 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Aubrey Drake Graham; Ovo Sound, LLC (Dkt. Nos. 716, 775) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 767, 768, 769, 770, 771, 772, 773 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Benito Antonio Martínez Ocasio p/k/a Bad Bunny; Rimas Music, LLC (Dkt. Nos. 717, 776) | Dkt. Nos. 706, 707, 708, 709, 711, 713, 762, 763, 764, 765, 767, 768, 770, 771, 772 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of William Sami Etienne Grigahcine p/k/a DJ Snake; Empire Distribution, Inc (Dkt. Nos. 722, 777) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Rich Music, Inc. (Dkt. Nos. 719, 778) | Dkt. Nos. 706, 707, 709, 711, 713, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772 | DENIED consistent with rulings on underlying motions. |
| Joinder Motion of Camilo | Dkt. Nos. 706, 707, 709, | DENIED consistent |

| Echeverría (Dkt. Nos. 721, 779) | 711, 713, 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772, 773 | with rulings on underlying motions. |
| --- | --- | --- |
| Joinder Motion of Cinq Music Group, LLC; Cinq Music Publishing, LLC (Dkt. Nos. 712, 780) | Dkt. Nos. 706, 707 762, 763, 764, 765, 766, 767, 768, 769, 770, 771, 772, 773 | DENIED consistent with rulings on underlying motions. |

Accordingly, as reflected in the Court's Order on Joint Report and Stipulation (Dkt. No. 427), the parties shall, within 21 days of this Order, meet and confer and submit a joint proposed plan for the remainder of the case.

**IT IS SO ORDERED**.